**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COREY HARDIN, DAVID MUHAMMAD, and CHASE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>TRON FOUNDATION, JUSTIN SUN, and ZHIQIANG (LUCIEN) CHEN,<br><br>               Defendants. | No. 1:20-cv-02804-VSB<br><br>**JURY DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ...........................................................................................................1

II.     PARTIES ......................................................................................................................6

        A.      Plaintiffs ...........................................................................................................6

        B.      Defendants ........................................................................................................7

III.    JURISDICTION AND VENUE ....................................................................................7

IV.     FACTUAL ALLEGATIONS .......................................................................................8

        A.      The First Cryptocurrency: Bitcoin ..................................................................8

        B.      Ethereum .........................................................................................................10

        C.      ERC-20 Tokens ...............................................................................................12

        D.      The Advent Of The "ICO" ..............................................................................12

        E.      TRON Solicited And Sold The TRX Token Through Both An ICO And
                Subsequent Sales On Crypto-Asset Exchanges .............................................15

        F.      Because of Defendants' Efforts, Investors Would Not Reasonably Have
                Understood Prior To April 3, 2019, At The Earliest, That TRX Was A
                Security ...........................................................................................................29

        G.      The TRX Tokens Are Securities ......................................................................42

                1.      TRX Token Purchasers Invested Money ..............................................43

                2.      TRX Token Investors Participated In A Common Enterprise .................43

                3.      TRX Token Investors Purchased The Tokens With A Reasonable
                        Expectation Of Profit From Owning Them ...........................................44

                4.      Investors Expected Profits From The TRX Tokens To Be Derived
                        From The Managerial Efforts Of Issuers ..............................................47

        H.      The SEC Has Concluded That Tokens Such As TRX Are Securities .................53

        I.      TRON Targeted the United States and its Users by Entered Into Listing
                Agreements With Crypto-Asset Exchanges .........................................................54

J. The Class Has Suffered Significant Damages From Defendants' Actions............55

V. DEFENDANTS' CONCEALMENT OF THEIR MISCONDUCT PREVENTED PLAINTIFFS AND MEMBERS OF THE CLASS FROM BRINGING A CLAIM AT THE TIME THE EVENTS OCCURRED....................................................................56

VI. CLASS ALLEGATIONS ................................................................................57

VII. CAUSES OF ACTION ..................................................................................60

FIRST CAUSE OF ACTION
(SECURITIES ACT – PRIMARY LIABILITY) ................................................60

SECOND CAUSE OF ACTION
(SECURITIES ACT – PRIMARY LIABILITY) ................................................61

THIRD CAUSE OF ACTION
(SECURITIES ACT – ADDITIONAL LIABILITY)...........................................63

FOURTH CAUSE OF ACTION
(ALABAMA STATE LAW – PRIMARY LIABILITY) .....................................64

FIFTH CAUSE OF ACTION
(ALABAMA STATE LAW – ADDITIONAL LIABILITY) ...............................65

SIXTH CAUSE OF ACTION
(ALASKA STATE LAW – PRIMARY LIABILITY) .........................................67

SEVENTH CAUSE OF ACTION
(ALASKA STATE LAW – ADDITIONAL LIABILITY) ...................................68

EIGHTH CAUSE OF ACTION
(ARIZONA STATE LAW – PRIMARY LIABILITY) .......................................69

NINTH CAUSE OF ACTION
(ARIZONA STATE LAW – ADDITIONAL LIABILITY)..................................71

TENTH CAUSE OF ACTION
(ARKANSAS STATE LAW – PRIMARY LIABILITY)....................................72

ELEVENTH CAUSE OF ACTION
(ARKANSAS STATE LAW – ADDITIONAL LIABILITY) .............................73

TWELFTH CAUSE OF ACTION
(CALIFORNIA STATE LAW – PRIMARY LIABILITY) .................................75

THIRTEENTH CAUSE OF ACTION
(CALIFORNIA STATE LAW – ADDITIONAL LIABILITY) ..........................76

FOURTEENTH CAUSE OF ACTION
    (COLORADO STATE LAW – PRIMARY LIABILITY) ................................................77

FIFTEENTH CAUSE OF ACTION
    (COLORADO STATE LAW – ADDITIONAL LIABILITY) ........................................79

SIXTEENTH CAUSE OF ACTION
    (CONNECTICUT STATE LAW – PRIMARY LIABILITY) ........................................80

SEVENTEENTH CAUSE OF ACTION
    (CONNECTICUT STATE LAW – ADDITIONAL LIABILITY) ..................................81

EIGHTEENTH CAUSE OF ACTION
    (DISTRICT OF COLUMBIA LAW – PRIMARY LIABILITY) ...................................83

NINETEENTH CAUSE OF ACTION
    (DISTRICT OF COLUMBIA STATE LAW – ADDITIONAL LIABILITY) ................84

TWENTIETH CAUSE OF ACTION
    (FLORIDA STATE LAW – PRIMARY LIABILITY) ....................................................86

TWENTY-FIRST CAUSE OF ACTION
    (FLORIDA STATE LAW – ADDITIONAL LIABILITY) .............................................87

TWENTY-SECOND CAUSE OF ACTION
    (GEORGIA STATE LAW – PRIMARY LIABILITY) ...................................................88

TWENTY-THIRD CAUSE OF ACTION
    (GEORGIA STATE LAW – ADDITIONAL LIABILITY)............................................89

TWENTY-FOURTH CAUSE OF ACTION
    (HAWAII STATE LAW – PRIMARY LIABILITY) ......................................................91

TWENTY-FIFTH CAUSE OF ACTION
    (HAWAII STATE LAW – ADDITIONAL LIABILITY)................................................92

TWENTY-SIXTH CAUSE OF ACTION
    (IDAHO STATE LAW – PRIMARY LIABILITY) ........................................................93

TWENTY-SEVENTH CAUSE OF ACTION
    (IDAHO STATE LAW – ADDITIONAL LIABILITY)...................................................95

TWENTY-EIGHTH CAUSE OF ACTION
    (ILLINOIS STATE LAW – PRIMARY LIABILITY) ...................................................96

TWENTY-NINTH CAUSE OF ACTION
    (ILLINOIS STATE LAW – ADDITIONAL LIABILITY)..............................................98

THIRTIETH CAUSE OF ACTION
(INDIANA STATE LAW – PRIMARY LIABILITY) ...................................................100

THIRTY-FIRST CAUSE OF ACTION
(INDIANA STATE LAW – ADDITIONAL LIABILITY)............................................101

THIRTY-SECOND CAUSE OF ACTION
(IOWA STATE LAW – PRIMARY LIABILITY) ........................................................102

THIRTY-THIRD CAUSE OF ACTION
(IOWA STATE LAW – ADDITIONAL LIABILITY)..................................................103

THIRTY-FOURTH CAUSE OF ACTION
(KANSAS STATE LAW – PRIMARY LIABILITY) ...................................................105

THIRTY-FIFTH CAUSE OF ACTION
(KANSAS STATE LAW – ADDITIONAL LIABILITY)............................................106

THIRTY-SIXTH CAUSE OF ACTION
(KENTUCKY STATE LAW – PRIMARY LIABILITY) .............................................107

THIRTY-SEVENTH CAUSE OF ACTION
(KENTUCKY STATE LAW – ADDITIONAL LIABILITY)........................................109

THIRTY-EIGHTH CAUSE OF ACTION
(LOUISIANA STATE LAW – PRIMARY LIABILITY)..............................................110

THIRTY-NINTH CAUSE OF ACTION
(LOUISIANA STATE LAW – ADDITIONAL LIABILITY).......................................112

FORTIETH CAUSE OF ACTION
(MAINE STATE LAW – PRIMARY LIABILITY) ......................................................113

FORTY-FIRST CAUSE OF ACTION
(MAINE STATE LAW – ADDITIONAL LIABILITY).................................................114

FORTY-SECOND CAUSE OF ACTION
(MARYLAND STATE LAW – PRIMARY LIABILITY) .............................................116

FORTY-THIRD CAUSE OF ACTION
(MARYLAND STATE LAW – ADDITIONAL LIABILITY).......................................117

FORTY-FOURTH CAUSE OF ACTION
(MASSACHUSETTS STATE LAW – PRIMARY LIABILITY) .................................119

FORTY-FIFTH CAUSE OF ACTION
(MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY)............................120

FORTY-SIXTH CAUSE OF ACTION
    (MICHIGAN STATE LAW – PRIMARY LIABILITY)................................................121

FORTY-SEVENTH CAUSE OF ACTION
    (MICHIGAN STATE LAW – ADDITIONAL LIABILITY) .........................................123

FORTY-EIGHTH CAUSE OF ACTION
    (MINNESOTA STATE LAW – PRIMARY LIABILITY)............................................124

FORTY-NINTH CAUSE OF ACTION
    (MINNESOTA STATE LAW – ADDITIONAL LIABILITY) .....................................125

FIFTIETH CAUSE OF ACTION
    (MISSISSIPPI STATE LAW – PRIMARY LIABILITY) .............................................127

FIFTY-FIRST CAUSE OF ACTION
    (MISSISSIPPI STATE LAW – ADDITIONAL LIABILITY) ......................................128

FIFTY-SECOND CAUSE OF ACTION
    (MISSOURI STATE LAW – PRIMARY LIABILITY) ................................................129

FIFTY-THIRD CAUSE OF ACTION
    (MISSOURI STATE LAW – ADDITIONAL LIABILITY)...........................................131

FIFTY-FOURTH CAUSE OF ACTION
    (MONTANA STATE LAW – PRIMARY LIABILITY)................................................132

FIFTY-FIFTH CAUSE OF ACTION
    (MONTANA STATE LAW – ADDITIONAL LIABILITY) .........................................133

FIFTY-SIXTH CAUSE OF ACTION
    (NEBRASKA STATE LAW – PRIMARY LIABILITY)..............................................135

FIFTY-SEVENTH CAUSE OF ACTION
    (NEBRASKA STATE LAW – ADDITIONAL LIABILITY) ........................................136

FIFTY-EIGHTH CAUSE OF ACTION
    (NEVADA STATE LAW – PRIMARY LIABILITY) ..................................................137

FIFTY-NINTH CAUSE OF ACTION
    (NEVADA STATE LAW – ADDITIONAL LIABILITY)............................................139

SIXTIETH CAUSE OF ACTION
    (NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY)..................................140

SIXTY-FIRST CAUSE OF ACTION
    (NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY) ...........................141

SIXTY-SECOND CAUSE OF ACTION
    (NEW JERSEY STATE LAW – PRIMARY LIABILITY)............................................143

SIXTY-THIRD CAUSE OF ACTION
    (NEW JERSEY STATE LAW – ADDITIONAL LIABILITY) .....................................144

SIXTY-FOURTH CAUSE OF ACTION
    (NEW MEXICO STATE LAW – PRIMARY LIABILITY) ..........................................146

SIXTY-FIFTH CAUSE OF ACTION
    (NEW MEXICO STATE LAW – ADDITIONAL LIABILITY)....................................147

SIXTY-SIXTH CAUSE OF ACTION
    (NORTH CAROLINA STATE LAW – PRIMARY LIABILITY)................................149

SIXTY-SEVENTH CAUSE OF ACTION
    (NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY) .........................150

SIXTY-EIGHTH CAUSE OF ACTION
    (NORTH DAKOTA STATE LAW – PRIMARY LIABILITY)....................................151

SIXTY-NINTH CAUSE OF ACTION
    (NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY).............................153

SEVENTIETH CAUSE OF ACTION
    (OHIO STATE LAW – PRIMARY LIABILITY) ..........................................................154

SEVENTY-FIRST CAUSE OF ACTION
    (OHIO STATE LAW – ADDITIONAL LIABILITY)....................................................155

SEVENTY-SECOND CAUSE OF ACTION
    (OKLAHOMA STATE LAW – PRIMARY LIABILITY)............................................156

SEVENTY-THIRD CAUSE OF ACTION
    (OKLAHOMA STATE LAW – ADDITIONAL LIABILITY) .....................................158

SEVENTY-FOURTH CAUSE OF ACTION
    (OREGON STATE LAW – PRIMARY LIABILITY)....................................................159

SEVENTY-FIFTH CAUSE OF ACTION
    (OREGON STATE LAW – ADDITIONAL LIABILITY).............................................160

SEVENTY-SIXTH CAUSE OF ACTION
    (PENNSYLVANIA STATE LAW – PRIMARY LIABILITY) .....................................162

SEVENTY-SEVENTH CAUSE OF ACTION
    (PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY)...............................163

SEVENTY-EIGHTH CAUSE OF ACTION
    (PUERTO RICO STATE LAW – PRIMARY LIABILITY) ...........................................164

SEVENTY-NINTH CAUSE OF ACTION
    (PUERTO RICO STATE LAW – ADDITIONAL LIABILITY)....................................166

EIGHTIETH CAUSE OF ACTION
    (RHODE ISLAND STATE LAW – PRIMARY LIABILITY)......................................167

EIGHTY-FIRST CAUSE OF ACTION
    (RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY) ...............................168

EIGHTY-SECOND CAUSE OF ACTION
    (SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY) ................................170

EIGHTY-THIRD CAUSE OF ACTION
    (SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)..........................171

EIGHTY-FOURTH CAUSE OF ACTION
    (SOUTH DAKOTA STATE LAW – PRIMARY LIABILITY) ....................................173

EIGHTY-FIFTH CAUSE OF ACTION
    (SOUTH DAKOTA STATE LAW – ADDITIONAL LIABILITY) .............................174

EIGHTY-SIXTH CAUSE OF ACTION
    (TENNESSEE STATE LAW – PRIMARY LIABILITY)............................................175

EIGHTY-SEVENTH CAUSE OF ACTION
    (TENNESSEE STATE LAW – ADDITIONAL LIABILITY) ......................................176

EIGHTY-EIGHTH CAUSE OF ACTION
    (TEXAS STATE LAW – PRIMARY LIABILITY) .......................................................178

EIGHTY-NINTH CAUSE OF ACTION
    (TEXAS STATE LAW – ADDITIONAL LIABILITY)..................................................179

NINETIETH CAUSE OF ACTION
    (UTAH STATE LAW – PRIMARY LIABILITY) ........................................................181

NINETY-FIRST CAUSE OF ACTION
    (UTAH STATE LAW – ADDITIONAL LIABILITY)...................................................182

NINETY-SECOND CAUSE OF ACTION
    (VERMONT STATE LAW – PRIMARY LIABILITY)................................................183

NINETY-THIRD CAUSE OF ACTION
    (VERMONT STATE LAW – ADDITIONAL LIABILITY)..........................................184

NINETY-FOURTH CAUSE OF ACTION
     (VIRGINIA STATE LAW – PRIMARY LIABILITY) ...................................................186

NINETY-FIFTH CAUSE OF ACTION
     (VIRGINIA STATE LAW – ADDITIONAL LIABILITY) ...........................................187

NINETY-SIXTH CAUSE OF ACTION
     (WASHINGTON STATE LAW – PRIMARY LIABILITY) ........................................188

NINETY-SEVENTH CAUSE OF ACTION
     (WASHINGTON STATE LAW – ADDITIONAL LIABILITY)..................................189

NINETY-EIGHTH CAUSE OF ACTION
     (WISCONSIN STATE LAW – PRIMARY LIABILITY) ............................................191

NINETY-NINTH CAUSE OF ACTION
     (WISCONSIN STATE LAW – ADDITIONAL LIABILITY) ......................................192

ONE HUNDREDTH CAUSE OF ACTION
     (WEST VIRGINIA STATE LAW – PRIMARY LIABILITY) .....................................194

ONE HUNDRED AND FIRST CAUSE OF ACTION
     (WEST VIRGINIA STATE LAW – ADDITIONAL LIABILITY)...............................195

ONE HUNDRED AND SECOND CAUSE OF ACTION
     (WYOMING STATE LAW – PRIMARY LIABILITY) ................................................197

ONE HUNDRED AND THIRD CAUSE OF ACTION
     (WYOMING STATE LAW – ADDITIONAL LIABILITY) .........................................198

PRAYER FOR RELIEF ........................................................................................................199

JURY TRIAL.........................................................................................................................200

Plaintiffs Corey Hardin, David Muhammad, and Chase Williams, individually and on behalf of all others similarly situated, bring this action against Defendants TRON Foundation ("TRON"), Justin Sun, and Zhiqiang (Lucien) Chen. Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of relevant whitepapers, press releases, media reports, and other publicly disclosed reports and information about Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery. Plaintiffs hereby allege as follows:

## I.   <u>INTRODUCTION</u>

1.      Within the Class Period, which is from August 24, 2017, through the present, TRON and Defendants Sun and Chen (the "Individual Defendants") promoted, offered, and sold TRON's securities, called TRX tokens, throughout the United States, in violation of federal and state securities laws. Plaintiffs, individually and on behalf of investors who purchased TRX in the United States (the "Class"), bring claims to recover the consideration paid for the TRX tokens, together with interest thereon, as well as attorneys' fees and costs.

2.      A digital token is a type of digital asset that exists on a "blockchain," which is essentially a decentralized digital ledger that records transactions; these blockchain-dependent assets are sometimes referred to as "crypto-assets." Various types of crypto-assets can reside on blockchains, including crypto-assets such as Bitcoin and Ethereum, which are decentralized digital commodities. There are also so-called "smart contracts" that operate under a set of predetermined conditions agreed to by users. With smart contracts, the terms of the contract are automatically

carried out by the software underlying the digital tokens (which, as relevant here, are referred to as "ERC-20 tokens" and exist on the Ethereum blockchain) when the agreed conditions are met.

3.    Certain of these digital tokens are classified as "utility tokens" and are associated with particular projects. Their primary purpose is to allow the holder to use or access the associated project. For example, one private-jet company has adopted a business model based on issuing utility tokens to participants in its membership program, who can then use them to charter flights on the company's planes. A utility token presumes a functional network on which the token can be used.

4.    Other tokens are more speculative, are referred to as "security tokens," and like a traditional security essentially represent one's investment in a project that is to be undertaken with the funds raised through the sale of the tokens. Although these tokens derive their value from the startup behind the project, they are unlike traditional securities in that they do not give the holder ownership in any corporate entity. Rather, investors purchase these tokens with the hope that their value will increase in the future as the network in which the token can be used is expanded based upon the managerial efforts of the issuer and those developing the project. Because such "security tokens" are properly classified as securities under federal and state law, the issuers of these tokens, including TRON, were required to file registration statements with the U.S. Securities and Exchange Commission ("SEC"). TRON, however, failed to do so. By selling these unregistered tokens to investors, TRON reaped millions of dollars in profits.

5.    The scheme worked as follows: First, TRON issued a "whitepaper" to investors that purported to describe in highly technical terms the TRON protocol's supposed utility to which TRX would be placed. The whitepaper described the TRON protocol as an "entertainment system of free content, in which TRX, TRON's coin, is circulated." The whitepaper also included various

technical details about the TRON protocol design and implementation to enable that utility. TRON made false statements about this protocol and promised utility. Indeed, TRON plagiarized these technical details, which in fact did not apply to TRX, from other whitepapers.

6.    The TRON whitepaper also omitted the disclosures that securities laws and the SEC have long deemed essential to investor protections in initial public offerings, including use of "plain English" to describe the offering; a description of key information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; and a standardized format that investors could readily follow. Without these critical disclosures, investors in TRX tokens were thus left to fend for themselves—precisely the opposite of what the securities laws require.

7.    Although TRX was a security, TRON did not register it as a security with the SEC and did not qualify for an exemption from registration requirements.

8.    TRON then sold the TRX tokens to investors through an "initial coin offering" (or "ICO"). TRON kept 35 percent of the TRX tokens for itself and solicited online exchanges of digital assets (known as cryptocurrency or crypto-asset exchanges) to list TRX tokens on their platforms and encourage purchases by a wide universe of investors.

9.    TRON's solicitation did not stop at the ICO. Instead, in order to maximize the value of the TRX it maintained and to further its financial position generally, TRON continued to promote the TRX token both on its website and on social media. These promotions included marketing tactics specifically designed to appeal to less-sophisticated consumers, such as seasonal giveaways and references to celebrities.

10.     TRON then sold the TRX tokens it had retained directly to customers through these crypto-asset exchanges, allowing it to profit from the artificially high prices induced by its misrepresentations.

11.     TRON promoted, offered, and sold TRX through generalized solicitations using statements posted on the Internet and distributed throughout the United States and the rest of the world, such that TRON offered and sold the securities to Plaintiffs and the general public in the United States. TRON's efforts at marketing itself in the United States included expending capital to list TRX on United States exchanges and promotions and marketing focused on prospective purchasers in the United States.

12.     During the ICO and throughout TRON's subsequent solicitation and sale of TRX, TRON did not disclose that TRX was a security. In fact, the TRON whitepaper stated that "TRX is not a security" and that "owning TRX does not mean that its owner has been afforded with the proprietary right, controlling right, and/or policy-making right regarding the TRON platform." Misleadingly, the whitepaper identified potential "risks after supervisory regulations are formed." This disclaimer merely contemplated potential *future* regulations that could impact the status of the TRX offering, falsely indicating the regulations did not apply at the time:

> Risks after supervisory regulations are formed: It cannot be denied that in the near future, supervisory regulations will be formed to restrain the fields of blockchain and electronic tokens. If supervisory and regulatory bodies perform a standard management over these fields, the electronic tokens  purchased during the ICO period  may be affected. The impacts include, but are not limited to, price and stability fluctuations and restraints.

Investors were thus led reasonably to believe that TRX was not subject, at issuance, to U.S. securities laws. TRON reinforced this impression by comparing TRX to crypto-assets like Bitcoin

that are appropriately considered commodities rather than securities. In addition, TRON further confirmed to investors at issuance that TRX was not a security by failing to file a registration statement for it with the SEC.

13.    It was not clear to a reasonable investor at purchase that TRX tokens were, contrary to TRON's representations, securities. That the TRX tokens were securities would not have been reasonably apparent until, at the earliest, April 3, 2019, when the SEC released a detailed "Framework" to analyze digital assets, indicating that TRX and other similar digital tokens are "investment contracts" and therefore securities under Section 2 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77b(a)(1).[1] Prior to that time, based on statements of TRON and the SEC, a reasonable investor would not have concluded that such tokens were securities under federal and state law. But TRX *was* a security under the applicable SEC Framework. TRON thus engaged in transactions that consisted of the solicitation, offer, and sale of securities without registering them as federal and state laws require for the protection of investors.

14.    TRX's status as a security has been confirmed by recent regulatory action by the SEC. On September 30, 2019, nearly six months after releasing its Framework, the SEC found that another major issuer of digital tokens, Block.one, which had issued a token called EOS between June 2017 and June 2018, had likewise violated the Securities Act by selling unregistered securities to the public. The EOS token was functionally identical to TRX—both tokens were not described as securities to investors, but are securities under the SEC's April 2019 Framework. As a result of

---

[1] *Framework for "Investment Contract" Analysis of Digital Assets*, SEC (April 3, 2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_ednref1.

an SEC enforcement action, Block.one was required to pay a $24 million fine.[2] The SEC's determination that EOS is a security applies with equal force to TRX.

15.    Plaintiffs and the Class are entitled to recover the consideration they paid for the TRX tokens with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase.

16.    In addition, numerous Class members resided, and were present at the time they traded in TRX tokens, in States or territories that provide their own "Blue Sky" protections for investors.[3] Under these laws, investors in these jurisdictions who purchased unregistered TRX securities are entitled to rescission, and generally interest thereon, attorneys' fees, and costs.

17.    Accordingly, Plaintiffs individually and on behalf of the Class bring claims to recover the consideration paid for the TRX tokens, together with interest thereon, as well as attorneys' fees and costs.

## II.    **PARTIES**

### A.    **Plaintiffs**

18.    Plaintiff Corey Hardin is a resident of Las Vegas, Nevada. Hardin and members of the Class purchased TRX, an unregistered security, from Nevada during the Class Period. A true and correct copy of Hardin's TRX transactions is included in Exhibit A.

---

[2] Press Release, *SEC Orders Blockchain Company to Pay $24 Million Penalty for Unregistered ICO* (Sept. 30, 2019), https://www.sec.gov/news/press-release/2019-202; Block.one, Exchange Act Release No. 10714, 2019 WL 4793292 (Sept. 30, 2019).

[3] These "Blue Sky" statutes are so named because they are designed to protect investors from "speculative schemes which have no more basis than so many feet of blue sky." *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550 (1917) (internal citations omitted). Blue Sky statutes typically define "securities" to include "investment contracts," which has been interpreted by State courts commensurate with the standard set forth by the Supreme Court in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946).

19.     Plaintiff David Muhammad is a resident of Grand Prairie, Texas. Muhammad and members of the Class purchased TRX, an unregistered security, in Texas during the Class Period. A true and correct copy of Muhammad's TRX transactions is included in Exhibit B.

20.     Plaintiff Chase Williams is a resident of Houston, Texas. Williams and members of the Class purchased TRX, an unregistered security, from Texas during the Class Period. A true and correct copy of Williams's TRX transactions is included in Exhibit C.

**B.      Defendants**

21.     Defendant TRON is an entity formed under the laws of Singapore with offices in California, Singapore, and Beijing. TRON is a blockchain-focused software development company that is developing and promoting the TRON blockchain protocol.

22.     Defendant Justin Sun is a co-founder of TRON. Upon information and belief, he resides in China.

23.     Defendant Zhiqiang (Lucien) Chen is a co-founder of TRON and the former Chief Technology Officer ("CTO") of TRON. Upon information and belief, he resides in China.

**III.    JURISDICTION AND VENUE**

24.     Jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant, and in which any member of a class of plaintiffs is a citizen of a State and any defendant is a citizen or subject of a foreign state.

25.     Jurisdiction of this Court is further founded upon 28 U.S.C. § 1331 because the Complaint asserts claims under Sections 5, 12(a)(1), 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77e, 77*l*(a)(1), 77*l*(a)(2), 77o. This Court further has jurisdiction over the Securities Act claims pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

26.     This Court has jurisdiction over violations of state Blue Sky statutes pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

27.     This Court has personal jurisdiction over Defendants. Defendants purposefully availed themselves of the privilege of conducting activities in the United States in connection with their offer or sale of unregistered securities, including through their opening of a TRON office in San Francisco in November 2017. Defendants engaged in conduct that had a foreseeable substantial effect in the United States connected with those offers and sales. Defendants also transacted business within New York pursuant to N.Y. C.P.L.R. 302(a)(1). Defendants also maintained an interactive dynamic website in English, accessible by and targeted to United States users, where it described the TRX token and made the whitepapers available. Defendant Sun has also stated publicly that TRON actively prosecutes its trademarks in the United States, and has tweeted promoting the TRX token specifically to United States users.

28.     Venue is proper pursuant to 15 U.S.C. § 77v(a) in that this is a district wherein one or more defendants is found or transacts business or where the offer or sale of TRX tokens took place. In 2018 and 2019, TRX representatives, including Justin Sun, attended and spoke at conferences in which they touted TRX, including in this District. For example, in May 2019, Justin Sun attended and spoke at the Consensus Conference, one of the biggest crypto-asset conferences of the year, in New York City. Starting in 2018, TRON also hosted numerous events with a New York-based TRON community called "Team Tronics."

IV.     **FACTUAL ALLEGATIONS**

   **A. The First Cryptocurrency: Bitcoin**

29.     A crypto-asset is a digital asset designed to work as a medium of exchange or a store of value or both. Cryptocurrencies leverage a variety of cryptographic principles to secure

transactions, control the creation of additional units, and verify the transfer of the underlying digital assets.

30.     Bitcoin was the world's first decentralized crypto-asset. It is also the largest and most popular crypto-asset, with a market capitalization of approximately $218 billion. Bitcoin spawned a market of other crypto-asset that, together with Bitcoin, have a current market capitalization of $369 billion. (The term "bitcoin" can refer to both a computer protocol and a unit of exchange. Accepted practice is to use the term "Bitcoin" to label the protocol and software, and the term "bitcoin" to label the units of exchange.)

31.     At its core, Bitcoin is a ledger that tracks the ownership and transfer of every bitcoin in existence. This ledger is called the blockchain.

32.     Blockchains act as the central technical commonality across most crypto-assets. While each blockchain may be subject to different technical rules and permissions based on the preferences of its creators, they are typically designed to achieve the similar goal of decentralization.

33.     Accordingly, blockchains are generally designed as a framework of incentives that encourages some people to do the work of validating transactions while allowing others to take advantage of the network. In order to ensure successful validation, those completing the validation are also required to solve a "Proof of Work" problem by expending computational resources, which has the effect of making the blockchain more accurate and secure. For Bitcoin, those who validate the blockchain transactions and solve the "Proof of Work" program are rewarded with newly minted bitcoin. This process is colloquially referred to as "mining."

34.    Mining is one method by which an individual can acquire crypto-assets like Bitcoin. A second and more common manner is to obtain crypto-assets from someone else. This is often accomplished by acquiring it through an online "crypto-asset exchange."

35.    Online crypto-asset exchanges are one place to purchase Bitcoin and other crypto-assets. These exchanges are similar to traditional exchanges in that they provide a convenient marketplace to match buyers and sellers of virtual currencies.

36.    In April 2013, there were only seven crypto-assets listed on coinmartketcap.com, a popular website that tracks the crypto-asset markets. As of this filing, the site monitors more than 6,500 crypto-assets.

37.    For a time, Bitcoin was the only crypto-asset available on exchanges. As crypto-assets grew in popularity, exchanges began listing other crypto-assets as well and trading volumes expanded. In early 2013, daily Bitcoin trading volumes hovered between $1 million and $25 million. By the end of 2017, daily Bitcoin trading volumes ranged between $200 million and $3.8 billion.

38.    Bitcoin is a commodity, rather than a security, because it allows for quick and secure transactions, can serve as a long-term store of value, and is decentralized from any government or private control. There is no "Bitcoin Inc." that has the ability to cause the price of bitcoin to rise through careful management or fall through mismanagement or deception. Instead, Bitcoin's value is purely a response to market-wide forces, and a customer buying a bitcoin is not investing in a common enterprise. Both the CFTC and courts have accordingly recognized that Bitcoin is appropriately classified as a commodity.

**B.    Ethereum**

39.    Ethereum is the second-most popular crypto-asset, with a market capitalization of approximately $46 billion. The Ethereum blockchain functions similarly to the Bitcoin blockchain

insofar as its miners act as the validators of the network. Miners of the Ethereum blockchain are paid for their services in the form of newly minted ether. (The term "Ethereum" refers to the open software platform built on top of the Ethereum blockchain, while the term "ether" is the unit of account used to exchange value within the Ethereum "ecosystem"—that is, the overall network of individuals using Ethereum or participating in the development of its network.) Ethereum, like Bitcoin, is a commodity rather than a security.

40. Unlike Bitcoin's blockchain, Ethereum was designed to enable "smart contract" functionality. A smart contract is a program that verifies and enforces the negotiation or performance of a contract. Smart contracts can be self-executing and self-enforcing, which theoretically reduces the transaction costs associated with traditional contracting.

41. As an example of how a smart contract works, consider a situation where two people want to execute a hedging contract. They each put up $1,000 worth of ether. They agree that, after a month, one of them will receive back $1,000 worth of ether at the dollar exchange rate at that time, while the other receives the rest of the ether. The rest of the ether may or may not be worth more than it was at the beginning of the month.

42. A smart contract enables these two people to submit the ether to a secure destination and automatically distribute the ether at the end of the month without any third-party action. The smart contract self-executes with instructions written in its code which get executed when the specified conditions are met.

43. In order to enable widespread adoption and standardized protocols for smart contracts, the Ethereum community has created certain out-of-the box smart contracts called Ethereum Request for Comments ("ERCs").

44.     An ERC is an application standard for a smart contract. Anyone can create an ERC and then seek support for that standard. Once an ERC is accepted by the Ethereum community, it benefits Ethereum users because it provides for uniform transactions, reduced risk, and efficient processes. The most widespread use of ERCs is to allow individuals to easily launch and create new digital tokens.

### C.     ERC-20 Tokens

45.     ERC-20 is an application standard that the creator of Ethereum, Vitalik Buterin, first proposed in 2015. ERC-20 is a standard that allows for the creation of smart-contract tokens on the Ethereum blockchain, known as "ERC-20 tokens."

46.     ERC-20 tokens are built on the Ethereum blockchain, and therefore they must be exchanged on it. Accordingly, ERC-20 tokens are functionally different than crypto-assets like Bitcoin and Ethereum because they do not operate on an independent blockchain.

47.     ERC-20 tokens all function similarly by design—that is, they are compliant with the ERC-20 application standard. Some properties related to ERC-20 tokens are customizable, such as the total supply of tokens, the token's ticker symbol, and the token's name. All ERC-20 tokens transactions, however, occur over the Ethereum blockchain; none of them operates over its own blockchain.

48.     ERC-20 tokens are simple and easy to deploy. Anyone with a basic understanding of Ethereum can use the ERC-20 protocol to create her own ERC-20 tokens, which she can then distribute and make available for purchase. Even people without any technical expertise can have their own ERC-20 token created for them, which can then be marketed to investors.

### D.     The Advent Of The "ICO"

49.     Between 2014 and 2016, Bitcoin's price fluctuated between $200 and $800. During this same time frame, ether's price fluctuated between roughly $1 and $10.

50.     By the end of 2016, interest in crypto-assets began to accelerate, with prices growing at a rate historically unprecedented for any asset class. Over the course of 2017 alone, bitcoin's price increased from approximately $1,000 to approximately $20,000. Ethereum's growth was even more dramatic. On January 1, 2017, Ethereum was trading at approximately $8 per ether. Approximately one year later, it was trading at over $1,400 per ether—a return of approximately 17,000 percent over that period.

51.     Seeking to capitalize on the growing enthusiasm for crypto-assets, many entrepreneurs sought to raise funds through initial coin offerings, or ICOs, including ICOs for newly created ERC-20 tokens, such as the TRX tokens. Many of these issuers improperly chose not to register their securities offerings with the SEC in order to save money and not "open their books" to the SEC, even though investors thereby were denied access to critical information they would have received from an SEC-registered offering. As a result, investors, including investors in TRX, were denied access to important information before making their investment decision.

52.     In the case of TRX, the initial offering saw 40 billion (or 40 percent of the total supply) TRX tokens sold, raising approximately $70 million. Investors would explore the various crypto-asset exchanges and social media sites that published active and upcoming ICOs. Many of these postings encouraged trading in TRX for profit. As one poster explained: "We hit 1 bil market cap. Surely its getting recognition. Lots of them made such good profit already and will cash out. I bought [at] .007 [dollars / TRX] yesterday and already doubled up, so its never late for new investors. I m holding till 1$ at least!"

53.     Between 2017 and 2018, nearly $20 billion was raised through ICOs. None of these ICOs was registered with the SEC. Of the approximately 800 ICOs launched between 2017 and 2018, the vast majority were issued using the ERC-20 protocol. In the months leading up to

TRON's ICO, for example, issuers such as Block.one, Bancor, and Status had *each* raised at least *a hundred million dollars* from selling their ERC-20 tokens through ICOs.

54.     Like most ICOs, ERC-20 ICOs were typically announced and promoted through public online channels. Issuers, including TRON, typically released a "whitepaper" describing the project and terms of the ICO. These whitepapers advertised the sale of tokens or coins through the ICO. They typically advertised the creation of a "new blockchain architecture."

55.     The whitepapers typically contained vastly less information than a registration statement filed with the SEC would have included. For example, whitepapers did not include a "plain English" description of the offering; a description of important information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; or a standardized format that investors could readily follow.

56.     When tokens were sold through an ERC-20 ICO, the issuer usually asserted that such tokens entitled their holders to certain rights related to a venture underlying the ICO, such as the right to use certain services provided by the issuer. In almost all cases, these tokens could also be traded, thereby giving investors a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others (that is, the people operating the issuer whose efforts will impact the value of those tokens on the secondary market).

57.     These tokens were frequently listed on crypto-asset exchanges, where they were bought and sold using other crypto-assets (such as Bitcoin or Ethereum) or traditional currencies such as the U.S. dollar.

58.     Even after an ICO, an issuer could receive a direct financial benefit from high prices in their token tokens by selling them to customers on these exchanges. These subsequent offerings

were not registered or flagged to customers; instead, they most often relied on the same whitepapers that had accompanied the sale of the tokens in the ICO, as well as continuing marketing efforts from the issuers seeking to increase the price of the tokens.

### E.   TRON Solicited And Sold The TRX Token Through Both An ICO And Subsequent Sales On Crypto-Asset Exchanges

59.   In June 2017, TRON published the first version of the "TRON whitepaper." Casting the TRON protocol as an attempt to "heal the Internet," the whitepaper described the protocol as "the blockchain's entertainment system of free content, in which TRX, TRON's coin, is circulated." The whitepaper asserted that, through TRX, content providers would no longer need to pay high fees to centralized platforms such as Google Play and Apple's App Store.

60.   TRON launched the TRX token by utilizing the ERC-20 protocol. At launch, TRON created 100 billion tokens.

61.   TRON retained approximately 35 percent of those tokens. TRON sold an additional 15 percent of the tokens in what TRON described as a "private offering." TRON used 10 percent of the tokens to pay Piewo Huanle Technology. TRON described Piewo as "an initial TRON supporter," though it did not disclose that Sun founded and controlled Piewo.

62.   The remaining 40 percent of the tokens were sold during TRX's ICO, which TRON organized and ran, raising approximately $70 million in proceeds.

63. The TRON ICO was promoted on a number of crypto-asset exchanges, including Binance:

> # Binance Will Launch 1.9 Billion TRX ICO Today (BTC and ETH Session)
>
>  Binance
> 3 years ago
>
> **Dear community,**
>
> We will launch 1.9 billion TRX ICO ( BTC and ETH session) on Binance exchange at 8PM. Aug 24, 2017 (Beijing Time).
>
> **The details for TRX ICO session:**
>
> 1. Token name: TRX;
> 2. ICO ammount of BNB session: 1,900,000,000 TRX;
> 3. Support market: BTC(1 billion), ETH (900 million);
> 4. Exchange rate: 1 TRX = 0.00000038 BTC; 1 TRX ≈ 0.00000488 ETH;
> 5. ICO time: 8PM. 2017/08/24 - 8PM. 2017/08/31 (Beijing Time);
> 6. Sale type: first come first served basis. at the Bitcoin Price and Ethereum Price stated on page at the time.

64. Throughout the Class Period, TRX was available for sale on dozens of different exchanges. This includes exchanges that were incorporated or headquartered in the United States and that targeted and welcomed United States traders.

65. Throughout the Class Period, TRON and the Individual Defendants solicited the sale of TRX in order to serve their own financial interests. Because Defendants continued to possess many TRX tokens themselves and because they did not comply with any rules and regulations prohibiting their subsequent sale of those TRX tokens, Defendants could profit directly from high TRX prices by selling the TRX they held on crypto-asset exchanges. They achieved these high prices through continuous systematic marketing of the TRX tokens, including the publication of information designed to make TRX tokens appear to be favorable investments.

16

66.     TRON's website served as a continuous form of solicitation, throughout the Class Period, that both promoted and enabled sales of TRX. Throughout the Class Period, TRON's website prominently included links to a page focusing on TRX. That page, in turn, touted the value of TRX and its links to other products created by Defendants. The TRON website also listed TRX's global market performance, including the number of holders and its "Global Rank." Finally, TRON's website has consistently included links to dozens of exchanges where individuals can purchase TRX tokens—as of this filing, it lists over 75 exchanges on which TRX is available. TRON also published updated whitepapers that continued to explain why investors in TRX tokens should expect profits and touted the quality of its management team.

67.     Defendants also engaged in steps necessary to the distribution of TRX throughout the Class Period by promoting TRX tokens on social media. The below are just some of the many instances spanning the entire Class Period in which Defendant Sun or an official TRON-related account promoted and solicited TRX, including ones that attempted to court customers by creating promotions tied to holidays and other seasonal events:

- August 31, 2017



17

- September 19, 2017



- October 31, 2017



- December 18, 2017



- February 11, 2018



- March 1, 2018



- July 20, 2018



- September 18, 2018



Bittrex instigates both Litecoin (LTC) and Tron (TRX) into the USD market...
This is a significant milestone for Tron (TRX) in particular, as this is the first time that Tron has been paired with the USD in the United States.
globalcoinreport.com

- December 21, 2018





**TRON Foundation** ✔ @Tronfoundation · Dec 21, 2018 ⌄

HO!HO!HO!

**Xmas is coming! We wish you Merry Xmas! Share** & **comment below this post with** #niTROn2019. Tell #TRON about your 2018 and what are looking forward in 2019! **We** will pick 13 winners!

1st Prize: 19,000TRX
2nd Prize: 8,888TRX
3rd Prize: 6,666TRX
4th-13th Prizes: 2,425TRX

💬 1.9K          ⟲ 1.6K          ♡ 2.3K          ⬆

- February 6, 2019



**Justin Sun** ✔ @justinsuntron · Feb 6, 2019 ⌄

**We'll have a secret campaign released on** #ValentinesDay **for** #TRON **and** #BitTorrent**! Numerous celebrities will be on board. FYI, one of the main character in** #Friends**, one winner of 3** #goldenglobeawards **& one winner of 4** #SuperBowl **titles.** $BTT #BTT #TRX $TRX

💬 311          ⟲ 815          ♡ 2.3K          ⬆

- June 22, 2019



- August 20, 2019



**TRON Foundation** ✔
@Tronfoundation

7 Days Fried chicken + #TRX Airdrop Event
Rules:
1. Follow @TRON_KOR
2. Join Kakao
open.kakao.com/o/gDPSfJwb
open.kakao.com/o/ge1ZA5Q
3. Fill the sheet forms.gle/XR19faveruTU67...
Rewards:
5 ppl will be picked, each get 1 coupon
10 ppl will be randomly picked to get 1000 #TRX airdrop

> **TRON Foundation Korea** ✔ @TRON_KOR · Aug 19, 2019
> [여름엔 치킨에 TRX]
> 참여방법:
> 1.TRON 트위터 팔로워
> twitter.com/TRON_KOR
> 2.TRON 카카오톡 친구
> open.kakao.com/o/grAla4Q
> open.kakao.com/o/gDPSfJwb
> open.kakao.com/o/ge1ZA5Q
> 3. Google 설문지 참여
> forms.gle/XR19faveruTU67...
>
> *단! 치킨쿠폰을 받고 싶은신 사용자는 한국재단 트위터를 10개 공유
> Show this thread
>
> 

12:34 AM · Aug 20, 2019 · Twitter Web App

**27** Retweets   **83** Likes   **1** Quote

💬 8          ⟲ 28          ♡ 83          ⬆

- November 23, 2019



**TRON Foundation** ✔
@Tronfoundation

The #TRON X @OKEx Merry Giveaway is ongoing! Now deposit 50,000 #TRC20-#USDT to @OKEx, hold and take a chance to win 1,000 USDT on Nov25!  Hold till Dec2 to take part in all 3 draws, having the chance to win up to 3000 USDT!
For more details and rules 👇



TRC20-USDT Merry Giveaway：Campaign №3: Win up to 3000 TRC20-USDT in a ...
Time: 00:00, Nov 21, 2019 to 23:59, Dec 03, 2019 (HKT)
🔗 medium.com

10:02 PM · Nov 23, 2019 · Twitter Web App

**14** Retweets   **67** Likes   **1** Quote

25

- December 15, 2019



- March 6, 2020

 **Justin Sun** ✔
@justinsuntron ⌄

Trading now! If your friends ask you where is the best exchange to buy $TRX in United States and Europe, the best answer is @krakenfx ! #TRON #TRX $TRX



**Kraken Exchange** ✔ @krakenfx · Mar 5
🚀*UPDATE* #Tron ($TRX) trading is now available on Kraken

LIVE trading pairs include:

🇺🇸TRX/USD
🇪🇺TRX/EUR
💰TRX/XBT
💵TRX/ETH

Learn more about our newest crypto offering: blog.kraken.com/post/4092/tron...

2:55 AM · Mar 6, 2020 · Twitter Web App

- April 11, 2020



**Justin Sun** ✔
@justinsuntron                                                ⌄

#TRX is available on @SwipeWallet, users can buy & sell with Bank,
Debit & Apple Pay and spend at 50+ million locations with Swipe
Card. Thanks for the support to #TRON ecosystem 🤗



7:49 AM · Apr 11, 2020 · Twitter Web App

**131** Retweets    **327** Likes    **3** Quotes

28

68.     Defendants Sun and Chen were also identified as central to TRX in various whitepapers. In August 2017, for example, a whitepaper pointed to Sun as the "Founder and CEO" while promoting his academic credentials, early investment in the crypto-asset Ripple, and listing on Forbes China's 30 entrepreneurs under 30. It also described Chen as the Director of Operations and cited his professional experience and numerous lectures on blockchain topics.

69.     This continuous promotion of TRX profited Defendants in multiple ways. Defendants themselves possessed substantial quantities of TRX even after the initial offerings. Because Defendants did not follow any rules or regulations limiting their sales of TRX in the market, Defendants could leverage a high price of TRX to profit directly by selling it directly to investors. Defendants were also able to use a high TRX price to promote the adoption of other tokens and services they ultimately offered, such as the BitTorrent token.

70.     TRON also specifically directed its promotion and advertisement of TRX tokens to the United States. In 2017 and 2018, TRX representatives, including Defendants Sun and Chen, attended and spoke at numerous conferences in which they touted TRX, including in New York City and San Francisco, California. And according to an article drafted by Defendant Chen and posted to the website "Medium," Defendant "Justin [Sun] was in the USA . . . on September 4th, 2017"—that is, within days of TRON's ICO.

**F.      Because of Defendants' Efforts, Investors Would Not Reasonably Have Understood Prior To April 3, 2019, At The Earliest, That TRX Was A Security**

71.     TRON and its promoters made numerous false statements and omitted key information to lead reasonable investors to conclude that the TRX tokens it sold were not securities. To conceal the fact that purchasers were actually investing in Defendants' future efforts, Defendants misled the public into thinking that they were purchasing a decentralized and already functional crypto-asset. To further this illusion, Defendants stated that TRX tokens were not

securities, compared TRX to Bitcoin and Ethereum (which are commodities, rather than securities), and touted false technical details about its supposed crypto-commodity and its utility. Defendants made and repeated these statements in a series of whitepapers published prior to the ICO which together comprise a prospectus not only for the ICO but also for all of TRON's subsequent sales of TRX tokens.

72.     TRON conveyed that TRX was not a security by stating that "TRX is not a security" and that "owning TRX does not mean that its owner has been afforded with the proprietary right, controlling right, and/or policy-making right regarding the TRON platform." The whitepaper stated: "TRX does not belong to any of the following categories: (a) currency of any type; (b) securities; (c) stock rights of a legal entity; (d) stocks, bonds, bills, warrants, certificates, investment contract, or other instruments affording similar rights." TRON then failed to register its offering of TRX with the SEC, thus further misrepresenting that TRX was not a security.

73.     Beyond these express statements, TRON relied on the market's lack of understanding and awareness concerning how TRX differed from other crypto-assets like Bitcoin and Ethereum, which were commodities rather than securities. TRON took advantage of the excitement generated by the hundreds of millions of dollars flooding into various crypto-asset projects by marketing their token as the next Bitcoin.

74.     To further the impression that TRX was not a security, TRON misleadingly compared TRX to Bitcoin in its whitepapers. These comparisons were designed to mislead reasonable consumers to believe that purchasing TRX was not an investment in a common enterprise run by Defendants but was instead a purchase of a decentralized commodity like Bitcoin.

75.     Bitcoin is a commodity because from its inception it was functional as a medium of exchange and decentralized from private or governmental control. The same is true of Ethereum

and other crypto-assets that were prominent at the time of TRON's ICO. When the Bitcoin and Ethereum systems were created, only a tiny fraction of the underlying crypto-asset units were in existence. As a result, increases in bitcoin and ether could occur at a fixed rate over time, such as from mining. The growth of Bitcoin and Ethereum thus occurs through a decentralized process as numerous users engage in mining and other efforts to build the ecosystem.

76.     By contrast, TRON issued nearly all of the TRX tokens at issuance, at very little economic cost to TRON's founders. The creation of TRX tokens thus occurred through a *centralized* process, in contrast to Bitcoin and Ethereum. This, however, would not have been apparent at issuance to a reasonable investor. Rather, it was only after the passage of time and disclosure of additional information about the issuer's intent, process of management, and success in allowing decentralization to arise that a reasonable purchaser could know that he or she had acquired a security. Purchasers were thereby misled into believing that TRX was something other than a security, when it *was* a security.

77.     TRON founders, as experienced players in the crypto-asset ecosystem, knew the differences between truly decentralized processes, like those in Bitcoin and Ethereum, and an ERC-20 token. Indeed, Sun was an early promoter and employee of Ripple, another crypto-asset that created 100 billion tokens out of thin air rather than through mining. And Defendant Chen was the technical CTO who was responsible for the architecture for TRON's protocol.

78.     TRON made express comparisons between TRX and Bitcoin. The TRX whitepaper asserted, for example, that its "distributed user registration mechanism is *as secure as Bitcoin*"; "the number of blocks generated per hour is automatically set by the system, which is *similar to the Bitcoin network*"; and "[s]imilar to Bitcoin, [t]he [TRON] market is based on blockchain and trade in virtual currency."

31

79.     Similarly, Defendant Sun promoted TRON's offerings as similar to and "better than" Ethereum. For example, in multiple tweets, Sun touted TRX as being "better than" ETH, which, unlike TRX, is not a security. Sun has named himself the "Ethereum killer" and further promoted TRON over Ethereum by announcing on Twitter that he wanted to create a fund to "rescue" developers working on Ethereum (and EOS) "from the collapse of their platform as long as those developers migrate . . . to #TRON. #TRX." Sun also has tweeted that TRON is "100x faster than #ETH" and that TRON "100% guarantee[s] better user experience!"

80.     And in an April 7, 2018 press release, TRON provided a side-by-side feature comparison with Ethereum, touting its network's non-existent technical abilities as being better than Ethereum's. For example, TRON stated that "Compared with Ethereum, TRON has expanded its network almost limitlessly at the beginning of the project by dividing the architecture into different layers: storage, core, and application."

81.     That same press release also misleadingly stated that TRON's protocol was already operational and that the TRX token provided utility, by stating that "[t]hroughout the years, TRON has accumulated a large number of DApp[4] resources to attract a great number of users." At that time, because TRON existed simply as an ERC-20 token on Ethereum, there was no such utility.

82.     Defendants also contributed to the appearance of similarities between Bitcoin and TRON through Defendants' emphasis on decentralization and the current sufficiency of the platform. Through the summer of 2017, TRON issued a buzzword-heavy whitepaper, which it updated multiple times in the lead up to its ICO. TRON described the design and capabilities of its "***currently up and running platform***," with a roadmap for ten years of prospective developments. TRON described its offering as a Bitcoin-like protocol for "a worldwide free

---

[4] A Dapp is a "decentralized application" that runs on a distributed computing system.

content entertainment system with the blockchain and distributed storage technology." TRON explained that its protocol "allows each user to freely publish, store and own data, and in the decentralized autonomous form, decides the distribution, subscription and push of contents and enables content creators by releasing, circulating and dealing with digital assets, thus forming a ***decentralized*** content entertainment ecosystem." When TRON described TRX as decentralized and currently functional, it was evoking those assets, which did not require purchasers to tie the success of their investment to the efforts of an issuer.

83.    Defendants' attempts to link TRX to immediately useful crypto-assets like Bitcoin and Ethereum was in sharp contrast to the fact that, as Defendants knew, TRX had no utility at the launch of its ICO. Its ERC-20 tokens could not be used on any TRON network because, as TRON would have known, none existed. That is, when TRON asserted that "[TRX] is the basic unit of accounts in TRON's blockchain," it was a misstatement because there was no TRON blockchain in existence—TRX tokens existed only on the Ethereum blockchain.

84.    Creating a TRX token does not suddenly enable the various utilities that TRON described about its protocol, which depend on a new, independent blockchain; at issuance, the TRX token was simply a smart contract built on the Ethereum blockchain and not part of an independent blockchain. Accordingly, when TRON criticized the type of "blockchain transaction confirmation mechanism" that Bitcoin and Ethereum use as "inefficient" and proposed "a mixed-voting mechanism" as a solution, it implied that TRX tokens are subject to those new mechanisms. But the TRX tokens were not, because the TRX token existed solely on the Ethereum blockchain at issuance, and thus bound by its transaction-confirmation mechanisms.

85.    Not only were the ERC-20 tokens fundamentally incapable of delivering on the promises of the TRON protocol, Defendants articulated no vision for TRX and TRON to create

33

the alleged utility called for in the whitepapers. This is best evidenced by the extensive plagiarism in TRON's whitepapers, meant to create the illusion of utility.

86.     The TRON whitepapers plagiarized several sections of two other crypto-asset whitepapers: Filecoin and InterPlanetary File System (IPFS). After the accusations of plagiarism were made public, Defendants removed copies of the whitepaper from their website and dismissed the allegations of plagiarism, blaming translation issues.

87.     For example, Defendants copied nearly verbatim the "protocol stack" structure of IPFS. When comparing TRON's structure on the left with IPFS's on the right, it is clear that TRON's whitepaper copied IPFS's, just reversing the order in which the elements appear:

| TRON White Paper | IPFS Whitepaper |
|---|---|
| | IPFS is peer-to-peer; no nodes are privileged. IPFS nodes store IPFS objects in local storage. Nodes connect to each other and transfer objects. These objects represent files and other data structures. The IPFS Protocol is divided into a stack of sub-protocols responsible for different functionality: |
| **1. File Storage Protocol** | |
| TRON's bottom layer consists of a group of multi-layer protocol stacks with various implementation models for each layer and is integrated in modules. Corresponding interface standards are defined between layers, including the following five levels: | 1. **Identities** - manage node identity generation and verification. Described in Section 3.1. |
| | 2. **Network** - manages connections to other peers, uses various underlying network protocols. Configurable. Described in Section 3.2. |
| · name layer: a self-certified PKI namespace | 3. **Routing** - maintains information to locate specific peers and objects. Responds to both local and remote queries. Defaults to a DHT, but is swappable. Described in Section 3.3. |
| · MerkleDAG layer: data structure format | 4. **Exchange** - a novel block exchange protocol (BitSwap) that governs efficient block distribution. Modelled as a market, weakly incentivizes data replication. Trade Strategies swappable. Described in Section 3.4. |
| · Exchange layer: block transmission and copy | 5. **Objects** - a Merkle DAG of content-addressed immutable objects with links. Used to represent arbitrary datastructures, e.g. file hierarchies and communication systems. Described in Section 3.5. |
| · Routing layer: locating peer nodes and objects | 6. **Files** - versioned file system hierarchy inspired by Git. Described in Section 3.6. |
| · Network layer: establishing connection among peer nodes | 7. **Naming** - A self-certifying mutable name system. Described in Section 3.7. |
| · Node and identification | |

34

88.    After copying the file structure protocol, TRON also copied various technical implementation details as well from the IPFS whitepaper:

| TRON Copy | IFPS Copy |
|---|---|
| **BitSwap strategy**<br><br>The node's strategy to send blocks directly influences the performance of block swapping. It should meet the following objectives:<br><br>(1) Maximize the node and the overall transaction performance;<br><br>(2) Prevent greedy nodes from taking advantage of or reducing the swapping performance;<br><br>(3) Efficient and exclusive to other strategies;<br><br>(4) Be friendly to the credit node.<br><br>A practical strategy selection is Sigmoid function, the defined debt ratio $r$ is:<br><br>$$r = \frac{\text{bytes\_sent}}{\text{bytes\_recv} + 1}$$<br><br>At a given $r$, the probability of sending to indebted node will be calculated as:<br><br>$$P\left(\text{send} \mid r\right) = 1 - \frac{1}{1 + exp(6 - 3r)}$$<br><br>The sending probability drops dramatically with the rising of debt ratio. | *3.4.2    BitSwap Strategy*<br>    The differing strategies that BitSwap peers might employ have wildly different effects on the performance of the exchange as a whole. In BitTorrent, while a standard strategy is specified (tit-for-tat), a variety of others have been implemented, ranging from BitTyrant [8] (sharing the least-possible), to BitThief [8] (exploiting a vulnerability and never share), to PropShare [8] (sharing proportionally). A range of strategies (good and malicious) could similarly be implemented by BitSwap peers. The choice of function, then, should aim to:<br><br>1. maximize the trade performance for the node, and the whole exchange<br><br>2. prevent freeloaders from exploiting and degrading the exchange<br><br>3. be effective with and resistant to other, unknown strategies<br><br>4. be lenient to trusted peers<br><br>    The exploration of the space of such strategies is future work. One choice of function that works in practice is a sigmoid, scaled by a *debt retio*:<br>Let the *debt ratio* $r$ between a node and its peer be:<br><br>$$r = \frac{\text{bytes\_sent}}{\text{bytes\_recv} + 1}$$<br><br>Given $r$, let the probability of sending to a debtor be:<br><br>$$P\left(\text{send} \mid r\right) = 1 - \frac{1}{1 + exp(6 - 3r)}$$<br><br>As you can see in Figure 1, this function drops off quickly as the nodes' *debt ratio* surpasses twice the established credit. |

89.    Defendants also copied sections of Filecoin's whitepaper for technical details:

TRON White Paper                                Filecoin Whitepaper

| | |
|---|---|
| 1)    Proof-of-Replication (PoRep) algorithm<br><br>The server (prover, P) convinces the user (verifier, V) that its data D replicated and stored in multiple physical storage locations. | 3.2    Proof-of-Replication<br><br>*Proof-of-Replication* (PoRep) is a novel *Proof-of-Storage* which allows a server (i.e. the prover $\mathcal{P}$) to convince a user (i.e. the verifier $\mathcal{V}$) that some data $\mathcal{D}$ has been *replicated* to its own uniquely dedicated physical storage. Our scheme is an interactive protocol, where the prover $\mathcal{P}$: (a) commits to store $n$ distinct *replicas* (physically independent copies) of some data $\mathcal{D}$, and then (b) convinces the verifier $\mathcal{V}$, that $\mathcal{P}$ is indeed storing each of the replicas via a challenge/response protocol. To the best of our knowledge, PoRep improves on PoR and PDP schemes, preventing *Sybil Attacks*, *Outsourcing Attacks*, and *Generation Attacks*. |

90.    And these are not isolated instances of copying. According to an analysis by an IPFS employee, at least nine of the twenty-four pages devoted to TRON's technical aspects plagiarized Filecoin, IPFS, or another cryptocurrency project.

91.     This patchwork plagiarism, combining arbitrary sections of different whitepapers, reflects the intentional falsity of Defendants' statements about TRX's design and promised utility: Defendants plagiarized because there was no design or implementation for the TRON protocol at the time of the ICO. TRON did not explain how they could implement the details of a design they did not come up with and had little details attached to it, or how copying the design of crypto-assets built for different purposes than the proposed TRON protocol helped to further the supposed TRON protocol. Ultimately, the fact that TRON plagiarized these sections shows that it knew it could not deliver on the promises of its protocol.

92.     TRON took other shortcuts after the ICO that reveal the lack of promise and utility of the TRX token. In its initial whitepapers, TRON promised that in December 2018, it would support a "point-to-point distributive content updating, storing and distribution mechanism." A year later, however, because it had no capability of building such a system, TRON announced the acquisition of established peer-to-peer file sharing company BitTorrent to meet the deadline. At the time of the BitTorrent acquisition, Defendant Sun and TRON boasted that BitTorrent would "provide robust support for TRON's global business development and partnerships, while pursuing its vision for the world's largest decentralized ecosystem."

93.     Shortly after the acquisition, key individuals at BitTorrent, including a general manager and head of marketing, left the company in part because of concern for TRON's marketing techniques and messaging, particularly with regard to the nascent state of their technology as compared to the way it had been marketed to consumers and investors. These resignations indicate that Defendants knew their statements touting the technical abilities about the TRON protocol were false.

94.    TRON also misrepresented supposed partnerships in order to create the impression that TRX was a usable asset, rather than a bet on Defendants' future efforts. For example, in January 2018, Defendant Sun announced a proposed partnership with Baofeng, a Chinese company Sun referred to as "China's Netflix." This would have been an important partnership for a protocol designed as "a worldwide free content entertainment system." But Sun omitted from his social media announcement that the partnership was with Baofeng's hardware division, not the content-producing platform. Because Sun negotiated the partnership, he would have known that TRON's partnership was for hardware, rather than the way he misrepresented it to the public. Similarly, in April 2019, Sun falsely announced a "new partnership" with Liverpool Football Club, a popular professional football team in England, which the team then had to deny.

95.    Just as fundamental, the TRON protocol never achieved its promised decentralization, which was a critical feature of the promised network and one of the ways in which it sought to liken itself to Bitcoin and Ethereum.

96.    TRON also deviated from its promised decentralization by retaining control of the direction of TRX through control of "nodes" that provided votes in decisions regarding the future of TRX. Other decentralized crypto-assets like Ethereum make major decisions about the evolution of the technical systems underlying their assets through a voting process that allows governance to be shared among all users. TRON created the illusion of this system by tying votes to control of "nodes" while retaining control of a majority of nodes itself.

97.    In a May 2019 post, Defendant Chen (TRON's CTO) announced he was quitting TRON because "TRON Network has departed from the faith of the slogan 'decentralize the web.'" As Chen explained, "the vote of ordinary retail investors has completely fallen apart," in part because "most [nodes] are controlled by TRON." As Chen's comments demonstrate, TRON,

Chen, and Sun knew that TRON's repeated statements about decentralization were false because TRON retained so many of the issued TRX tokens and controlled the nodes.

98.    Chen also highlighted other undelivered promises of the TRON network. For example, he highlighted that "real Internet applications cannot function in TRON network currently" and instead "TRON is basically the gambling and funding project." Chen thus knew that TRX, which had been marketed to maximize its perceived similarity to commodities like Bitcoin, was actually just a way for Defendants to obtain funding. Chen concluded that "[t]he dreams and visions that Justin [Sun] told me have been ruined." Therefore, he was "[l]eaving TRON to rebuild a new TRON" but "not for money as Justin [Sun] did."

99.    TRON and Sun thereafter sought to minimize Chen's statements and cover up the deficiencies they had identified. Sun accused Chen of accepting bribes and claimed that Chen was fired months before he quit.

100.    In the face of promises that TRX would be "similar to Bitcoin," and "better than" Ethereum, and considering the new technology at issue and TRON's other statements, many investors were understandably unaware that TRX tokens had fundamentally different features than crypto-assets, which the SEC has determined are not securities. Moreover, the TRON whitepaper was ambiguous about how TRON would use the proceeds of the ICO, stating only that "the 'profit' earned by the Foundation is deemed surplus and will be kept as outlays for other activities instead of being distributed among its members."

101.    Prior to April 3, 2019, when the SEC released its Framework, it was therefore unclear to a reasonable investor that TRX was a security. On June 14, 2018, for example, the Director of the Corporation Finance Division, William H. Hinman, explained that "the ICOs I am seeing, strictly speaking, the token—or coin or whatever the digital information packet is called—

all by itself is not a security." On May 2, 2018, SEC Commissioner Hester Peirce similarly opined that not "all ICOs must be deemed securities offerings." Commissioner Peirce identified numerous open questions that issuers like TRON emphasized when arguing that ERC-20 tokens are not securities, such as the utility of the TRX token in an incomplete or partially complete network.

102.   Other thought leaders in the space, such as the lawfully registered broker-dealer Coinbase, opined in late 2016 that "we have considered the question of whether issuance of a Blockchain Token prior to the existence of a system would constitute a security. We have not found conclusive law on the subject, but believe that the better view is that a non-security Blockchain Token does not become a security merely because the system as to which it has rights has not yet been created or completed."

103.   As recently as January 15, 2019, a news article discussing the listing of TRX on the OKCoin exchange stated: "Tron Is Not A Security." The article then quoted that exchange's founder as saying, "We do not have an ATS or a broker-dealer license, so we cannot facilitate the trading of securities. We made sure that TRX is used today as a utility. That there is a use case, that it passes the Howey Test, kind of laid out by the prior rulings of an SEC case, that's the best we have."

104.   As these articles indicate, before the SEC issued its Framework on April 3, 2019, a reasonable investor would not have concluded that ERC-20 tokens like the TRX token were generally subject to the securities laws. On the contrary, they were confronted with representations both from token issuers and from crypto-asset discussions that would have led them reasonably to believe they were not investing in securities.

105.    In sum, TRON made at least the following material misstatements in the whitepapers issued in the summer of 2017 that served as prospectuses for the ICO and for subsequent sales:

a.    TRON falsely described the technical details about the TRON protocol design and implementation to enable TRX's utility (including the file structure protocol and technical implementation details such as BitSwap strategy and Proof-of-Replication), in that they did not apply to TRX. These misstatements were material to the assessment of TRX's prospective utility.

b.    TRON falsely described its platform as "currently up and running" based on a protocol that "allows each user to freely publish, store and own data, and in the decentralized autonomous form, decides the distribution, subscription and push of contents and enables content creators by releasing, circulating and dealing with digital assets, thus forming a decentralized content entertainment ecosystem," in that TRX had no utility as the launch of its ICO. This misstatement was material to the assessment of TRX's current and prospective utility.

c.    TRON falsely described a roadmap for ten years of prospective developments for the TRON platform, in that TRON had not created any such roadmap and did not intend to follow any such roadmap to develop the TRON platform. This misstatement was material to the assessment of TRX's prospective utility.

d.    TRON falsely promised that in December 2018, TRON would support a "point-to-point distributive content updating, storing and distribution mechanism." This misstatement was material to the assessment of TRX's prospective utility.

e.    TRON falsely stated that "TRX is not a security" and does not belong to the category of "securities," while, in fact, TRX was a security. This misstatement was material to the assessment of purchasers' legal rights and prospective claims.

106.    TRON also made the following material misleading omissions in the whitepapers issued in the summer of 2017 that served as prospectuses for the ICO and for subsequent sales:

a.    In describing the technical details about the TRON protocol design and implementation to enable TRX's utility (including the file structure protocol and technical implementation details such as BitSwap strategy and Proof-of-Replication), TRON failed to disclose that it had plagiarized those technical details from other issuers' whitepapers. This omission was material to the assessment of TRX's prospective utility.

40

b.      In stating that it was using 10 percent of the TRX tokens to pay Piewo Huanle Technology and describing Piewo as "an initial TRON supporter," TRON failed to disclose that Defendant Sun had founded and controlled Piewo. This omission was material to the assessment of TRX's prospective utility.

c.      TRON failed to disclose that the Individual Defendants intended to (and did) hold substantial quantities of TRX even after the initial offerings. This omission was material to the assessment of whether and the extent to which the fortunes of TRX's promoters were linked to the success of TRX.

d.      In stating that "TRX is not a security" and does not belong to the category of "securities," on information and belief, TRON failed to disclose that it had not received any formal legal opinion that TRX is not a security. This omission was material to the assessment of purchasers' legal rights and claims based on TRX's status as a security.

e.      In its summer of 2017 whitepapers, in stating that "TRX is not a security" and does not belong to the category of "securities," TRON failed to disclose that it had not created any roadmap for the prospective developments for the TRON platform. This omission was material to the assessment of purchasers' legal rights and claims based on TRX's status as a security.

f.      In its summer of 2017 whitepapers, in stating that "TRX is not a security" and does not belong to the category of "securities," TRON failed to disclose that the Individual Defendants would individually profit from the proceeds of the TRX offerings. This omission was material to the assessment of purchasers' legal rights and claims based on TRX's status as a security.

g.      In its summer of 2017 whitepapers, in stating that "TRX is not a security" and does not belong to the category of "securities," TRON failed to disclose that TRON regarded the fortunes of TRX purchasers, with respect to the value and utility of TRX, was linked to the success of TRON's efforts. This omission was material to the assessment of purchasers' legal rights and claims based on TRX's status as a security.

h.      In its summer of 2017 whitepapers, in stating that "TRX is not a security" and does not belong to the category of "securities," TRON failed to disclose that with respect to TRX's value and utility, purchasers would have to rely on TRON's efforts in managing, overseeing, and improving the supposedly decentralized TRON protocol. This omission was material to the assessment of purchasers' legal rights and claims based on TRX's status as a security.

i.      TRON falsely described a roadmap for ten years of prospective developments for the TRON platform, in that TRON had not created any such roadmap and did not intend to follow any such roadmap to develop the TRON platform.

j.     In January 2018, in announcing on social media on behalf of TRON a partnership with Baofeng, which Sun dubbed "China's Netflix," Sun failed to disclose that the partnership was only with Baofeng's hardware division, not its content-producing platform. This omission was material to the assessment of the prospects of TRX's touted protocol as "a worldwide free content entertainment system."

### G.    The TRX Tokens Are Securities

107.    TRX tokens are securities because they constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. At issuance, as described above, it was not clear to a reasonable purchaser that the TRX tokens were securities as defined under federal and state securities laws.

108.    Within the last year prior to the filing of the initial Complaint, however, the SEC has clarified, pursuant to its statutorily delegated authority, and with the benefit of labor-intensive research and investigations, that many ERC-20 tokens, including TRX, were securities. On April 3, 2019, as noted above, the SEC published a "Framework for 'Investment Contract' Analysis of Digital Assets," in which it "provided a framework for analyzing whether a digital asset is an investment contract and whether offers and sales of a digital asset are securities transactions." Among the most significant statements therein is the SEC's description of how to analyze the various facts surrounding ICOs in determining whether a given digital asset, like TRX, is a security. Under application of the Framework, TRX tokens were securities at issuance.

109.    In the Framework, the SEC cautioned potential issuers: "If you are considering an Initial Coin Offering, sometimes referred to as an 'ICO,' or otherwise engaging in the offer, sale, or distribution of a digital asset, you need to consider whether the U.S. federal securities laws apply." The SEC explained the basics of the *Howey* test:

The U.S. Supreme Court's Howey case and subsequent case law have found that an "investment contract" exists when there is the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. The

so-called "Howey test" applies to any contract, scheme, or transaction, regardless of whether it has any of the characteristics of typical securities. The focus of the Howey analysis is not only on the form and terms of the instrument itself (in this case, the digital asset) but also on the circumstances surrounding the digital asset and the manner in which it is offered, sold, or resold (which includes secondary market sales). Therefore, issuers and other persons and entities engaged in the marketing, offer, sale, resale, or distribution of any digital asset will need to analyze the relevant transactions to determine if the federal securities laws apply.

110.    Investors who bought TRX tokens invested money or other valuable consideration, such as bitcoin and ether, in a common enterprise—TRON. Investors had a reasonable expectation of profit based upon TRON's efforts, including, among other things, TRON obtaining listing of TRX tokens on various crypto-asset exchanges.

### 1.    TRX Token Purchasers Invested Money

111.    Investors in TRX tokens made an investment of money or other valuable consideration for purposes of *Howey*. The SEC Framework states: "The first prong of the *Howey* test is typically satisfied in an offer and sale of a digital asset because the digital asset is purchased or otherwise acquired in exchange for value, whether in the form of traditional (or fiat) currency, another digital asset, or other type of consideration."

112.    Investors invested traditional and other digital currencies, such as bitcoin and ether, to purchase the TRX tokens. TRX tokens were listed on many crypto-asset exchanges, and those crypto-asset exchanges permitted investors to purchase TRX with bitcoin and ether.

### 2.    TRX Token Investors Participated In A Common Enterprise

113.    The SEC Framework states: "In evaluating digital assets, we have found that a 'common enterprise' typically exists." This is "because the fortunes of digital asset purchasers have been linked to each other or to the success of the promoter's efforts."

43

114.    The TRX tokens are no different. Investors were passive participants in the TRX

token ICO and the profits of each investor were intertwined with those of both TRON and of other

investors. TRON was responsible for supporting TRX, pooled investors' assets, and controlled

those assets. TRON also retained a significant stake in TRX, thus sharing in the profits and risk of

the venture.

115.    To this effect, TRON asserted that it set up an organization structure "to ensure the

reasonable use of fund and resources to promote openness, justice and transparency; to constantly

advance the rapid growth of the TRON protocol . . . and to attract more institutions, companies,

and organizations to enter the open-source TRON ecosystem." TRON depicted this structure with

the following organizational chart:



116.    Accordingly, investors in TRX participated in a common enterprise by purchasing

TRX tokens.

### 3.    TRX Token Investors Purchased The Tokens With A Reasonable Expectation Of Profit From Owning Them

117.    As to "reasonable expectation of profits," the SEC Framework states: "A purchaser

may expect to realize a return through participating in distributions or through other methods of

realizing appreciation on the asset, such as selling at a gain in a secondary market."

118.    Investors in the TRX tokens, including Plaintiffs and the Class, made their

investment with a reasonable expectation of profits. The TRX token was sold to investors prior to

a network or "ecosystem" on which it could be used being fully developed.

119.    Alluding to the "AP" (the "Active Participant"), which is the promoter, sponsor, or other third party that "provides essential managerial efforts that affect the success of the enterprise"), the Framework identifies a series of factually intense questions underscoring both the time the SEC had spent considering these issues and the challenges a layperson would face in analyzing whether a digital asset constitutes a security. In particular, the Framework lays out a number of characteristics to assess whether the "reasonable expectation of profits" element is met with respect to whether digital assets (such as TRX) thereby satisfy the *Howey* test:

> The more the following characteristics are present, the more likely it is that there is a reasonable expectation of profit:
>
> - The digital asset gives the holder rights to share in the enterprise's income or profits or to realize gain from capital appreciation of the digital asset.
>
>   o The opportunity may result from appreciation in the value of the digital asset that comes, at least in part, from the operation, promotion, improvement, or other positive developments in the network, particularly if there is a secondary trading market that enables digital asset holders to resell their digital assets and realize gains.
>
>   o This also can be the case where the digital asset gives the holder rights to dividends or distributions.
>
> - The digital asset is transferable or traded on or through a secondary market or platform, or is expected to be in the future.
>
> - Purchasers reasonably would expect that an AP's efforts will result in capital appreciation of the digital asset and therefore be able to earn a return on their purchase.
>
> - The digital asset is offered broadly to potential purchasers as compared to being targeted to expected users of the goods or services or those who have a need for the functionality of the network.
>
>   o The digital asset is offered and purchased in quantities indicative of investment intent instead of quantities indicative of a user of the network. For example, it is offered and purchased in quantities significantly greater than any likely user would reasonably need, or so small as to make actual use of the asset in the network impractical.

- There is little apparent correlation between the purchase/offering price of the digital asset and the market price of the particular goods or services that can be acquired in exchange for the digital asset.

- There is little apparent correlation between quantities the digital asset typically trades in (or the amounts that purchasers typically purchase) and the amount of the underlying goods or services a typical consumer would purchase for use or consumption.

- The AP has raised an amount of funds in excess of what may be needed to establish a functional network or digital asset.

- The AP is able to benefit from its efforts as a result of holding the same class of digital assets as those being distributed to the public.

- The AP continues to expend funds from proceeds or operations to enhance the functionality or value of the network or digital asset.

- The digital asset is marketed, directly or indirectly, using any of the following:

  o The expertise of an AP or its ability to build or grow the value of the network or digital asset.

  o The digital asset is marketed in terms that indicate it is an investment or that the solicited holders are investors.

  o The intended use of the proceeds from the sale of the digital asset is to develop the network or digital asset.

  o The future (and not present) functionality of the network or digital asset, and the prospect that an AP will deliver that functionality.

  o The promise (implied or explicit) to build a business or operation as opposed to delivering currently available goods or services for use on an existing network.

  o The ready transferability of the digital asset is a key selling feature.

  o The potential profitability of the operations of the network, or the potential appreciation in the value of the digital asset, is emphasized in marketing or other promotional materials.

  o The availability of a market for the trading of the digital asset, particularly where the AP implicitly or explicitly promises to create or otherwise support a trading market for the digital asset.

120.     The SEC Framework clarifies that investors purchased the TRX tokens with a reasonable expectation of profits.

121.     Defendants represented to potential investors that the TRX tokens would increase in value. TRON's whitepaper stated: "Through TRON's official token, TRX, users can easily achieve value distribution, payment, and settlement of content." A whitepaper also stated that because of TRON's model "community members will be encouraged to hold TRX for a long term, which will maximize the long-term value of TRON."

122.     TRON echoed these promises of profit in its social media presence. On October 2, 2017, for example, TRON retweeted Defendant Sun's statement that TRX was now a top 57 cryptocurrency, adding that the token was headed "[t]o the moon!"

123.     In January 2020, Sun was quoted touting TRON's value in connection with TRON's partnership with Samsung: "First, phones, then what? Soon we might partner with any company in the world – no matter the size. This means more people and more countries seeing that we can bring the blockchain to everyone." Accordingly, investors in the TRX token had a reasonable expectation of profit.

### 4.     Investors Expected Profits From The TRX Tokens To Be Derived From The Managerial Efforts Of Issuers

124.     The SEC Framework provides that the "inquiry into whether a purchaser is relying on the efforts of others focuses on two key issues: Does the purchaser reasonably expect to rely on the efforts of an [Active Participant]? Are those efforts 'the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise,' as opposed to efforts that are more ministerial in nature?"

125.     The SEC explained in its Framework, further underlining the depth of study the agency had devoted to the matter over the years and the complexity of such legal analysis from

the perspective of a reasonable investor, that the more of the following characteristics that are present, "the more likely it is that a purchaser of a digital asset is relying on the 'efforts of others'":

- An ["Active Participant" or "AP"] is responsible for the development, improvement (or enhancement), operation, or promotion of the network, particularly if purchasers of the digital asset expect an AP to be performing or overseeing tasks that are necessary for the network or digital asset to achieve or retain its intended purpose or functionality.

  o Where the network or the digital asset is still in development and the network or digital asset is not fully functional at the time of the offer or sale, purchasers would reasonably expect an AP to further develop the functionality of the network or digital asset (directly or indirectly). This particularly would be the case where an AP promises further developmental efforts in order for the digital asset to attain or grow in value.

- There are essential tasks or responsibilities performed and expected to be performed by an AP, rather than an unaffiliated, dispersed community of network users (commonly known as a "decentralized" network).

- An AP creates or supports a market for, or the price of, the digital asset. This can include, for example, an AP that: (1) controls the creation and issuance of the digital asset; or (2) takes other actions to support a market price of the digital asset, such as by limiting supply or ensuring scarcity, through, for example, buybacks, "burning," or other activities.

- An AP has a lead or central role in the direction of the ongoing development of the network or the digital asset. In particular, an AP plays a lead or central role in deciding governance issues, code updates, or how third parties participate in the validation of transactions that occur with respect to the digital asset.

- An AP has a continuing managerial role in making decisions about or exercising judgment concerning the network or the characteristics or rights the digital asset represents including, for example:

  o Determining whether and how to compensate persons providing services to the network or to the entity or entities charged with oversight of the network.

  o Determining whether and where the digital asset will trade. For example, purchasers may reasonably rely on an AP for liquidity, such as where the AP has arranged, or promised to arrange for, the trading of the digital asset on a secondary market or platform.

- o Determining who will receive additional digital assets and under what conditions.

- o Making or contributing to managerial level business decisions, such as how to deploy funds raised from sales of the digital asset.

- o Playing a leading role in the validation or confirmation of transactions on the network, or in some other way having responsibility for the ongoing security of the network.

- o Making other managerial judgements or decisions that will directly or indirectly impact the success of the network or the value of the digital asset generally.

- Purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset, such as where:

- o The AP has the ability to realize capital appreciation from the value of the digital asset. This can be demonstrated, for example, if the AP retains a stake or interest in the digital asset. In these instances, purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset.

- o The AP distributes the digital asset as compensation to management or the AP's compensation is tied to the price of the digital asset in the secondary market. To the extent these facts are present, the compensated individuals can be expected to take steps to build the value of the digital asset.

- o The AP owns or controls ownership of intellectual property rights of the network or digital asset, directly or indirectly.

- o The AP monetizes the value of the digital asset, especially where the digital asset has limited functionality.

126. Shifting its focus to the numerous facts bearing on the nature of the digital asset at issue, the SEC explained still further:

Although no one of the following characteristics of use or consumption is necessarily determinative, the stronger their presence, the less likely the *Howey* test is met:

- The distributed ledger network and digital asset are fully developed and operational.

49

- Holders of the digital asset are immediately able to use it for its intended functionality on the network, particularly where there are built-in incentives to encourage such use.

- The digital assets' creation and structure is designed and implemented to meet the needs of its users, rather than to feed speculation as to its value or development of its network. For example, the digital asset can only be used on the network and generally can be held or transferred only in amounts that correspond to a purchaser's expected use.

- Prospects for appreciation in the value of the digital asset are limited. For example, the design of the digital asset provides that its value will remain constant or even degrade over time, and, therefore, a reasonable purchaser would not be expected to hold the digital asset for extended periods as an investment.

- With respect to a digital asset referred to as a virtual currency, it can immediately be used to make payments in a wide variety of contexts, or acts as a substitute for real (or fiat) currency.

  o This means that it is possible to pay for goods or services with the digital asset without first having to convert it to another digital asset or real currency.

  o If it is characterized as a virtual currency, the digital asset actually operates as a store of value that can be saved, retrieved, and exchanged for something of value at a later time.

- With respect to a digital asset that represents rights to a good or service, it currently can be redeemed within a developed network or platform to acquire or otherwise use those goods or services. Relevant factors may include:

  o There is a correlation between the purchase price of the digital asset and a market price of the particular good or service for which it may be redeemed or exchanged.

  o The digital asset is available in increments that correlate with a consumptive intent versus an investment or speculative purpose.

  o An intent to consume the digital asset may also be more evident if the good or service underlying the digital asset can only be acquired, or more efficiently acquired, through the use of the digital asset on the network.

- Any economic benefit that may be derived from appreciation in the value of the digital asset is incidental to obtaining the right to use it for its intended functionality.

- The digital asset is marketed in a manner that emphasizes the functionality of the digital asset, and not the potential for the increase in market value of the digital asset.

- Potential purchasers have the ability to use the network and use (or have used) the digital asset for its intended functionality.

- Restrictions on the transferability of the digital asset are consistent with the asset's use and not facilitating a speculative market.

- If the AP facilitates the creation of a secondary market, transfers of the digital asset may only be made by and among users of the platform.

127.    Purchasers of pre-functional tokens, such as TRX, necessarily rely on the managerial efforts of others to realize value from their investments. The success of these managerial efforts in developing the networks on which these tokens will operate is the primary factor in their price—that is, until such tokens transition into being functional utility tokens. The TRX token was a security at issuance because profits from TRX would be derived primarily from the managerial efforts of TRON in developing the associated network on which TRX would function, rather than having its profit derived from market forces of supply and demand, such as might affect the price of a commodity such as gold (or Bitcoin).

128.    This dependency on the managerial efforts of TRON, however, was not apparent at issuance to a reasonable investor. Considering the limited available information about how TRX was designed and intended to operate, if such an investor were even able to interpret the relevant law at the time, a reasonable investor lacked sufficient bases to conclude whether TRX was a security until the platform at issue, and its relevant "ecosystem," had been given time to develop. In the interim, the investor lacked the facts necessary to conclude—let alone formally allege in court—that the token she had acquired was a security. It was only after the passage of some significant amount of time, and only with more information about TRON's intent, process of management, and lack of success in allowing decentralization to arise, that an investor could

reasonably determine that a token that was advertised as something other than a security was a security all along.

129.    Investors' profits in TRX tokens were to be derived from the managerial efforts of others, specifically TRON and its co-founders and development teams. TRX token investors relied on the managerial and entrepreneurial efforts of TRON and their executive and development teams to manage and develop the projects funded by the TRX ICO.

130.    Indeed, Defendants Sun and Chen's biographies were featured in the TRON whitepaper and were held out to be integral parts of the success of TRX. In the whitepaper, Sun's expertise and credentials in crypto-asset projects are highlighted, as is his "Global Shaper" award he was given at the 2014 Davos Forum. Similarly, the whitepaper touts Chen's credentials, highlighting his "capabilities of developing million-level system architecture . . . advertising algorithms … [and] team management."

131.    TRON also released press statements designed to highlight its success and lead investors to believe that they would benefit from the successes the company had experienced, placing front and center the efforts of Sun and Chen. In August 2017, TRON's twitter account retweeted an article featuring Sun in Forbes's 30 under 30. On November 21, 2017, TRON's twitter retweeted an interview with Sun. In that interview, Sun described the qualifications of himself, Chen, and other partners as being able to "make a big difference." A January 2018 press release by TRON touted recent advancement but also showed a photograph of Justin Sun before quoting him as saying that this advance was a "vital node in TRON's development history. But this won't be an end."

132.    Under the Framework, notwithstanding the complexity of the issue to a reasonable investor, TRX satisfies most if not all of the factors the SEC described as relevant to its

determination that a digital asset is a security. TRON created TRX tokens from thin air. TRON represented that it would develop an ecosystem (the overall network of individuals using TRX or participating in the development of its network) that would increase the value of TRX tokens. Plaintiffs and the Class reasonably expected TRON to provide significant managerial efforts, to develop and improve the TRX ecosystem, to develop and sustain a supportive network, and to secure listings at exchanges through which TRX tokens could be traded or liquidated. And TRON represented that it would provide significant managerial efforts to achieve these objectives and make TRX a success.

**H.    The SEC Has Concluded That Tokens Such As TRX Are Securities**

133.    On September 30, 2019, the SEC found that Block.one, another issuer of a similar digital token, had violated the Securities Act through its unregistered sale to U.S. investors of a token called EOS. EOS, like TRX, was a digital token that was not marketed to investors as a security, but—by application of the SEC's Framework—*was* a security in that it constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. Notably, the SEC enforcement action occurred over two years after Block.one began selling EOS to the public, further underscoring the complexity of these issues for lay investors.

134.    In arriving at its determination that the EOS token was a security, the SEC reached the following conclusions:

- "Companies that offer or sell securities to US investors must comply with the securities laws, irrespective of the industry they operate in or the labels they place on the investment products they offer."

- "Block.one did not provide ICO investors the information they were entitled to as participants in a securities offering."

- "[EOS] Tokens were securities under the federal securities laws"

- "A purchaser in the offering of [EOS] Tokens would have had a reasonable expectation of obtaining a future profit based upon Block.one's efforts, including its development of the EOSIO software and its promotion of the adoption and success of EOSIO and the launch of the anticipated EOSIO blockchains."

- "Block.one violated Sections 5(a) and 5(c) of the Securities Act by offering and selling these securities without having a registration statement filed or in effect with the Commission or qualifying for an exemption from registration."

135.    As a result of the SEC's enforcement action, Block.one consented to a settlement whereby it would pay $24 million to the SEC. The SEC's recent conclusion that EOS was a security applies with equal force to TRX.

**I.      TRON Targeted the United States and its Users by Entered Into Listing Agreements With Crypto-Asset Exchanges**

136.    After its ICO, TRON aggressively pursued obtaining "listing agreements" with crypto-asset exchanges. The purpose of pursing these listing agreements was to create secondary markets in the United States for the purchase, sale, and trading of TRX.

137.    TRON entered into listing agreements with crypto-asset exchanges that targeted United States consumers with the intent of creating secondary trading markets for the purchase, sale, and trading of TRX in the United States.

138.    These listing agreements were critical to TRON's efforts to increase the trading price of TRX by increasing market demand and access to these tokens, especially in the United States. Indeed, many of these trading agreements included "listing fees," whereby TRON paid the crypto-asset exchanges an upfront fee to persuade the exchange to list TRX.

139.    In September 2017, immediately after TRON's TRX ICO, the crypto-asset exchange Binance listed the TRX token on its exchange for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade TRX.

140.    On March 1, 2018, the crypto-asset exchange Bittrex listed the TRX token on its exchange for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade

TRX. Bittrex is incorporated in, and is a citizen of, Delaware. Its principal place of business is in Seattle, Washington.

141.    On June 25, 2018, the crypto-asset exchange BitMEX announced that "[d]ue to popular demand" it would be listing futures contracts for TRX for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade TRX futures. BitMEX is operated out of its office in New York, New York.

142.    On November 9, 2019, the crypto-asset exchange Poloniex listed the TRX token on its exchange for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade TRX. Poloniex is incorporated in, and is a citizen of, Delaware. Its principal place of business is in Boston, Massachusetts.

143.    On March 5, 2020, the crypto-asset exchange Kraken listed the TRX token on its exchange for the purpose and effect of enabling U.S.-based investors to purchase, sell, and trade TRX. Kraken is incorporated in, and is a citizen of Delaware. Its principal place of business is in San Francisco, California.

144.    In sum, TRON, at substantial expense to itself, engaged in a coordinated multi-year strategy to list TRX on crypto-asset exchanges targeted at U.S.-based investors.

**J.      The Class Has Suffered Significant Damages From Defendants' Actions**

145.    The TRX tokens today are worth far less than the price Plaintiffs and the Class paid for them. As a direct result of Defendants' issuance, promotion, and sale of unregistered securities, Plaintiffs and the Class—many of whom are retail investors who lack the technical and financial sophistication necessary to have evaluated the risks associated with their investments in the TRX token and were denied the information that would have been contained in the materials required for the registration of TRX—have suffered significant damages in an amount to be proven at trial.

146.    Indeed, the price of TRX has dropped more than 95 percent from its 2018 high. To the extent Plaintiffs and the Class still hold TRX tokens, they hereby demand rescission and make any necessary tender of the tokens.

## V.    DEFENDANTS' CONCEALMENT OF THEIR MISCONDUCT PREVENTED PLAINTIFFS AND MEMBERS OF THE CLASS FROM BRINGING A CLAIM AT THE TIME THE EVENTS OCCURRED

147.    Consistent with the perspective of a reasonable investor, neither Plaintiffs nor members of the Class were in a position to appreciate their ability to bring claims based on Defendants' misconduct until April 3, 2019, at the earliest.

148.    In the whitepapers describing the TRX tokens, as well as in their social media and other marketing, as described above, Defendants deliberately created the impression that TRX was not a security. This included explicit statements that TRX was not a security as well as misleading comparisons to Bitcoin and other crypto-assets that are not securities. Because of these representations and omissions, Plaintiffs and members of the Class reasonably believed they were purchasing a decentralized asset that had functionality at issuance. In fact, however, they were investing in Defendants' efforts, not knowing that Defendants had no plan for TRX.

149.    Under the misimpression that TRX was not a security, as a result of Defendants' fraudulent statements and omissions, Plaintiffs did not realize that they were in a position to bring claims under federal or state law regulating securities. Defendants' misrepresentation would not have been apparent until, at the earliest, April 3, 2019, when the SEC clarified the legal paradigm for assessing the security status of crypto-assets like TRX.

150.    Indeed, independent of Defendants' state of mind in making the materially misleading misstatements and omissions described above, these misstatements and omissions— which reflected the massive asymmetry in information available to Defendants and unavailable to Plaintiffs and the Class—prevented Plaintiffs and the Class from realizing that they were in a

position to bring claims under Federal or state law regulating securities until April 3, 2019, at the earliest.

## VI.  <u>CLASS ALLEGATIONS</u>

151.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 and seek certification of the following Class: All persons who purchased TRX tokens, which were first sold on or about August 24, 2017, in a domestic transaction and were injured thereby. The Class Period is thus August 24, 2017, through the present.

152.    Plaintiffs also seek to represent a subclass (the "Subclass") defined as follows: All persons who purchased TRX Tokens, which were first sold on or about August 24, 2017, in a domestic transaction directly from Defendants and were injured thereby.

153.    The Class and Subclass exclude individuals subject to any enforceable arbitration clause contained in any of the purchase agreements executed in connection with their purchase of TRX. The Class includes all other individuals who purchased TRX tokens, including those individuals who purchased TRX tokens in sales made through online crypto-asset exchanges.

154.    Excluded from the Class and Subclass are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

155.    Plaintiffs reserve the right to amend the Class and Subclass definitions if investigation or discovery indicates that the definitions should be narrowed, expanded, or otherwise modified.

156.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class and Subclass members is unknown to Plaintiffs at this time, but it is believed to be in the tens of thousands.

157.    Members of the Class and Subclass are readily ascertainable and identifiable. Members of the Class and Subclass may be identified by publicly accessible blockchain ledger information and records maintained by Defendants or its agents. They may be notified of the pendency of this action by electronic mail using a form of notice customarily used in securities class actions.

158.    Plaintiffs' claims are typical of the claims of the Class and Subclass members as all Class and Subclass members are similarly affected by Defendants' respective wrongful conduct in violation of the laws complained of herein. Plaintiffs do not have any interest that is in conflict with the interests of the members of the Class or the Subclass.

159.    Plaintiffs and members of the Class and Subclass sustained damages from Defendants' common course of unlawful conduct based upon the loss in market value of TRX.

160.    Plaintiffs have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the members of the Class and Subclass and have retained counsel competent and experienced in class actions and securities litigation. Plaintiffs have no interests antagonistic to those of the Class or the Subclass.

161.    Common questions and answers of law and fact exist as to all Class and Subclass members and predominate over any questions solely affecting individual members of the Class and Subclass, including but not limited to the following:

- Whether TRX is a security under federal and state law;

- Whether TRON failed to register TRX as a security under applicable federal and state law;

- Whether TRON offered or sold TRX to members of the Class and Subclass;

- Whether the members of the Class and Subclass suffered damages as a result of Defendants' conduct in violation of federal and state law; and

- Whether the Class and Subclass members are entitled to recover the monies they paid thereunder.

162.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by some of the individual Class and Subclass members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class and Subclass to individually redress the wrongs done to them.

163.    There will be no difficulty in the management of this action as a class action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (SECURITIES ACT – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**Sections 5 and 12(a)(1) of the Securities Act**
**(TRON)**

164.   Plaintiffs reallege the allegations above.

165.   Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

166.   Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." *Id.* § 77e(c).

167.   When issued, the TRX tokens were securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). TRON promoted, solicited or sold TRX tokens from Plaintiffs and members of the Class. TRON thus directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in

60

interstate commerce for the purpose of sale or for delivery after sale. No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

168.    Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id.* § 77*l*(a)(1).

169.    Accordingly, TRON has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, *id*. §§ 77e(a), 77e(c), and 77*l*(a)(1).

170.    Plaintiffs and the Class seek rescissory damages with respect to purchases of TRX tokens during the Class Period.

### SECOND CAUSE OF ACTION
### (SECURITIES ACT – PRIMARY LIABILITY)
**Sale of Securities By Means of a Prospectus Containing Untrue Statements
and Omissions of Material Facts
Sections 5 and 12(a)(2) of the Securities Act
(TRON)**

171.    Plaintiffs reallege the allegations above.

172.    Section 12(a)(2) of the Securities Act provides in relevant part: "Any person who offers or sells a security … by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall

not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security" *Id.* § 77*l*(a)(2).

173.    When issued, the TRX tokens were securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). TRON offered, promoted, solicited or sold purchases of TRX tokens from the Subclass by means of a prospectus. The prospectus consists of TRON's whitepapers issued prior to its ICO.

174.    The statements included in the prospectus were false and/or omitted material facts necessary in order to make the statements, in light of the circumstances of which they were made, not misleading.

175.    This Count does not allege fraud. For the purposes of asserting this claim, Plaintiffs do not allege that TRON acted with intentional, reckless, or otherwise fraudulent intent, except as to any statements of opinion or belief.

176.    TRON directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

177.    Members of the Subclass acquired the TRX tokens pursuant to TRON's offering and sale of TRX tokens. Members of the Subclass did not know, nor could they have known in the exercise of reasonable care, of the material misstatements and omissions in the Prospectus before

acquiring the TRX tokens or prior to April 3, 2019. Members of the Subclass sustained damages, including the substantial price decline of TRX tokens, because of the material misstatements and omissions.

178.    Accordingly, TRON has violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2).

179.    Plaintiffs and the Class seek rescissory damages with respect to purchases of TRX tokens during the Class Period.

**THIRD CAUSE OF ACTION**
**(SECURITIES ACT – ADDITIONAL LIABILITY)**
**Control Person Liability for Violations of**
**Sections 5, 12(a)(1), and 12(a)(2) of the Securities Act**
**(Sun and Chen)**

180.    Plaintiffs reallege the allegations above.

181.    This Count is asserted against the Individual Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o.

182.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful solicitation of purchases of TRX tokens and to cause the complained-of misrepresentations and omissions in the prospectus for the TRX tokens.

183.    The Individual Defendants had and have the power to direct or cause the direction of the management and policies of TRON.

184.    The Individual Defendants, separately or together, have sufficient influence to have caused TRON to solicit transactions of securities and to include misrepresentations and omissions in the TRX prospectus.

185.    The Individual Defendants, separately or together, jointly participated in, and/or aided and abetted, TRON's solicitation of securities and inclusion of misrepresentations and omissions in the TRX prospectus.

186.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiffs and the Class for rescission and/or damages suffered for TRX tokens sold during the Class Period.

**FOURTH CAUSE OF ACTION**
**(ALABAMA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Ala. Code § 8-6-19**
**(TRON)**

187.    Plaintiffs reallege the allegations above.

188.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Alabama.

189.    The Alabama Securities Act forbids the offer or sale of unregistered securities. Ala. Code § 8-6-4. Any person who offers or sells a security in violation of Section 8-6-4 is "liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition." *Id.* § 8-6-19(a).

190.     When issued, the TRX tokens were securities within the meaning of the Alabama Securities Act. *Id.* § 8-6-2. On information and belief, TRON offered or sold the TRX tokens to members of the Class in Alabama. The TRX tokens were neither registered under, nor subject to exemption from registration under the Alabama Securities Act. *Id.* § 8-6-10.

191.     On information and belief, the TRX tokens were offered or sold in Alabama, including without limitation through solicitations directed by TRON to Alabama and received in Alabama.

192.     Accordingly, TRON has violated the Alabama Securities Act through TRON's sale of unregistered securities.

193.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

194.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTH CAUSE OF ACTION**
**(ALABAMA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Ala. Code § 8-6-19**
**(Sun and Chen)**

195.     Plaintiffs reallege the allegations above.

196.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Alabama.

197.     Every person who directly or indirectly controls an entity liable under the Alabama Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and

every dealer or agent who materially aids in such conduct" is jointly and severally liable "with and to the same extent" as the seller, unless the non-seller "is able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." Ala. Code § 8-6-19(c).

198.    When issued, the TRX tokens were securities within the meaning of the Alabama Securities Act. *Id.* § 8-6-19. On information and belief, TRON offered and sold the TRX tokens to members of the Class in Alabama. The TRX tokens were neither registered under, nor subject to exemption from registration under the Alabama Securities Act.

199.    On information and belief, TRON offered and sold the TRX tokens in Alabama, including without limitation through solicitations directed by TRON to Alabama and received in Alabama.

200.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

201.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Alabama Securities Act through TRON's offer or sale of unregistered securities.

202.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

203.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTH CAUSE OF ACTION**
**(ALASKA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**AS § 45.56.710**
**(TRON)**

204.     Plaintiffs reallege the allegations above.

205.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Alaska.

206.     The Alaska Securities Act forbids the sale of unregistered securities. AS § 45.56.100. Any person who sells a security in violation of Section 45.56.100 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest under AS § 09.30.070, or eight percent a year, whichever is greater, from the date of the purchase, costs, and attorney fees as determined by the court, upon the tender of the security, or for actual damages," defined as "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest under AS § 09.30.070, or eight percent a year, whichever is greater, from the date of the purchase, costs, and attorney fees as determined by the court." *Id.* § 45.56.710.

207.     When issued, the TRX tokens were securities within the meaning of the Alaska Securities Act. *Id.* § 45.56.900. On information and belief, TRON sold the TRX tokens to members of the Class in Alaska. The TRX tokens were neither registered under, nor subject to exemption from registration under the Alaska Securities Act. *Id.* § 45.56.110.

208.     On information and belief, the TRX tokens were sold in Alaska, including without limitation through solicitations directed by TRON to Alaska and received in Alaska.

67

209.    Accordingly, TRON has violated the Alaska Securities Act through TRON's sale of unregistered securities.

210.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

211.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTH CAUSE OF ACTION**
**(ALASKA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**AS § 45.56.710(g)**
**(Sun and Chen)**

212.    Plaintiffs reallege the allegations above.

213.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Alaska.

214.    Every person who "directly or indirectly controls a person liable under" the Alaska Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director of a person liable … including an individual having a similar status or performing similar functions," every "individual who is an employee of or associated with a person liable … and who materially aids the conduct giving rise to the liability," and every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability" is "jointly and severally with and to the same extent as" the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 45.56.710(g).

215.    When issued, the TRX tokens were securities within the meaning of the Alaska Securities Act. *Id.* § 45.56.900. On information and belief, TRON sold the TRX tokens to members of the Class in Alaska. The TRX tokens were neither registered under, nor subject to exemption from registration under the Alaska Securities Act.

216.    On information and belief, TRON sold the TRX tokens in Alaska, including without limitation through solicitations directed by TRON to Alaska and received in Alaska.

217.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

218.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Alaska Securities Act through TRON's sale of unregistered securities.

219.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

220.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### EIGHTH CAUSE OF ACTION
### (ARIZONA STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**A.R.S. § 44-2001**
**(TRON)**

221.    Plaintiffs reallege the allegations above.

222.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Arizona.

223.    The Arizona Securities Act forbids the sale of unregistered securities. A.R.S. § 44-1841. Any purchase of a security in violation of Section 44-1841 is "voidable at the election of the purchaser," who "may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities." *Id.* § 44-2001.

224.    When issued, the TRX tokens were securities within the meaning of the Arizona Securities Act. *Id.* § 1801. On information and belief, TRON sold the TRX tokens to members of the Class in Arizona. The TRX tokens were neither registered under, nor subject to exemption from registration under the Arizona Securities Act. *Id.* § 1843.

225.    On information and belief, the TRX tokens were sold in Arizona, including without limitation through solicitations directed by TRON to Arizona and received in Arizona.

226.    Accordingly, TRON has violated the Arizona Securities Act through TRON's sale of unregistered securities.

227.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

228.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## NINTH CAUSE OF ACTION
## (ARIZONA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### A.R.S. § 44-2003
### (Sun and Chen)

229.   Plaintiffs reallege the allegations above.

230.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Arizona.

231.   Any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale of securities under the Arizona Securities Act "shall be jointly and severally liable to the person who is entitled to maintain" an action under A.R.S. § 44-2001. A.R.S. § 44-2003.

232.   When issued, the TRX tokens were securities within the meaning of the Arizona Securities Act. *Id.* § 1801. On information and belief, TRON sold the TRX tokens to members of the Class in Arizona. The TRX tokens were neither registered under, nor subject to exemption from registration under the Arizona Securities Act.

233.   On information and belief, TRON sold the TRX tokens in Arizona, including without limitation through solicitations directed by TRON to Arizona and received in Arizona.

234.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

235.   Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Arizona Securities Act through TRON's sale of unregistered securities.

71

236.    Class members who own the TRX tokens have made or will make any necessary

tender and seek all remedies available at law or in equity for any TRX tokens purchased in the

Class Period, including any applicable costs, attorneys' fees, and interest.

237.    Class members who no longer own the TRX tokens seek damages for any TRX

tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TENTH CAUSE OF ACTION**
**(ARKANSAS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer or Sale of Securities**
**Ark. Stat. Ann. § 23-42-106(a)**
**(TRON)**

238.    Plaintiffs reallege the allegations above.

239.    This Cause of Action is brought on behalf of Class members to whom TRX tokens

were offered or sold in Arkansas.

240.    The Arkansas Securities Act forbids the offer or sale of unregistered securities. Ark.

Code Ann. § 23-42-501. Any person who offers or sells a security in violation of Section 23-42-

501 is liable to the person buying the security from him, who "may recover costs and reasonable

attorney's fees plus: (A) [u]pon tender of the security, the consideration paid for the security and

interest at six percent (6%) per year from the date of payment, less the amount of any income

received from owning the security; or (B)(i) [d]amages if the buyer no longer owns the security."

*Id.* § 23-42-106(a)(1) – (2)(B)(i). "Damages are the amount that would be recoverable upon a

tender of the security less the value of the security when the buyer disposed of the security plus

interest at six percent (6%) per year from the date of disposition of the security." *Id.* § 23-42-

106(a)(2)(B)(ii).

241.    When issued, the TRX tokens were securities within the meaning of the Arkansas

Securities Act. *Id.* § 23-42-102(17). On information and belief, TRON offered or sold the TRX

tokens to members of the Class in Arkansas. The TRX tokens were neither registered under, nor subject to exemption from registration under the Arkansas Securities Act. *Id.* § 23-42-503.

242.   On information and belief, the TRX tokens were offered or sold in Arkansas, including without limitation through solicitations directed by TRON to Arkansas and received in Arkansas.

243.   Accordingly, TRON has violated the Arkansas Securities Act through TRON's sale of unregistered securities.

244.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

245.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## ELEVENTH CAUSE OF ACTION
### (ARKANSAS STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Ark. Stat. Ann § 23-42-106**
**(Sun and Chen)**

246.   Plaintiffs reallege the allegations above.

247.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Arkansas.

248.   Every person who controls a person liable under the Arkansas Securities Act for unlawfully selling unregistered securities, as well as every partner, officer, or director of the seller and any other person occupying a similar status or performing a similar function with respect to the seller is jointly and severally liable for the actions of the seller, unless the non-seller satisfies the burden of proof that he did not know, and in the exercise of reasonable care could not have

known, of the existence of actions of the seller that give rise to the liability alleged to exist. *Id.* §
23-42-106(d).

249.   When issued, the TRX tokens were securities within the meaning of the Arkansas
Securities Act. *Id.* § 23-42-102(17). On information and belief, TRON offered and sold the TRX
tokens to members of the Class in Arkansas. The TRX tokens were not registered under, nor
subject to exemption from registration under the Arkansas Securities Act.

250.   On information and belief, TRON offered and sold the TRX tokens in Arkansas,
including without limitation through solicitations directed by TRON to Arkansas and received in
Arkansas.

251.   Each of the Individual Defendants, by virtue of his offices, stock ownership,
agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged
herein, and as set forth herein, the power and authority to directly or indirectly control the
management and activities of TRON and its employees, and to cause TRON to engage in the
wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or
sales of unregistered securities as described herein.

252.   Accordingly, the Individual Defendants, who directly or indirectly controlled
TRON, have violated the Arkansas Securities Act through TRON's offer or sale of unregistered
securities.

253.   Class members who own the TRX tokens have made or will make any necessary
tender and seek all remedies available at law or in equity for any TRX tokens purchased in the
Class Period, including any applicable costs, attorneys' fees, and interest.

254.   Class members who no longer own the TRX tokens seek damages for any TRX
tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TWELFTH CAUSE OF ACTION
## (CALIFORNIA STATE LAW – PRIMARY LIABILITY)
### Unqualified Offer or Sale of Securities
### Cal. Corp. Code § 25503
### (TRON)

255.     Plaintiffs reallege the allegations above.

256.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in California.

257.     The California Corporate Securities Law of 1968 ("California Securities Act") forbids the offer or sale of unqualified securities. Cal Corp. Code §§ 25110, 25130. Any person who offers or sells a security in violation of Sections 25110 or 25130 are "liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned. Damages, if the plaintiff no longer owns the security, shall be equal to the difference between (a) his purchase price plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff." *Id.* § 25503.

258.     When issued, the TRX tokens were securities within the meaning of the California Securities Act. *Id.* § 25019. On information and belief, TRON offered or sold the TRX tokens to members of the Class in California. The TRX tokens were neither qualified under, nor subject to exemption from qualification under the California Securities Act. *Id.* §§ 25110, 25130.

259.     On information and belief, the TRX tokens were offered or sold in California, including without limitation through solicitations directed by TRON to California and received in California.

75

260.    Accordingly, TRON has violated the California Securities Act through TRON's sale of unqualified securities.

261.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

262.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTEENTH CAUSE OF ACTION**
**(CALIFORNIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Cal. Corp. Code § 25504**
**(Sun and Chen)**

263.    Plaintiffs reallege the allegations above.

264.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in California.

265.    Every person who directly or indirectly controls an entity liable under the California Securities Act for unlawfully selling unqualified securities as well as "every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 25504.

266.    When issued, the TRX tokens were securities within the meaning of the California Securities Act. *Id.* § 25019. On information and belief, TRON offered and sold the TRX tokens to members of the Class in California. The TRX tokens were neither qualified under, nor subject to exemption from qualification under the California Securities Act.

267.     On information and belief, TRON offered and sold the TRX tokens in California, including without limitation through solicitations directed by TRON to California and received in California.

268.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unqualified securities.

269.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the California Securities Act through TRON's offer or sale of unqualified securities.

270.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

271.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FOURTEENTH CAUSE OF ACTION**
**(COLORADO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Colo. Rev. Stat. § 11-51-604**
**(TRON)**

272.     Plaintiffs reallege the allegations above.

273.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in the State of Colorado.

274.     The Colorado Securities Act forbids the sale of unregistered securities. Colo. Rev. Stat. § 11-51-301. Any person who sells a security in violation of Section 301 "is liable to the person buying the security from such seller for the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or is liable for damages if the buyer no longer owns the security. Damages are deemed to be the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the statutory rate from the date of disposition." *Id.* § 11-51-604(1).

275.     When issued, TRX tokens were securities within the meaning of the Colorado Securities Act. *Id.* § 11-51-201(17). On information and belief, TRON sold TRX tokens to members of the Class in the State of Colorado. The TRX tokens were neither registered under, nor subject to exemption from registration under the Colorado Securities Act. *Id.* § 11-51-301.

276.     On information and belief , TRX tokens were sold in the State of Colorado, including without limitation through solicitations directed by TRON to the State of Colorado and received in the State of Colorado.

277.     Accordingly, TRON has violated the Colorado Securities Act through TRON's sale of unregistered securities.

278.     Class members who own TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

279.     Class members who no longer own TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTEENTH CAUSE OF ACTION**
**(COLORADO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Colo. Rev. Stat. § 11-51-604**
**(Sun and Chen)**

280.    Plaintiffs reallege the allegations above.

281.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in the State of Colorado.

282.    Every person who directly or indirectly controls an entity liable under the Colorado Securities Act for unlawfully selling unregistered securities, "is liable jointly and severally with and to the same extent as such controlled person, unless the controlling person sustains the burden of proof that such person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Colo. Rev. Stat. § 11-51-604(5).

283.    When issued, TRX tokens were securities within the meaning of the Colorado Securities Act. *Id.* § 11-51-201(17). On information and belief, TRON sold TRX tokens to members of the Class in the State of Colorado. The TRX tokens were neither registered under, nor subject to exemption from registration under the Colorado Securities Act, and TRON was not registered or exempt from registration under Colorado law. *Id.* §§ 11-51-301, 11-51-401(1).

284.    On information and belief, TRON sold TRX tokens in the State of Colorado, including without limitation through solicitations directed by TRON to the State of Colorado and received in the State of Colorado.

285.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

286.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Colorado Securities Act through TRON's sale of unregistered securities.

287.    Class members who own TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

288.    Class members who no longer own TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Conn. Gen. Stat. § 36b-29**
**(TRON)**

289.    Plaintiffs reallege the allegations above.

290.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in the State of Connecticut.

291.    The Connecticut Uniform Securities Act forbids the offer or sale of unregistered securities. Conn. Gen. Stat. § 36b-16. Any person who offers or sells a security in violation of Section 36b-16 "is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 36b-29(a).

292.    When issued, TRX tokens were securities within the meaning of the Connecticut Uniform Securities Act. *Id.* § 36b-3(19). On information and belief, TRON offered or sold the

TRX tokens to members of the Class in the State of Connecticut. The TRX tokens were neither registered under, nor subject to exemption from registration under the Connecticut Uniform Securities Act. *Id.* § 36b-16.

293.    On information and belief, the TRX tokens were offered or sold in the State of Connecticut, including without limitation through solicitations directed by TRON to the State of Connecticut and received in the State of Connecticut.

294.    Accordingly, TRON has violated the Connecticut Uniform Securities Act through TRON's sale of unregistered securities.

295.    Class members who own TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

296.    Class members who no longer own TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Conn. Gen. Stat. § 36b-29**
**(Sun and Chen)**

297.    Plaintiffs reallege the allegations above.

298.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in the State of Connecticut.

299.    Every person who directly or indirectly controls an entity liable under the Connecticut Uniform Securities Act for unlawfully selling unregistered securities , as well as "every partner, officer or director of such a person, [and] every person occupying a similar status or performing similar functions," is jointly and severally liable "with and to the same extent" as the entity liable, unless "the person who is so liable sustains the burden of proof that he did not

know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." Conn. Gen. Stat. § 36b-29(c).

300.   When issued, TRX tokens were securities within the meaning of the Connecticut Uniform Securities Act. *Id.* § 36b-3(19). On information and belief, TRON offered and sold the TRX tokens to members of the Class in the State of Connecticut. The TRX tokens were neither registered under, nor subject to exemption from registration under the Connecticut Uniform Securities Act, and TRON was not registered or exempt from registration under Connecticut law. *Id.* §§ 36b-16, 36b-6(a).

301.   On information and belief, TRON offered and sold TRX tokens in the State of Connecticut, including without limitation through solicitations directed by TRON to the State of Connecticut and received in the State of Connecticut.

302.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

303.   Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Connecticut Uniform Securities Act through TRON's offer or sale of unregistered securities.

304.   Class members who own TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

305.    Class members who no longer own TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTEENTH CAUSE OF ACTION**
**(DISTRICT OF COLUMBIA LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**D.C. Code Ann. § 31-5606.05**
**(TRON)**

306.    Plaintiffs reallege the allegations above.

307.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in the District of Columbia.

308.    The District of Columbia Securities and Investor Protection Act forbids the offer or sale of unregistered securities. D.C. Code Ann. § 31-5603.01. Any person who offers or sells a security in violation of Section 5603.01 is liable to the purchaser for "the consideration paid for the security, interest at the rate used in the Superior Court of the District of Columbia from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it" or for "damages if the buyer no longer owns the security" in the "amount that would be recoverable on a tender less the value of the security when the buyer disposed of it, plus interest at the rate used in the Superior Court of the District of Columbia from the date of disposition." *Id.* §31.5606.05(b).

309.    When issued, the TRX tokens were securities within the meaning of the District of Columbia Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, TRON offered or sold the TRX tokens to members of the Class in District of Columbia. The TRX tokens were neither registered under, nor subject to exemption from registration under the District of Columbia Securities and Investor Protection Act. *Id.* §31.5601.01(31).

310.    On information and belief, the TRX tokens were offered or sold in District of Columbia, including without limitation through solicitations directed by TRON to District of Columbia and received in District of Columbia.

311.    Accordingly, TRON has violated the District of Columbia Securities and Investor Protection Act through TRON's sale of unregistered securities.

312.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

313.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## NINETEENTH CAUSE OF ACTION
### (DISTRICT OF COLUMBIA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**D.C. Code Ann. § 31-5606.05**
**(Sun and Chen)**

314.    Plaintiffs reallege the allegations above.

315.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in District of Columbia.

316.    Every person who directly or indirectly controls an entity liable under the District of Columbia Securities Act for unlawfully selling unregistered securities, as well as "partner, officer, or director of the person liable" or "a person occupying a similar status or performing similar functions" is "liable jointly and severally with, and to the same extent as the person liable, unless her or she is able to sustain the burden of proof that he or she did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution among the several persons so liable." D.C. Code Ann. § 31-5606.05(c).

317.     When issued, the TRX tokens were securities within the meaning of the District of Columbia Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, TRON offered and sold the TRX tokens to members of the Class in District of Columbia. The TRX tokens were neither registered under, nor subject to exemption from registration under the District of Columbia Securities and Investor Protection Act, and TRON.

318.     On information and belief, TRON offered and sold the TRX tokens in District of Columbia, including without limitation through solicitations directed by TRON to District of Columbia and received in District of Columbia.

319.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

320.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the District of Columbia Securities and Investor Protection Act through TRON's offer or sale of unregistered securities.

321.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

322.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TWENTIETH CAUSE OF ACTION
## (FLORIDA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Fla. Stat. § 517.211
### (TRON)

323.     Plaintiffs reallege the allegations above.

324.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Florida.

325.     The Florida Securities and Investor Protection Act forbids the offer or sale of unregistered securities. Fla. Stat. § 517.07(1). Any person who offers or sells a security in violation of Section 517.07(1) is liable to the purchaser for "the consideration paid for the security or investment, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment," as well as reasonable attorneys' fees. *Id.* § 517.211.

326.     When issued, the TRX tokens were securities within the meaning of the Florida Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Florida. The TRX tokens were neither registered under, nor subject to exemption from registration under the Florida Securities and Investor Protection Act. *Id.* §§ 517.051, 517.061.

327.     On information and belief, the TRX tokens were offered or sold in Florida, including without limitation through solicitations directed by TRON to Florida and received in Florida.

328.     Accordingly, TRON has violated the Florida Securities and Investor Protection Act through TRON's sale of unregistered securities.

329.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

330.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FIRST CAUSE OF ACTION**
**(FLORIDA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Fla. Stat. § 517.211**
**(Sun and Chen)**

331.     Plaintiffs reallege the allegations above.

332.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Florida.

333.     Every person who directly or indirectly controls an entity liable under the Florida Securities and Investor Protection Act for unlawfully selling unregistered securities, as well as "every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security." *Id.* § 517.211(1).

334.     When issued, the TRX tokens were securities within the meaning of the Florida Securities and Investor Protection Act. *Id.* § 517.021(22). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Florida. The TRX tokens were neither registered under, nor subject to exemption from registration under the Florida Securities and Investor Protection Act, and TRON.

335.    On information and belief, TRON offered and sold the TRX tokens in Florida, including without limitation through solicitations directed by TRON to Florida and received in Florida.

336.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

337.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Florida Securities and Investor Protection Act through TRON's offer or sale of unregistered securities.

338.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

339.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TWENTY-SECOND CAUSE OF ACTION
### (GEORGIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### Ga. Code Ann. § 10-5-58
### (TRON)

340.    Plaintiffs reallege the allegations above.

341.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Georgia.

342.   The Georgia Uniform Securities Act forbids the sale of unregistered securities. Ga. Code Ann. § 10-5-20. Any person who sells a security in violation of Section 10-5-20 is "liable to the purchaser," who may "maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorney fees determined by the Court upon the tender of the security or for actual damages." *Id.* § 10-5-58.

343.   When issued, the TRX tokens were securities within the meaning of the Georgia Uniform Securities Act. *Id.* § 10-5-2(31). On information and belief, TRON sold the TRX tokens to members of the Class in Georgia. The TRX tokens were neither registered under, nor subject to exemption from registration under the Georgia Uniform Securities Act. *Id.* § 10-5-10.

344.   On information and belief, the TRX tokens were sold in Georgia, including without limitation through solicitations directed by TRON to Georgia and received in Georgia.

345.   Accordingly, TRON has violated the Georgia Uniform Securities Act through TRON's sale of unregistered securities.

346.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

347.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-THIRD CAUSE OF ACTION**
**(GEORGIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Ga. Code Ann. § 10-5-58**
**(Sun and Chen)**

348.   Plaintiffs reallege the allegations above.

349.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Georgia.

350.    Every person who directly or indirectly controls an entity liable under the Georgia Uniform Securities Act for unlawfully selling unregistered securities, as well as "[a]n individual who is a managing partner, executive officer, or director of a person liable" including "an individual having similar status or performing similar functions," "[a]n individual who is an employee of or associated with the person liable, and who materially aids the conduct giving rise to the liability," and "[a] person who is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist." *Id.* §§ 10-5-58(g).

351.    When issued, the TRX tokens were securities within the meaning of the Georgia Uniform Securities Act. *Id.* § 10-5-2(31). On information and belief, TRON sold the TRX tokens to members of the Class in Georgia. The TRX tokens were neither registered under, nor subject to exemption from registration under the Georgia Uniform Securities Act.

352.    On information and belief, TRON sold the TRX tokens in Georgia, including without limitation through solicitations directed by TRON to Georgia and received in Georgia.

353.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

354.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Georgia Uniform Securities Act through TRON's sale of unregistered securities.

355.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

356.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FOURTH CAUSE OF ACTION**
**(HAWAII STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**HRS § 485A-509(d)**
**(TRON)**

357.     Plaintiffs reallege the allegations above.

358.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Hawaii.

359.     The Hawaii Uniform Securities Act forbids the offer or sale of unregistered securities. HRS § 485A-301. Any person who sells a security in violation of Section 485A-301 is "liable to the purchaser . . . the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest, from the date of the purchase, costs, and reasonable attorney's fees determined by the court, upon the tender of the security, or for actual damages" if the purchaser no longer owns the security. *Id.* § 485A-509(b).

360.     When issued, the TRX tokens were securities within the meaning of the Hawaii Uniform Securities Act. *Id.* § 485A-102. On information and belief, TRON sold the TRX tokens

to members of the Class in Hawaii. The TRX tokens were neither registered under, nor subject to exemption from registration under the Hawaii Uniform Securities Act. *Id.* § 485A-201.

361.    On information and belief, the TRX tokens were sold in Hawaii, including without limitation through solicitations directed by TRON to Hawaii and received in Hawaii.

362.    Accordingly, TRON has violated the Hawaii Uniform Securities Act through TRON's sale of unregistered securities.

363.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

364.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-FIFTH CAUSE OF ACTION**
**(HAWAII STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**HRS § 485A-509(g)**
**(Sun and Chen)**

365.    Plaintiffs reallege the allegations above.

366.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Hawaii.

367.    Every person who directly or indirectly controls an entity liable under the Hawaii Uniform Securities Act for unlawfully selling unregistered securities, as well as any "individual who is a managing partner, executive officer, or director of a person liable," is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. HRS § 485A-509(g).

368.    When issued, the TRX tokens were securities within the meaning of the Hawaii Uniform Securities Act. *Id.* § 485A-102. On information and belief, TRON sold the TRX tokens to members of the Class in Hawaii. The TRX tokens were neither registered under, nor subject to exemption from registration under the Hawaii Uniform Securities Act.

369.    On information and belief, TRON sold the TRX tokens in Hawaii, including without limitation through solicitations directed by TRON to Hawaii and received in Hawaii.

370.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

371.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Hawaii Uniform Securities Act through TRON's sale of unregistered securities.

372.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

373.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### TWENTY-SIXTH CAUSE OF ACTION
### (IDAHO STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**I.C. § 30-14-509(b)**
**(TRON)**

374.    Plaintiffs reallege the allegations above.

375.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Idaho.

376.     The Idaho Uniform Securities Act forbids the offer or sale of unregistered securities. I.C. § 30-14-301. Any person who sells a security in violation of Section 30-14-301 is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security, and interest at the annual rate of interest set forth in section 28-22-104(2), Idaho Code, from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages as provided in subsection (b)(3) of this section. *Id.* § 30-14-509(b)(1). The annual rate of interest on judgments is "five percent (5%) plus the base rate in effect at the time of entry of the judgment. The base rate shall be determined on July 1 of each year by the Idaho state treasurer and shall be the weekly average yield on United States treasury securities as adjusted to a constant maturity of one (1) year and rounded up to the nearest one-eighth percent (1/8%)." *Id.* § 28-22-104.

377.     When issued, the TRX tokens were securities within the meaning of the Idaho Uniform Securities Act. *Id.* § 30-14-102 (28). On information and belief, TRON sold the TRX tokens to members of the Class in Idaho. The TRX tokens were neither registered under, nor subject to exemption from registration under the Idaho Uniform Securities Act. *Id.* § 30-14-201.

378.     On information and belief, the TRX tokens were sold in Idaho, including without limitation through solicitations directed by TRON to Idaho and received in Idaho.

379.     Accordingly, TRON has violated the Idaho Uniform Securities Act through TRON's sale of unregistered securities.

380.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

381.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## TWENTY-SEVENTH CAUSE OF ACTION
## (IDAHO STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### I.C. § 30-14-509(g)
### (Sun and Chen)

382.     Plaintiffs reallege the allegations above.

383.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Idaho.

384.     Every person who directly or indirectly controls an entity liable under the Idaho Uniform Securities Act for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer, or director of a person liable under subsections (b) through (f), including an individual having a similar status or performing similar functions" is liable jointly and severally with and to the same extent as the seller, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist. I.C. § 30-14-509(g).

385.     When issued, the TRX tokens were securities within the meaning of the Idaho Uniform Securities Act. *Id.* § 30-14-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Idaho. *Id.* §§ 30-14-102(2), 30-14-102(4). The TRX tokens were not registered under, nor subject to exemption from registration under the Idaho Uniform Securities Act.

386.     On information and belief, TRON sold the TRX tokens in Idaho, including without limitation through solicitations directed by TRON to Idaho and received in Idaho.

387.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

388.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Idaho Uniform Securities Act through TRON's sale of unregistered securities.

389.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

390.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-EIGHTH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**815 Ill. Comp. Stat. Ann. 5/13**
**(TRON)**

391.     Plaintiffs reallege the allegations above.

392.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Illinois.

393.     The Illinois Securities Law of 1953 forbids the sale of unregistered securities. 815 Ill. Comp. Stat. Ann. 5/5. Any person who sells a security in violation of Section 5/5 is "liable to

the purchaser," who may recover "the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold," as well as "reasonable fees and expenses." *Id.* § 5/13.

394.    When issued, the TRX tokens were securities within the meaning of the Illinois Securities Law of 1953. *Id.* § 5/2.1. On information and belief, TRON sold the TRX tokens to members of the Class in Illinois. The TRX tokens were neither registered under, nor subject to exemption from registration under the Illinois Securities Law of 1953. *Id.* §§ 5/3, 5/4.

395.    On information and belief, the TRX tokens were sold in Illinois, including without limitation through solicitations directed by TRON to Illinois and received in Illinois.

396.    Accordingly, TRON has violated the Illinois Securities Law of 1953 through TRON's sale of unregistered securities.

397.    Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Complaint. Prior to filing this Complaint, Plaintiffs have provided to TRON, by registered or certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of the election to rescind, on behalf of the Class, the purchase of any TRX tokens held by the Class, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered or certified mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id.* 5/13(B).

398.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

399.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**TWENTY-NINTH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**815 Ill. Comp. Stat. Ann. 5/13**
**(Sun and Chen)**

400.    Plaintiffs reallege the allegations above.

401.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Illinois.

402.    Every person who directly or indirectly controls an entity liable under the Illinois Securities Law of 1953 for unlawfully selling unregistered securities, as well as every "issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser." *Id.* § 5/15(A).

403.    When issued, the TRX tokens were securities within the meaning of the Illinois Securities Law of 1953. *Id.* § 5/2.1. On information and belief, TRON sold the TRX tokens to members of the Class in Illinois. The TRX tokens were neither registered under, nor subject to exemption from registration under the Illinois Securities Law of 1953.

404.    On information and belief, TRON sold the TRX tokens in Illinois, including without limitation through solicitations directed by TRON to Illinois and received in Illinois.

405.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

406.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Illinois Securities Law of 1953 through TRON's sale of unregistered securities.

407.    Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Complaint. Prior to filing this Complaint, Plaintiffs provided to the Individual Defendants, by registered or certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of the election to rescind, on behalf of the Class, the purchase of any TRX tokens held by the Class, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered or certified mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id.* 5/13(B).

408.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

409.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTIETH CAUSE OF ACTION**
**(INDIANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Indiana Code § 23-19-5-9(a)**
**(TRON)**

410.    Plaintiffs reallege the allegations above.

411.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Indiana.

412.    The Indiana Uniform Securities Act forbids the offer or sale of unregistered securities. Indiana Code § 23-19-3-1. Any person who sells a security in violation of Section 23-19-3-1 is "liable to the purchaser" for "the consideration paid for the security, less the amount of any income received on the security, and interest at the greater of eight percent (8%) per annum or the rate provided for in the security from the date of the purchase, costs, and reasonable attorney's fees determined by the court or arbitrator, upon the tender of the security, or for actual damages …." *Id.* § 23-19-5-9(a).

413.    When issued, the TRX tokens were securities within the meaning of the Indiana Securities Act. *Id.* § 23-19-1-2(28). On information and belief, TRON sold the TRX tokens to members of the Class in Indiana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Indiana Securities Act. *Id.* § 23-19-2-1

414.    On information and belief, the TRX tokens were sold in Indiana, including without limitation through solicitations directed by TRON to Indiana and received in Indiana.

415.    Accordingly, TRON has violated the Indiana Uniform Securities Act through TRON's sale of unregistered securities.

416.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

417.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-FIRST CAUSE OF ACTION**
**(INDIANA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Indiana Code § 23-19-5-9(d)**
**(Sun and Chen)**

418.    Plaintiffs reallege the allegations above.

419.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Indiana.

420.    Every person who directly or indirectly controls an entity liable under the Indiana Uniform Securities Act for unlawfully selling unregistered securities, as well as "individual who is a managing partner, executive officer, or director of a person liable," is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist Indiana Code § 23-19-5-9(d).

421.    When issued, the TRX tokens were securities within the meaning of the Indiana Securities Act. *Id.* § 23-19-1-2(28). On information and belief, TRON sold the TRX tokens to members of the Class in Indiana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Indiana Securities Act.

422.    On information and belief, TRON sold the TRX tokens in Indiana, including without limitation through solicitations directed by TRON to Indiana and received in Indiana.

423.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

424.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Indiana Uniform Securities Act through TRON's sale of unregistered securities.

425.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

426.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### THIRTY-SECOND CAUSE OF ACTION
### (IOWA STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**I.C.A. § 502.509(2)**
**(TRON)**

427.    Plaintiffs reallege the allegations above.

428.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Iowa.

429.    The Iowa Uniform Securities Act forbids the offer or sale of unregistered securities. I.C.A. § 502.301. Any person who sells a security in violation of Section 502.301 is "liable to the

purchaser" for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages. . . ." *Id.* § 502.509(2).

430.   When issued, the TRX tokens were securities within the meaning of the Iowa Securities Act. *Id.* § 502.102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Iowa. The TRX tokens were neither registered under, nor subject to exemption from registration under the Iowa Securities Act. *Id.* § 502.201.

431.   On information and belief, the TRX tokens were sold in Iowa, including without limitation through solicitations directed by TRON to Iowa and received in Iowa.

432.   Accordingly, TRON has violated the Iowa Uniform Securities Act through TRON's sale of unregistered securities.

433.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

434.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### THIRTY-THIRD CAUSE OF ACTION
### (IOWA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**I.C.A. § 502.509(7)**
**(Sun and Chen)**

435.   Plaintiffs reallege the allegations above.

436.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Iowa.

437.    Every person who directly or indirectly controls an entity liable under the Iowa Uniform Securities Act for unlawfully selling unregistered securities, as well as "managing partner, executive officer, or director of a person liable . . . including an individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. I.C.A. § 502.509(7)

438.    When issued, the TRX tokens were securities within the meaning of the Iowa Securities Act. *Id.* § 502.102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Iowa. The TRX tokens were neither registered under, nor subject to exemption from registration under the Iowa Securities Act.

439.    On information and belief, TRON sold the TRX tokens in Iowa, including without limitation through solicitations directed by TRON to Iowa and received in Iowa.

440.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

441.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Iowa Uniform Securities Act through TRON's sale of unregistered securities.

442.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

443.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## THIRTY-FOURTH CAUSE OF ACTION
### (KANSAS STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**Kan. Stat. Ann. § 17-12a509**
**(TRON)**

444.     Plaintiffs reallege the allegations above.

445.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Kansas.

446.     The Kansas Uniform Securities Act forbids the offer or sale of unregistered securities. Kan. Stat. Ann. § 17-12a301. Any person who sells a security in violation of Section 17-12a301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court, upon the tender of the security," or if the purchaser no longer owns the security, "[a]ctual damages" in "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court." *Id.* § 17-12a509(b).

447.     When issued, the TRX tokens were securities within the meaning of the Kansas Uniform Securities Act. *Id.* § 17-12a102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Kansas. The TRX tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act. *Id.* § 17-12a301.

448.    On information and belief, the TRX tokens were sold in Kansas, including without limitation through solicitations directed by TRON to Kansas and received in Kansas.

449.    Accordingly, TRON has violated the Kansas Uniform Securities Act through TRON's sale of unregistered securities.

450.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

451.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-FIFTH CAUSE OF ACTION**
**(KANSAS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Kan. Stat. Ann. § 17-12a509**
**(Sun and Chen)**

452.    Plaintiffs reallege the allegations above.

453.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Kansas.

454.    Every person who directly or indirectly controls an entity liable under the Kansas Uniform Securities Act for unlawfully selling unregistered securities, as well as any "individual who is a managing partner, executive officer, or director" of such an entity, "including an individual having a similar status or performing similar functions," and any "individual who is an employee of or associated with" such an entity "and who materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless the individual "sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Kan. Stat. Ann. § 17-12a509(g).

455.    When issued, the TRX tokens were securities within the meaning of the Kansas Uniform Securities Act. *Id.* § 17-12a102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Kansas. The TRX tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act.

456.    On information and belief, TRON sold the TRX tokens in Kansas, including without limitation through solicitations directed by TRON to Kansas and received in Kansas.

457.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

458.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Kansas Uniform Securities Act through TRON's sale of unregistered securities.

459.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

460.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**THIRTY-SIXTH CAUSE OF ACTION**
**(KENTUCKY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Ky. Rev. Stat. Ann. § 292.480**
**(TRON)**

461.    Plaintiffs reallege the allegations above.

462.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Kentucky.

463.    The Securities Act of Kentucky forbids the offer or sale of unregistered securities. Ky. Rev. Stat. Ann. § 292.340. Any person who offers or sells a security in violation of Section 292.340 is "liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security," or if the purchaser no longer owns the security, for damages in the "amount that would be recoverable upon a tender less … [t]he value of the security when the buyer is disposed of it; and … [i]nterest at the legal rate per annum from the date of disposition." *Id.* § 292.480(1).

464.    When issued, the TRX tokens were securities within the meaning of the Securities Act of Kentucky. *Id.* § 292.310(19). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Kentucky. The TRX tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky. *Id.* § 292.340.

465.    On information and belief, the TRX tokens were offered or sold in Kentucky, including without limitation through solicitations directed by TRON to Kentucky and received in Kentucky.

466.    Accordingly, TRON has violated the Securities Act of Kentucky through TRON's offer and sale of unregistered securities.

467.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

468.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## THIRTY-SEVENTH CAUSE OF ACTION
### (KENTUCKY STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Ky. Rev. Stat. Ann. § 292.480**
**(Sun and Chen)**

469.     Plaintiffs reallege the allegations above.

470.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Kentucky.

471.     Every person who directly or indirectly controls an entity liable under the Securities Act of Kentucky for unlawfully offering or selling unregistered securities, as well as "every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Ky. Rev. Stat. Ann. § 292.480(4).

472.     When issued, the TRX tokens were securities within the meaning of the Securities Act of Kentucky. *Id.* § 292.310(19). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Kentucky. The TRX tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky.

473.     On information and belief, TRON offered and sold the TRX tokens in Kentucky, including without limitation through solicitations directed by TRON to Kentucky and received in Kentucky.

474.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

475.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Securities Act of Kentucky through TRON's offer or sale of unregistered securities.

476.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

477.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### THIRTY-EIGHTH CAUSE OF ACTION
### (LOUISIANA STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**La. Stat. Ann. § 51:714**
**(TRON)**

478.    Plaintiffs reallege the allegations above.

479.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Louisiana.

480.    The Louisiana Securities Law forbids the offer or sale of unregistered securities. La. Stat. Ann. § 51:705. Any person who offers or sells a security in violation of Section 51:705 is "liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at

the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment … less the amount of any income received thereon, together with all taxable court costs and reasonable attorneys' fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security" in the amount "which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment." *Id.* §§ 51:714(A); 51:712(A)(1).

481. When issued, the TRX tokens were securities within the meaning of the Louisiana Securities Law. *Id.* § 51:702(15)(b). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Louisiana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law. *Id.* § 51:705.

482. On information and belief, the TRX tokens were offered or sold in Louisiana, including without limitation through solicitations directed by TRON to Louisiana and received in Louisiana.

483. Accordingly, TRON has violated the Louisiana Securities Law through TRON's offer and sale of unregistered securities.

484. Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

485. Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## THIRTY-NINTH CAUSE OF ACTION
## (LOUISIANA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### La. Stat. Ann. § 51:714
### (Sun and Chen)

486.    Plaintiffs reallege the allegations above.

487.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Louisiana.

488.    Every person who directly or indirectly controls an entity liable under the Louisiana Securities Act for unlawfully offering or selling unregistered securities, as well as "every general partner, executive officer, or director of such [entity], every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the [entity] unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist." La. Stat. Ann. § 51:714(B).

489.    When issued, the TRX tokens were securities within the meaning of the Louisiana Securities Law. *Id.* § 51:702(15)(b). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Louisiana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law.

490.    On information and belief, TRON offered and sold the TRX tokens in Louisiana, including without limitation through solicitations directed by TRON to Louisiana and received in Louisiana.

491.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

112

management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

492.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Louisiana Securities Law through TRON's offer or sale of unregistered securities.

493.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

494.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTIETH CAUSE OF ACTION**
**(MAINE STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Me. Rev. Stat. tit. 32, § 16509**
**(TRON)**

495.    Plaintiffs reallege the allegations above.

496.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Maine.

497.    The Maine Uniform Securities Act forbids the offer or sale of unregistered securities. Me. Rev. Stat. tit. 32, § 16301. Any person who sells a security in violation of Section 16301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and the interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and the

113

interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court." *Id.* § 16509(2).

498.   When issued, the TRX tokens were securities within the meaning of the Maine Uniform Securities Act. *Id.* § 16102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Maine. The TRX tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act. *Id.* § 16301.

499.   On information and belief, the TRX tokens were sold in Maine, including without limitation through solicitations directed by TRON to Maine and received in Maine.

500.   Accordingly, TRON has violated the Maine Uniform Securities Act through TRON's sale of unregistered securities.

501.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

502.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-FIRST CAUSE OF ACTION**
**(MAINE STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Me. Rev. Stat. tit. 32, § 16509**
**(Sun and Chen)**

503.   Plaintiffs reallege the allegations above.

504.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Maine.

505.   Every person who directly or indirectly controls an entity liable under the Maine Uniform Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer or director" of such an entity, "including an individual having a similar

status or performing similar functions," any "individual who is an employee of or associated with" such an entity "and who materially aids the conduct giving rise to the liability," and any "broker-dealer, agent, investment adviser or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless the individual sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Me. Rev. Stat. tit. 32, § 16509(7).

506.    When issued, the TRX tokens were securities within the meaning of the Maine Uniform Securities Act. *Id.* § 16102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Maine. The TRX tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act.

507.    On information and belief, TRON sold the TRX tokens in Maine, including without limitation through solicitations directed by TRON to Maine and received in Maine.

508.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

509.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Maine Uniform Securities Act through TRON's sale of unregistered securities.

510.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

511.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FORTY-SECOND CAUSE OF ACTION
### (MARYLAND STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**Md. Code Ann., Corps. & Ass'ns § 11-703**
**(TRON)**

512.    Plaintiffs reallege the allegations above.

513.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Maryland.

514.    The Maryland Securities Act forbids the offer or sale of unregistered securities. Md. Code Ann., Corps. & Ass'ns § 11-501. Any person who offers or sells a security in violation of Section 501 is "civilly liable to the person buying a security from him," who "may sue either at law or in equity … [o]n tender of the security, to recover the consideration paid for the security, together with interest at the rate provided for in § 11-107(a) of the [Maryland] Courts and Judicial Proceedings Article, as amended, from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security; or … [i]f he no longer owns the security, for damages" in "the amount that would be recoverable on a tender less the value of the security when the buyer disposed of it and interest at the rate provided for in § 11-107(a) of the Courts and Judicial Proceedings Article, as amended, from the date of disposition." *Id.* § 11-703(a)(1)(i), (b)(1), (b)(3).

515.    When issued, the TRX tokens were securities within the meaning of the Maryland Securities Act. *Id.* § 11-101(s)(1). On information and belief, TRON offered or sold the TRX

116

tokens to members of the Class in Maryland. The TRX tokens were neither registered under, nor subject to exemption from registration under the Maryland Securities Act. *Id.* § 11-501.

516.     On information and belief, the TRX tokens were offered or sold in Maryland, including without limitation through solicitations directed by TRON to Maryland and received in Maryland.

517.     Accordingly, TRON has violated the Maryland Securities Act through TRON's offer and sale of unregistered securities.

518.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

519.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-THIRD CAUSE OF ACTION**
**(MARYLAND STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Md. Code Ann., Corps. & Ass'ns § 11-703**

**(Sun and Chen)**

520.     Plaintiffs reallege the allegations above.

521.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Maryland.

522.     Every person who directly or indirectly controls an entity liable under the Maryland Securities Act for unlawfully offering or selling unregistered securities, as well as "every person occupying a similar status or performing similar functions, every employee of the [entity] who materially aids in the conduct giving rise to the liability, and every broker-dealer or agent who materially aids in such conduct are also liable jointly and severally with and to the same extent as

117

the [entity], unless able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 11-703(c)(1).

523.     When issued, the TRX tokens were securities within the meaning of the Maryland Securities Act. *Id.* § 11-101(s)(1). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Maryland. The TRX tokens were neither registered under, nor subject to exemption from registration under the Maryland Securities Act.

524.     On information and belief, TRON offered and sold the TRX tokens in Maryland, including without limitation through solicitations directed by TRON to Maryland and received in Maryland.

525.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

526.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Maryland Securities Act through TRON's offer or sale of unregistered securities.

527.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

528.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-FOURTH CAUSE OF ACTION**
**(MASSACHUSETTS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Mass. Gen. Laws Ann. ch. 110A, § 410(a)**
**(TRON)**

529.    Plaintiffs reallege the allegations above.

530.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Massachusetts.

531.    The Massachusetts Securities Act forbids the offer or sale of unregistered securities. Mass. Gen. Laws Ann. ch. 110A, § 301. Any person who offers or sells a security in violation of Section 301 is "is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 410(a).

532.    When issued, the TRX tokens were securities within the meaning of the Massachusetts Securities Act. *Id.* § 401(f). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Massachusetts. The TRX tokens were neither registered under, nor subject to exemption from registration under the Massachusetts Securities Act. *Id.* § 402.

533.    On information and belief, the TRX tokens were offered or sold in Massachusetts, including without limitation through solicitations directed by TRON to Massachusetts and received in Massachusetts.

119

534.    Accordingly, TRON has violated the Massachusetts Securities Act through TRON's sale of unregistered securities.

535.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

536.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-FIFTH CAUSE OF ACTION**
**(MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mass. Gen. Laws Ann. ch. 110A, §410(b)**
**(Sun and Chen)**

537.    Plaintiffs reallege the allegations above.

538.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Massachusetts.

539.    Every person who directly or indirectly controls an entity liable under the Massachusetts Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Mass. Gen. Laws Ann. ch. 110A, §410(b).

540.    When issued, the TRX tokens were securities within the meaning of the Massachusetts Securities Act. *Id.* § 401(f). On information and belief, TRON offered and sold the

TRX tokens to members of the Class in Massachusetts. The TRX tokens were not registered under, nor subject to exemption from registration under the Massachusetts Securities Act.

541.    On information and belief, TRON offered and sold the TRX tokens in Massachusetts, including without limitation through solicitations directed by TRON to Massachusetts and received in Massachusetts.

542.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

543.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Massachusetts Securities Act through TRON's offer or sale of unregistered securities.

544.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

545.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FORTY-SIXTH CAUSE OF ACTION
### (MICHIGAN STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**Mich. Comp. Laws Ann. § 451.2509**
**(TRON)**

546.    Plaintiffs reallege the allegations above.

547. This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Michigan.

548. The Michigan Securities Act forbids the offer or sale of unregistered securities. Mich. Comp. Laws Ann. § 451.2301. Any person who sells a security in violation of Section 451.2301 is "liable to the purchaser" who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at 6% per year from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security," or for "actual damages" if the purchaser no longer owns the security. *Id.* § 451.2509.

549. When issued, the TRX tokens were securities within the meaning of the Michigan Securities Act. *Id.* § 451.2102c. On information and belief, TRON sold the TRX tokens to members of the Class in Michigan. The TRX tokens were neither registered under, nor subject to exemption from registration under the Michigan Securities Act. *Id.* § 451.2201.

550. On information and belief, the TRX tokens were sold in Michigan, including without limitation through solicitations directed by TRON to Michigan and received in Michigan.

551. Accordingly, TRON has violated the Michigan Securities Act through TRON's sale of unregistered securities.

552. Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

553. Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-SEVENTH CAUSE OF ACTION**
**(MICHIGAN STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mich. Comp. Laws Ann. § 451.2509**
**(Sun and Chen)**

554.    Plaintiffs reallege the allegations above.

555.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Michigan.

556.    Every person who directly or indirectly controls an entity liable under the Michigan Securities Act for unlawfully selling unregistered securities, as well as an "individual who is a managing partner, executive officer, or director" of a person liable . . . including each individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Mich. Comp. Laws Ann. § 451.2509(7).

557.    When issued, the TRX tokens were securities within the meaning of the Michigan Securities Act. *Id.* § 451.2102c. On information and belief, TRON sold the TRX tokens to members of the Class in Michigan. The TRX tokens were neither registered under, nor subject to exemption from registration under the Michigan Securities Act, *id.* § 451.2201.

558.    On information and belief, TRON sold the TRX tokens in Michigan, including without limitation through solicitations directed by TRON to Michigan and received in Michigan.

559.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

560.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Michigan Securities Act through TRON's sale of unregistered securities.

561.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

562.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-EIGHTH CAUSE OF ACTION**
**(MINNESOTA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Minnesota Statutes § 80A.76(b)**
**(TRON)**

563.    Plaintiffs reallege the allegations above.

564.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Minnesota.

565.    The Minnesota Securities Act forbids the offer or sale of unregistered securities. Minnesota Statutes § 80A.49(c). Any person who sells a security in violation of Section 80A.49(c) is "liable to the purchaser" for "consideration paid for the security, less the amount of any income received on the security, and interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 80A.76(b).

566.    When issued, the TRX tokens were securities within the meaning of the Minnesota Securities Act. *Id.* § 80A.41(30). On information and belief, TRON sold the TRX tokens to

124

members of the Class in Minnesota. The TRX tokens were neither registered under, nor subject to exemption from registration under the Minnesota Securities Act. *Id.* § 80A.45.

567.    On information and belief, the TRX tokens were sold in Minnesota, including without limitation through solicitations directed by TRON to Minnesota and received in Minnesota.

568.    Accordingly, TRON has violated the Minnesota Securities Act through TRON's sale of unregistered securities.

569.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

570.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FORTY-NINTH CAUSE OF ACTION**
**(MINNESOTA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Minnesota Statutes § 80A.76(g)**
**(Sun and Chen)**

571.    Plaintiffs reallege the allegations above.

572.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Minnesota.

573.    Every person who directly or indirectly controls an entity liable under the Minnesota Securities Act for unlawfully selling unregistered securities, as well as "managing partner, executive officer, or director of a person liable . . . including an individual having a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the

exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 80A.76(g).

574.    When issued, the TRX tokens were securities within the meaning of the Minnesota Securities Act. *Id.* § 80A.41(30). On information and belief, TRON sold the TRX tokens to members of the Class in Minnesota. The TRX tokens were neither registered under, nor subject to exemption from registration under the Minnesota Securities Act.

575.    On information and belief, TRON sold the TRX tokens in Minnesota, including without limitation through solicitations directed by TRON to Minnesota and received in Minnesota.

576.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

577.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Minnesota Securities Act through TRON's sale of unregistered securities.

578.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

579.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTIETH CAUSE OF ACTION**
**(MISSISSIPPI STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Miss. Code Ann. § 75-71-509(b)**
**(TRON)**

580.    Plaintiffs reallege the allegations above.

581.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Mississippi.

582.    The Mississippi Securities Act forbids the offer or sale of unregistered securities. Miss. Code Ann. § 75-71-301. "A person is liable to the purchaser if the person sells a security in violation of Section 75-71-301." *Id.* § 75-71-509(b). Such purchaser "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney's fees determined by the court, upon the tender of the security, or," *id.* § 75-71-509(b)(1), "[a]ctual damages … [in] the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorney's fees determined by the court," *id.* § 75-71-509(b)(3).

583.    When issued, the TRX tokens were securities within the meaning of the Mississippi Securities Act. *Id.* § 75-71-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Mississippi. The TRX tokens were neither registered under, nor subject to exemption from registration under the Mississippi Securities Act. *Id.* § 75-71-301.

584.    On information and belief, the TRX tokens were sold in Mississippi, including without limitation through solicitations directed by TRON to Mississippi and received in Mississippi.

585.    Accordingly, TRON has violated the Mississippi Securities Act through TRON's sale of unregistered securities.

586.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

587.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-FIRST CAUSE OF ACTION**
**(MISSISSIPPI STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Miss. Code Ann. § 75-71-509(g)**
**(Sun and Chen)**

588.    Plaintiffs reallege the allegations above.

589.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Mississippi.

590.    Every person who directly or indirectly controls an entity liable under the Mississippi Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer, or director of" such entity, and every person who was "an employee of or associated with" such entity "who materially aid[ed] the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. Miss. Code Ann. § 75-71-509(g).

591.    When issued, the TRX tokens were securities within the meaning of the Mississippi Securities Act. *Id.* § 75-71-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Mississippi. The TRX tokens were neither registered under, nor subject to exemption from registration under the Mississippi Securities Act.

128

592.    On information and belief, TRON sold the TRX tokens in Mississippi, including without limitation through solicitations directed by TRON to Mississippi and received in Mississippi.

593.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

594.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Mississippi Securities Act through TRON's sale of unregistered securities.

595.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

596.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FIFTY-SECOND CAUSE OF ACTION
### (MISSOURI STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**Mo. Rev. Stat. § 409.5-509(b)**
**(TRON)**

597.    Plaintiffs reallege the allegations above.

598.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Missouri.

599.     The Missouri Securities Act forbids the offer or sale of unregistered securities. Mo. Rev. Stat. § 409.3-301. "A person is liable to the purchaser if the person sells a security in violation of section 409.3-301," and such purchaser "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the rate of eight percent per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or," *id.* § 409.5-509(b)(1), "[a]ctual damages … [in] the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the rate of eight percent per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court," *id.* § 409.5-509(b)(3).

600.     When issued, the TRX tokens were securities within the meaning of the Missouri Securities Act. *Id.* § 409.1-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Missouri. The TRX tokens were neither registered under, nor subject to exemption from registration under the Missouri Securities Act. *Id.* § 409.3-301.

601.     On information and belief, the TRX tokens were sold in Missouri, including without limitation through solicitations directed by TRON to Missouri and received in Missouri.

602.     Accordingly, TRON has violated the Missouri Securities Act through TRON's sale of unregistered securities.

603.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

604.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-THIRD CAUSE OF ACTION**
**(MISSOURI STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mo. Rev. Stat. § 409.5-509(g)**
**(Sun and Chen)**

605.    Plaintiffs reallege the allegations above.

606.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Missouri.

607.    Every person who directly or indirectly controls an entity liable under the Missouri Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer, or director of" such entity, and every person who was "an employee of or associated with" such entity "who materially aid[ed] the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. Mo. Rev. Stat. § 409.5-509(g).

608.    When issued, the TRX tokens were securities within the meaning of the Missouri Securities Act. *Id.* § 409.1-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in Missouri. The TRX tokens were neither registered under, nor subject to exemption from registration under the Missouri Securities Act.

609.    On information and belief, TRON sold the TRX tokens in Missouri, including without limitation through solicitations directed by TRON to Missouri and received in Missouri.

610.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

611.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Missouri Securities Act through TRON's sale of unregistered securities.

612.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

613.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-FOURTH CAUSE OF ACTION**
**(MONTANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Mont. Code Ann. § 30-10-307(1)**
**(TRON)**

614.    Plaintiffs reallege the allegations above.

615.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Montana.

616.    The Montana Securities Act forbids the offer or sale of unregistered securities. Mont. Code Ann. § 30-10-202. "Any person who offers or sells a security in violation of 30-10-202 … is liable to the person buying the security from the offeror or seller, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 10% a year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the buyer no longer owns the security" in "the amount that would be recoverable upon a tender less: (a) the value of the security when the buyer disposed of it; and (b) interest at 10% a year from the date of disposition." *Id.* § 30-10-307(1).

617.    When issued, the TRX tokens were securities within the meaning of the Montana Securities Act. *Id.* § 30-10-103(24). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Montana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Montana Securities Act. *Id.* § 30-10-202.

618.    On information and belief, the TRX tokens were offered or sold in Montana, including without limitation through solicitations directed by TRON to Montana and received in Montana.

619.    Accordingly, TRON has violated the Montana Securities Act through TRON's sale of unregistered securities.

620.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

621.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-FIFTH CAUSE OF ACTION**
**(MONTANA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Mont. Code Ann. § 30-10-307(2)**
**(Sun and Chen)**

622.    Plaintiffs reallege the allegations above.

623.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Montana.

624.    "Every person who directly or indirectly controls a seller liable under subsection (1), every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of the seller, and every broker-dealer or salesperson who participates or materially aids in the sale is liable jointly and severally with and to the same extent as the seller if

133

the nonseller knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which the liability is alleged to exist." Mont. Code Ann. § 30-10-307(2).

625.    When issued, the TRX tokens were securities within the meaning of the Montana Securities Act. *Id.* § 30-10-103(24). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Montana. The TRX tokens were neither registered under, nor subject to exemption from registration under the Montana Securities Act. *Id.* § 30-10-202.

626.    On information and belief, TRON offered or sold the TRX tokens in Montana, including without limitation through solicitations directed by TRON to Montana and received in Montana.

627.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers and sales of unregistered securities.

628.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Montana Securities Act through TRON's offer and sale of unregistered securities.

629.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

630.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-SIXTH CAUSE OF ACTION**
**(NEBRASKA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Neb. Rev. Stat. § 8-1118(1)**
**(TRON)**

631.    Plaintiffs reallege the allegations above.

632.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Nebraska.

633.    The Nebraska Securities Act forbids the offer or sale of unregistered securities. Neb. Rev. Stat. § 8-1104. Any person who offers or sells a security in violation of section 8-1104 … shall be liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per annum from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security" in "the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at six percent per annum from the date of disposition." *Id.* § 8-1118(1).

634.    When issued, the TRX tokens were securities within the meaning of the Nebraska Securities Act. *Id.* § 8-1101(15). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Nebraska. The TRX tokens were neither registered under, nor subject to exemption from registration under the Nebraska Securities Act. *Id.* § 8-1104.

635.    On information and belief, the TRX tokens were offered or sold in Nebraska, including without limitation through solicitations directed by TRON to Nebraska and received in Nebraska.

636.    Accordingly, TRON has violated the Nebraska Securities Act through TRON's sale of unregistered securities.

637.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

638.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### FIFTY-SEVENTH CAUSE OF ACTION
### (NEBRASKA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Neb. Rev. Stat. § 8-1118(3)**
**(Sun and Chen)**

639.    Plaintiffs reallege the allegations above.

640.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Nebraska.

641.    "Every person who directly or indirectly controls a person liable under subsections (1) … of this section, including every partner, limited liability company member, officer, director, or person occupying a similar status or performing similar functions of a partner, limited liability company member, officer, or director, or employee of such person who materially aids in the conduct giving rise to liability, and every broker-dealer, issuer-dealer, agent, investment adviser, or investment adviser representative who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Neb. Rev. Stat. § 8-1118(3).

642.    When issued, the TRX tokens were securities within the meaning of the Nebraska Securities Act. *Id.* § 8-1101(15). On information and belief, TRON offered or sold the TRX tokens

to members of the Class in Nebraska. The TRX tokens were neither registered under, nor subject to exemption from registration under the Nebraska Securities Act. *Id.* § 8-1104.

643.    On information and belief, TRON offered or sold the TRX tokens in Nebraska, including without limitation through solicitations directed by TRON to Nebraska and received in Nebraska.

644.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers and sales of unregistered securities.

645.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Nebraska Securities Act through TRON's offer and sale of unregistered securities.

646.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

647.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-EIGHTH CAUSE OF ACTION**
**(NEVADA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Nev. Stat. § 90.660(1)(b)**
**(TRON)**

648.    Plaintiffs reallege the allegations above.

649.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom TRX tokens were offered or sold in Nevada.

650.    The Nevada Securities Act forbids the offer or sale of unregistered securities. Nev. Stat. § 90.460. "A person who offers or sells a security in violation of" Neb. Rev. Stat. § 90.460 "is liable to the person purchasing the security." *Id.* § 90.660. "Upon tender of the security, the purchaser may recover the consideration paid for the security and interest at the legal rate of [Nevada] from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security. A purchaser who no longer owns the security may recover damages" in "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal rate of [Nevada] from the date of disposition of the security, costs and reasonable attorney's fees determined by the court." *Id.*

651.    When issued, the TRX tokens were securities within the meaning of the Nevada Securities Act. *Id.* § 90.295. TRON offered or sold the TRX tokens to a Plaintiff and member of the Class in Nevada. The TRX tokens were neither registered under, nor subject to exemption from registration under the Nevada Securities Act. *Id.* § 90.460.

652.    The TRX tokens were offered or sold in Nevada, including without limitation through solicitations directed by TRON to Nevada and received in Nevada.

653.    Accordingly, TRON has violated the Nevada Securities Act through TRON's sale of unregistered securities.

654.    Plaintiff and Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

138

655.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**FIFTY-NINTH CAUSE OF ACTION**
**(NEVADA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Nev. Stat. § 90.660(4)**
**(Sun and Chen)**

656.    Plaintiffs reallege the allegations above.

657.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom TRX tokens were offered or sold in Nevada.

658.    Every person who directly or indirectly controls an entity liable under the Nevada Securities Act for unlawfully selling unregistered securities, as well as any "partner, officer or director of the [entity] liable, a person occupying a similar status or performing similar functions, any agent of the [entity] liable, an employee of the [entity] liable if the employee materially aids in the act, omission or transaction constituting the violation," is jointly and severally liable with and to the same extent as the entity, unless such person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by which the liability is alleged to exist. Nev. Stat. § 90.660(4).

659.    When issued, the TRX tokens were securities within the meaning of the Nevada Securities Act. *Id.* § 90.295. TRON offered or sold the TRX tokens to a Plaintiffs in Nevada. The TRX tokens were neither registered under, nor subject to exemption from registration under the Nevada Securities Act.

660.    TRON offered or sold the TRX tokens in Nevada, including without limitation through solicitations directed by TRON to Nevada and received in Nevada.

661.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

662.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Nevada Securities Act through TRON's offer or sale of unregistered securities.

663.    Plaintiffs and class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

664.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTIETH CAUSE OF ACTION**
**(NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**N.H. Rev. Stat. § 421-B:5-509(b)**
**(TRON)**

665.    Plaintiffs reallege the allegations above.

666.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in New Hampshire.

667.    The New Hampshire Uniform Securities Act forbids the offer or sale of unregistered securities. N.H. Rev. Stat. § 421-B:3-301. Any person who sells a security in violation of Section 421-B:3-301 is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages as provided in subsection (b)(3)." *Id.* § 421-B:5-

140

509(b)(1). The annual rate of interest on judgments is "a rate determined by the state treasurer as the prevailing discount rate of interest on 26-week United States Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points, rounded to the nearest tenth of a percentage point." *Id.* § 336-1 II.

668.   When issued, the TRX tokens were securities within the meaning of the New Hampshire Uniform Securities Act. *Id.* § 421-B:1-102(53)(A). On information and belief, TRON sold the TRX tokens to members of the Class in New Hampshire. The TRX tokens were neither registered under, nor subject to exemption from registration under the New Hampshire Uniform Securities Act. *Id.* § 421-B:2-201.

669.   On information and belief, the TRX tokens were sold in New Hampshire, including without limitation through solicitations directed by TRON to New Hampshire and received in New Hampshire.

670.   Accordingly, TRON has violated the New Hampshire Uniform Securities Act through TRON's sale of unregistered securities.

671.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

672.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-FIRST CAUSE OF ACTION
### (NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**N.H. Rev. Stat. § 421-B:5-509(g)**
**(Sun and Chen)**

673.   Plaintiffs reallege the allegations above.

674.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in New Hampshire.

675.    Every person who directly or indirectly controls an entity liable under the New Hampshire Uniform Securities Act for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer, or director of a person liable under subsections (b) through (f), including an individual having a similar status or performing similar functions" is liable jointly and severally with and to the same extent as the seller, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist. N.H. Rev. Stat. § 421-B:5-509(g).

676.    When issued, the TRX tokens were securities within the meaning of the New Hampshire Uniform Securities Act. *Id.* § 421-B:1-102(53)(A). On information and belief, TRON sold the TRX tokens to members of the Class in New Hampshire. *Id.* §§ 421-B:1-102(3), 421-B:1-102(6). The TRX tokens were neither registered under, nor subject to exemption from registration under the New Hampshire Uniform Securities Act.

677.    On information and belief, TRON sold the TRX tokens in New Hampshire, including without limitation through solicitations directed by TRON to New Hampshire and received in New Hampshire.

678.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

679.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the New Hampshire Uniform Securities Act through TRON's sale of unregistered securities.

680.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

681.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-SECOND CAUSE OF ACTION**
**(NEW JERSEY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**NJ Stat. Ann. § 49:3-71(a), (c)**
**(TRON)**

682.    Plaintiffs reallege the allegations above.

683.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in New Jersey.

684.    The New Jersey Uniform Securities Act forbids the offer or sale of unregistered securities. NJ Stat. Ann. § 49:3-60(e). Any person who offers or sells a security in violation of Section 49:3-60 is "liable . . . an action either at law or in equity to recover the consideration paid for the security or the investment advice and any loss due to the advice, together with interest set at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of payment of the consideration for the investment advice or security, and costs, less the amount of any income received on the security, upon the

tender of the security and any income received from the investment advice or on the security, or for damages if he no longer owns the security." *Id.* § 49:3-71(c).

685.    When issued, the TRX tokens were securities within the meaning of the New Jersey Securities Act. *Id.* § 49:3-49(m). On information and belief, TRON offered or sold the TRX tokens to members of the Class in New Jersey. The TRX tokens were neither registered under, nor subject to exemption from registration under the New Jersey Securities Act. *Id.* § 49:3-50

686.    On information and belief, the TRX tokens were offered or sold in New Jersey, including without limitation through solicitations directed by TRON to New Jersey and received in New Jersey.

687.    Accordingly, TRON has violated the New Jersey Uniform Securities Act through TRON's sale of unregistered securities.

688.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

689.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## SIXTY-THIRD CAUSE OF ACTION
### (NEW JERSEY STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**NJ Stat. Ann. § 49:3-71(d)**
**(Sun and Chen)**

690.    Plaintiffs reallege the allegations above.

691.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in New Jersey.

692.    Every person who directly or indirectly controls an entity liable under the New Jersey Uniform Securities Act for unlawfully selling unregistered securities, as well as "every

partner, officer, or director of such a seller, or investment adviser, every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. *Id.* § 49:3-71(d)

693.    When issued, the TRX tokens were securities within the meaning of the New Jersey Securities Act. *Id.* § 49:3-49(m). On information and belief, TRON offered and sold the TRX tokens to members of the Class in New Jersey. The TRX tokens were neither registered under, nor subject to exemption from registration under the New Jersey Securities Act.

694.    On information and belief, TRON offered and sold the TRX tokens in New Jersey, including without limitation through solicitations directed by TRON to New Jersey and received in New Jersey.

695.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

696.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the New Jersey Uniform Securities Act through TRON's offer or sale of unregistered securities.

697.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

698.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-FOURTH CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**N.M. Stat. Ann. § 58-13C-509**
**(TRON)**

699.    Plaintiffs reallege the allegations above.

700.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in New Mexico.

701.    The New Mexico Uniform Securities Act forbids the sale of unregistered securities. N.M. Stat. Ann. § 58-13C-301. Any person who sells a security in violation of Section 58-13C-301 is "liable to the purchaser," who may "maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages," which are "the difference between the price at which the security was sold and the value the security would have had at the time of the sale in the absence of the purchaser's conduct causing liability, and interest at the legal rate of interest from the date of the sale of the security, costs and reasonable attorney fees determined by the court." *Id.* § 58-13C-509.

702.    When issued, the TRX tokens were securities within the meaning of the New Mexico Uniform Securities Act. *Id.* § 58-13C-102(DD). On information and belief, TRON sold the TRX tokens to members of the Class in New Mexico. The TRX tokens were neither registered

146

under, nor subject to exemption from registration under the New Mexico Uniform Securities Act. *Id.* §§ 58-13C-201–202.

703.    On information and belief, the TRX tokens were sold in New Mexico, including without limitation through solicitations directed by TRON to New Mexico and received in New Mexico.

704.    Accordingly, TRON has violated the New Mexico Uniform Securities Act through TRON's sale of unregistered securities.

705.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

706.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-FIFTH CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.M. Stat. Ann. § 58-13C-509**
**(Sun and Chen)**

707.    Plaintiffs reallege the allegations above.

708.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in New Mexico.

709.    Every person who directly or indirectly controls an entity liable under the New Mexico Uniform Securities Act for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer or director of a person liable" and every "individual who is an employee of or associated with a person liable" is jointly and severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that

147

the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist." *Id.* § 58-13C-509(G).

710.    When issued, the TRX tokens were securities within the meaning of the New Mexico Uniform Securities Act. *Id.* § 58-13C-102(DD). On information and belief, TRON sold the TRX tokens to members of the Class in New Mexico. The TRX tokens were neither registered under, nor subject to exemption from registration under the New Mexico Uniform Securities Act.

711.    On information and belief, TRON sold the TRX tokens in New Mexico, including without limitation through solicitations directed by TRON to New Mexico and received in New Mexico.

712.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

713.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the New Mexico Uniform Securities Act through TRON's sale of unregistered securities.

714.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

715.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-SIXTH CAUSE OF ACTION**
**(NORTH CAROLINA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**N.C. Gen. Stat. Ann. § 78A-56(a)**
**(TRON)**

716.    Plaintiffs reallege the allegations above.

717.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in North Carolina.

718.    The North Carolina Securities Act forbids the offer or sale of unregistered securities. N.C. Gen. Stat. Ann. § 78A-24. Any person who offers or sells a security in violation of Section 24 is "is liable to the person purchasing the security" who "may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the purchaser no longer owns the security." *Id.* §§ 78A-56(a)(1)–(2).

719.    When issued, the TRX tokens were securities within the meaning of the North Carolina Securities Act. *Id.* §78A-2(11). On information and belief, TRON offered or sold the TRX tokens to members of the Class in North Carolina. The TRX tokens were neither registered under, nor subject to exemption from registration under the North Carolina Securities Act. *Id.* § 78A-24.

720.    On information and belief, the TRX tokens were offered or sold in North Carolina, including without limitation through solicitations directed by TRON to North Carolina and received in North Carolina.

721.    Accordingly, TRON has violated the North Carolina Securities Act through TRON's sale of unregistered securities.

722.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

723.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SIXTY-SEVENTH CAUSE OF ACTION**
**(NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**N.C. Gen. Stat. Ann. § 78A-56(c)**
**(Sun and Chen)**

724.    Plaintiffs reallege the allegations above.

725.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in North Carolina.

726.    Every person who directly or indirectly controls an entity liable under the North Carolina Securities Act for unlawfully offering or selling unregistered securities, as well as every "partner, officer, or director of the person," "every person occupying a similar status or performing similar functions," as well as "every dealer or salesman who materially aids in the sale" is jointly and severally liable with and to the same extent as the person, unless "able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* §§ 78A-56(c)(1).

727.    When issued, the TRX tokens were securities within the meaning of the North Carolina Securities Act. *Id.* §78A-2 (11). On information and belief, TRON offered and sold the TRX tokens to members of the Class in North Carolina. The TRX tokens were neither registered under, nor subject to exemption from registration under the North Carolina Securities Act.

728.    On information and belief, TRON offered and sold the TRX tokens in North Carolina, including without limitation through solicitations directed by TRON to North Carolina and received in North Carolina.

729.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

730.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the North Carolina Securities Act through TRON's offer or sale of unregistered securities.

731.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

732.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-EIGHTH CAUSE OF ACTION
### (NORTH DAKOTA STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**N.D.C.C. §10-04-17**
**(TRON)**

733.    Plaintiffs reallege the allegations above.

734.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in North Dakota.

735.     The North Dakota Securities Act forbids the offer or sale of unregistered securities. N.D.C.C. §10-04-04. Any person who unlawfully contracts to sell or sells an unregistered security is liable to "such purchaser" who "may sue either at law or in equity to recover the full amount paid," together with "all taxable court costs, interest as provided in this subsection, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender to the seller, in person or in open court, of the securities sold or of the contracts made, or for damages if the purchaser no longer owns the securities." *Id.* § 10-04-17(1).

736.     When issued, the TRX tokens were securities within the meaning of the North Dakota Securities Act. *Id.* §10-04-02 (19). On information and belief, TRON offered or sold the TRX tokens to members of the Class in North Dakota. The TRX tokens were neither registered under, nor subject to exemption from registration under the North Dakota Securities Act. *Id.* § 10-04-04.

737.     On information and belief, the TRX tokens were offered or sold in North Dakota, including without limitation through solicitations directed by TRON to North Dakota and received in North Dakota.

738.     Accordingly, TRON has violated the North Dakota Securities Act through TRON's sale of unregistered securities.

739.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

740.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SIXTY-NINTH CAUSE OF ACTION
### (NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### N.D.C.C. §10-04-17
### (Sun and Chen)

741.    Plaintiffs reallege the allegations above.

742.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in North Dakota.

743.    Every person who directly or indirectly controls a seller liable under the North Dakota Securities Act for unlawfully selling unregistered securities, as well as well as any person who "supervises, or serves as an officer, director, or managing partner of a person liable under this section," an individual "who is an employee of or associated with a person liable under this section and who materially aids the conduct giving rise to the liability," as well as every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless that person or individual "did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." N.D.C.C. §10-04-17(6).

744.    When issued, the TRX tokens were securities within the meaning of the North Dakota Securities Act. *Id.* §10-04-02 (19). On information and belief, TRON offered and sold the TRX tokens to members of the Class in North Dakota. The TRX tokens were neither registered under, nor subject to exemption from registration under the North Dakota Securities Act.

745.    On information and belief, TRON offered and sold the TRX tokens in North Dakota, including without limitation through solicitations directed by TRON to North Dakota and received in North Dakota.

746.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

747.     Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the North Dakota Securities Act through TRON's offer or sale of unregistered securities.

748.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

749.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTIETH CAUSE OF ACTION**
**(OHIO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ohio Rev. Code Ann. § 1707.43**
**(TRON)**

750.     Plaintiffs reallege the allegations above.

751.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Ohio.

752.     The Ohio Securities Act forbids the sale of unregistered securities. Ohio Rev. Code Ann. § 1707.09 (A)(1). Any person who sells a security in violation of Section 9(A)(1) is liable to the purchaser "in an action at law in any court of competent jurisdiction" for "the full amount paid by the purchaser and for all taxable costs." *Id.* § 1707.43(A).

753.    When issued, the TRX tokens were securities within the meaning of the Ohio Securities Act. *Id.* § 1707.01(B). On information and belief, TRON sold the TRX tokens to members of the Class in Ohio. The TRX tokens were neither registered under, nor subject to exemption from registration under the Ohio Securities Act. *Id.* § 1707.09.

754.    On information and belief, the TRX tokens were sold in Ohio, including without limitation through solicitations directed by TRON to Ohio and received in Ohio.

755.    Accordingly, TRON has violated the Ohio Securities Act through TRON's sale of unregistered securities.

756.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

757.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SEVENTY-FIRST CAUSE OF ACTION
### (OHIO STATE LAW – ADDITIONAL LIABILITY)
**Joint and Several Liability**
**Ohio Rev. Code Ann. § 1707.43**
**(Sun and Chen)**

758.    Plaintiffs reallege the allegations above.

759.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Ohio.

760.    Every person that has "participated in or aided the seller in any way in making" the sale or contract for sale, are "jointly and severally liable" to the purchaser. Ohio Rev. Code Ann. § 1707.43.

761.    When issued, the TRX tokens were securities within the meaning of the Ohio Securities Act. *Id.* § 1707.01(B). On information and belief, TRON sold the TRX tokens to

members of the Class in Ohio. The TRX tokens were neither registered under, nor subject to exemption from registration under the Ohio Securities Act, and TRON was not registered or exempt from registration as a dealer under Ohio law. *Id.* §§ 1707.09, 1707.14.

762.    On information and belief, TRON sold the TRX tokens in Ohio, including without limitation through solicitations directed by TRON to Ohio and received in Ohio.

763.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

764.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Ohio Securities Act through TRON's sale of unregistered securities.

765.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

766.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SECOND CAUSE OF ACTION**
**(OKLAHOMA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Okla. Sta. Ann. tit. 71§ 1-509(C)**
**(TRON)**

767.    Plaintiffs reallege the allegations above.

768.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Oklahoma.

769. The Oklahoma Securities Act forbids the offer or sale of unregistered securities. Okla. Sta. Ann. tit. 71 § 1-301. Any person who offers or sells a security in violation of Section 301 is liable to the "purchaser may maintain an action at law or in equity to recover the consideration paid for the security, and interest at the legal rate of interest per year from the date of the purchase, less the amount of any income received on the security, plus costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages" "*Id.* §1-509 (B)(1).

770. When issued, the TRX tokens were securities within the meaning of the Oklahoma Securities Act. *Id.* §1-102 (32). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Oklahoma. The TRX tokens were neither registered under, nor subject to exemption from registration under the Oklahoma Securities Act. *Id.* § 1-301.

771. On information and belief, the TRX tokens were offered or sold in Oklahoma, including without limitation through solicitations directed by TRON to Oklahoma and received in Oklahoma.

772. Accordingly, TRON has violated the Oklahoma Securities Act through TRON's sale of unregistered securities.

773. Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

774. Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-THIRD CAUSE OF ACTION**
**(OKLAHOMA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Okla. Sta. Ann. tit. 71§ 1-509 (G)**
**(Sun and Chen)**

775.   Plaintiffs reallege the allegations above.

776.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Oklahoma.

777.   Every person who directly or indirectly controls an entity liable under the Oklahoma Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director" of such seller, "including an individual having similar status or performing similar functions," every employee of or associated with such a seller who materially aids in the sale" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Okla. Sta. Ann. tit. 71§ 1-509(G).

778.   When issued, the TRX tokens were securities within the meaning of the Oklahoma Securities Act. *Id.* §1-102. On information and belief, TRON offered and sold the TRX tokens to members of the Class in Oklahoma. The TRX tokens were neither registered under, nor subject to exemption from registration under the Oklahoma Securities Act.

779.   On information and belief, TRON offered and sold the TRX tokens in Oklahoma, including without limitation through solicitations directed by TRON to Oklahoma and received in Oklahoma.

780.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

158

management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

781.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Oklahoma Securities Act through TRON's offer or sale of unregistered securities.

782.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

783.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-FOURTH CAUSE OF ACTION**
**(OREGON STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**O.R.S. § 59:115**
**(TRON)**

784.    Plaintiffs reallege the allegations above.

785.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Oregon.

786.    The Oregon Securities Act forbids the offer or sale of unregistered securities. O.R.S. § 59:055. Any person who offers or sells a security in violation of Section 55 "is liable to the purchaser," who may recover "the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgements for the payment of money or the rate provided in the security if the security in an interest bearing obligation, less any amount received on the security, or if the purchaser no longer owns the security, damages." *Id.* §§ 59.115 (2)(a)-(b).

787.     When issued, the TRX tokens were securities within the meaning of the Oregon

Securities Act. *Id.* §59.015 (19). On information and belief, TRON offered or sold the TRX tokens

to members of the Class in Oregon. The TRX tokens were neither registered under, nor subject to

exemption from registration under the Oregon Securities Act. *Id.* § 59.055 .

788.     On information and belief, the TRX tokens were offered or sold in Oregon,

including without limitation through solicitations directed by TRON to Oregon and received in

Oregon.

789.     Accordingly, TRON has violated the Oregon Securities Act through TRON's sale

of unregistered securities.

790.     Class members who own the TRX tokens have made or will make any necessary

tender and seek all remedies available at law or in equity for any TRX tokens purchased in the

Class Period, including any applicable costs, attorneys' fees, and interest.

791.     Class members who no longer own the TRX tokens seek damages for any TRX

tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-FIFTH CAUSE OF ACTION**
**(OREGON STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**O.R.S. § 59:115 (3)**
**(Sun and Chen)**

792.     Plaintiffs reallege the allegations above.

793.     This Cause of Action is brought on behalf of Class members to whom TRX tokens

were offered or sold in Oregon.

794.     Every person who directly or indirectly controls an entity liable under the Oregon

Securities Act for unlawfully selling unregistered securities, as well as every "partner, limited

liability company manager, including a member who is a manager, officer or director of such

seller", "every person occupying a similar status or performing similar functions," and "every

person who participated or materially aids in the sale" is liable for unlawfully selling unregistered securities, unless that nonseller "sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care could not have known, of the existence of facts on which the liability is based." O.R.S. § 59:115 (3).

795.    When issued, the TRX tokens were securities within the meaning of the Oregon Securities Act. *Id.* § O.R.S.§ 59.015 (19). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Oregon. The TRX tokens were neither registered under, nor subject to exemption from registration under the Oregon Securities Act.

796.    On information and belief, TRON offered and sold the TRX tokens in Oregon, including without limitation through solicitations directed by TRON to Oregon and received in Oregon.

797.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

798.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Oregon Securities Act through TRON's offer or sale of unregistered securities.

799.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

800.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SIXTH CAUSE OF ACTION**
**(PENNSYLVANIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**70 Pa. Stat. Ann. § 1-502**
**(TRON)**

801.    Plaintiffs reallege the allegations above.

802.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Pennsylvania.

803.    The Pennsylvania Securities Act forbids the offer or sale of unregistered securities. 70 Pa. Stat. Ann. § 1-201. Any person who offers or sells a security in violation of Section 1-201 is "liable to the person purchasing the security offered or sold in violation of section 201 from him who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 1-502.

804.    When issued, the TRX tokens were securities within the meaning of the Pennsylvania Securities Act. *Id.* § 1-102(t). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Pennsylvania. The TRX tokens were neither registered under, nor subject to exemption from registration under the Pennsylvania Securities Act. *Id.* § 1-202.

805.    On information and belief, the TRX tokens were offered or sold in Pennsylvania, including without limitation through solicitations directed by TRON to Pennsylvania and received in Pennsylvania.

162

806.    Accordingly, TRON has violated the Pennsylvania Securities Act through TRON's

sale of unregistered securities.

807.    Class members who own the TRX tokens have made or will make any necessary

tender and seek all remedies available at law or in equity for any TRX tokens purchased in the

Class Period, including any applicable costs, attorneys' fees, and interest.

808.    Class members who no longer own the TRX tokens seek damages for any TRX

tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-SEVENTH CAUSE OF ACTION**
**(PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**70 Pa. Stat. Ann. § 1-503**
**(Sun and Chen)**

809.    Plaintiffs reallege the allegations above.

810.    This Cause of Action is brought on behalf of Class members to whom TRX tokens

were offered or sold in Pennsylvania.

811.    Every affiliate of an entity liable under the Pennsylvania Securities Act for

unlawfully selling unregistered securities, as well as every "partner, principal executive officer or

director of such person" and "every person occupying a similar status or performing similar

functions" is jointly and severally liable with and to the same extent as the seller, unless the non-

seller sustains the burden of proof that he did not know, and in the exercise of reasonable care

could not have known, of the existence of the facts by reason of which liability is alleged to exist.

70 Pa. Stat. Ann. § 1-503(a).

812.    When issued, the TRX tokens were securities within the meaning of the

Pennsylvania Securities Act. *Id.* § 1-102. On information and belief, TRON offered and sold the

TRX tokens to members of the Class in Pennsylvania. The TRX tokens were neither registered

under, nor subject to exemption from registration under the Pennsylvania Securities Act, *id.* § 1-202.

813.    On information and belief, TRON offered and sold the TRX tokens in Pennsylvania, including without limitation through solicitations directed by TRON to Pennsylvania and received in Pennsylvania.

814.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

815.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Pennsylvania Securities Act through TRON's offer or sale of unregistered securities.

816.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

817.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### SEVENTY-EIGHTH CAUSE OF ACTION
### (PUERTO RICO STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**10 L.P.R.A. § 890**
**(TRON)**

818.    Plaintiffs reallege the allegations above.

819.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Puerto Rico.

820.     The Puerto Rico Securities Act forbids the offer or sale of unregistered securities. 10 L.P.R.A. § 871. Any person who offers or sells a security in violation of Section 871 is "liable to the person who buys the security, who may file suit to recover the price paid for the security, in addition to the interest at the rate applicable to judicial awards . . . starting on the date in which the payment, costs and reasonable Attorney's fees were made less the sum of any income received on, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 890.

821.     When issued, the TRX tokens were securities within the meaning of the Puerto Rico Securities Act. *Id.* § 881. On information and belief, TRON offered or sold the TRX tokens to members of the Class in Puerto Rico. The TRX tokens were neither registered under, nor subject to exemption from registration under the Puerto Rico Securities Act. *Id.* § 882.

822.     On information and belief, the TRX tokens were offered or sold in Puerto Rico, including without limitation through solicitations directed by TRON to Puerto Rico and received in Puerto Rico.

823.     Accordingly, TRON has violated the Puerto Rico Securities Act through TRON's sale of unregistered securities.

824.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

825.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**SEVENTY-NINTH CAUSE OF ACTION**
**(PUERTO RICO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**10 L.P.R.A. § 890**
**(Sun and Chen)**

826.     Plaintiffs reallege the allegations above.

827.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Puerto Rico.

828.     Every person who directly or indirectly controls an entity liable under the Puerto Rico Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller," and "every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. 10 L.P.R.A. § 890(b).

829.     When issued, the TRX tokens were securities within the meaning of the Puerto Rico Securities Act. *Id.* § 881. On information and belief, TRON offered and sold the TRX tokens to members of the Class in Puerto Rico. The TRX tokens were neither registered under, nor subject to exemption from registration under the Puerto Rico Securities Act.

830.     On information and belief, TRON offered and sold the TRX tokens in Puerto Rico, including without limitation through solicitations directed by TRON to Puerto Rico and received in Puerto Rico.

831.     Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the

166

wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

832.   Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Puerto Rico Securities Act through TRON's offer or sale of unregistered securities.

833.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

834.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTIETH CAUSE OF ACTION**
**(RHODE ISLAND STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**7 R.I. Gen. Laws Ann. § 7-11-605**
**(TRON)**

835.   Plaintiffs reallege the allegations above.

836.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Rhode Island.

837.   The Rhode Island Securities Act forbids the offer or sale of unregistered securities. 7 R.I. Gen. Laws Ann. § 7-11-301. Any person who offers or sells a security in violation of Section 7-11-301 is "liable to the purchaser of the security from that person" and "[u]pon tender of the security, the purchaser may recover the consideration paid for the security and interest at the legal rate of this state from the date of payment, costs, and reasonable attorney's fees as determined by the court, less the amount of income received on the security," or if the "purchaser no longer owns the security, the purchaser may recover damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal

167

rate of this state from the date of disposition of the security, costs and reasonable attorney's fees as determined by the court." *Id.* § 7-11-605.

838.    When issued, the TRX tokens were securities within the meaning of the Rhode Island Securities Act. *Id.* § 7-11-101(22). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Rhode Island. The TRX tokens were neither registered under, nor subject to exemption from registration under the Rhode Island Securities Act. *Id.* § 7-11-401.

839.    On information and belief, the TRX tokens were offered or sold in Rhode Island, including without limitation through solicitations directed by TRON to Rhode Island and received in Rhode Island.

840.    Accordingly, TRON has violated the Rhode Island Securities Act through TRON's sale of unregistered securities.

841.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

842.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTY-FIRST CAUSE OF ACTION
### (RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### R.I. Gen. Laws Ann. § 7-11-605(d)
### (Sun and Chen)

843.    Plaintiffs reallege the allegations above.

844.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Rhode Island.

845.    Every person who directly or indirectly controls an entity liable under the Rhode Island Securities Act for unlawfully selling unregistered securities, as well as "a partner, officer, or director of the person liable" and "a person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. R.I. Gen. Laws Ann. § 7-11-605(d).

846.    When issued, the TRX tokens were securities within the meaning of the Rhode Island Securities Act. *Id.* § 7-11-101(22). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Rhode Island. The TRX tokens were neither registered under, nor subject to exemption from registration under the Rhode Island Securities Act, *id.* § 7-11-401.

847.    On information and belief, TRON offered and sold the TRX tokens in Rhode Island, including without limitation through solicitations directed by TRON to Rhode Island and received in Rhode Island.

848.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

849.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Rhode Island Securities Act through TRON's offer or sale of unregistered securities.

850.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

851.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-SECOND CAUSE OF ACTION**
**(SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**S.C. Code Ann. § 35-1-509**
**(TRON)**

852.    Plaintiffs reallege the allegations above.

853.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in South Carolina.

854.    The South Carolina Securities Act forbids the offer or sale of unregistered securities. S.C. Code Ann. § 35-1-301. Any person who sells a security in violation of Section 35-1-301 is liable to the purchaser who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court" or for "actual damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court." *Id.* § 35-1-509(b).

855.    When issued, the TRX tokens were securities within the meaning of the South Carolina Securities Act. *Id.* § 35-1-102(29). On information and belief, TRON sold the TRX tokens to members of the Class in South Carolina. The TRX tokens were neither registered under, nor subject to exemption from registration under the South Carolina Securities Act. *Id.* § 35-1-201.

856.    On information and belief, the TRX tokens were sold in South Carolina, including without limitation through solicitations directed by TRON to South Carolina and received in South Carolina.

857.    Accordingly, TRON has violated the South Carolina Securities Act through TRON's sale of unregistered securities.

858.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

859.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-THIRD CAUSE OF ACTION**
**(SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**S.C. Code Ann. § 31-1-509**
**(Sun and Chen)**

860.    Plaintiffs reallege the allegations above.

861.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in South Carolina.

862.    Every person who directly or indirectly controls an entity liable under the South Carolina Securities Act for unlawfully selling unregistered securities, as well as an individual "who is a managing partner, executive officer, or director of a person liable, . . . including an individual having a similar status or performing similar functions" is jointly and severally liable with and to

the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. S.C. Code. Ann. § 31-1-509(g).

863.   When issued, the TRX tokens were securities within the meaning of the South Carolina Securities Act. *Id.* § 35-1-102(29). On information and belief, TRON sold the TRX tokens to members of the Class in South Carolina. The TRX tokens were neither registered under, nor subject to exemption from registration under the South Carolina Securities Act, *id.* § 35-1-201.

864.   On information and belief, TRON sold the TRX tokens in South Carolina, including without limitation through solicitations directed by TRON to South Carolina and received in South Carolina.

865.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

866.   Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the South Carolina Securities Act through TRON's sale of unregistered securities.

867.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

868.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**EIGHTY-FOURTH CAUSE OF ACTION**
**(SOUTH DAKOTA STATE LAW – PRIMARY LIABILITY)**
**Sale of Unregistered Securities**
**S.D. Codified Laws § 47-31B-509(b)**
**(TRON)**

869.    Plaintiffs reallege the allegations above.

870.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in South Dakota.

871.    The South Dakota Securities Act forbids the sale of unregistered securities. S.D. Codified Laws § 47-31B-301. Any person who sells a security in violation of Section 47-31B-301 is liable for "the consideration paid for the security, less the amount of any income received on the security, and interest at Category D, § 54-3-16 from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 47-31B-509(b).

872.    When issued, the TRX tokens were securities within the meaning of the South Dakota Securities Act. *Id.* § 47-31B-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in South Dakota. The TRX tokens were neither registered under, nor subject to exemption from registration under the South Dakota Securities Act. *Id.* §§ 47-31B-201-47-31B-203.

873.    On information and belief, the TRX tokens were sold in South Dakota, including without limitation through solicitations directed by TRON to South Dakota and received in South Dakota.

874.    Accordingly, TRON has violated the South Dakota Securities Act through TRON's sale of unregistered securities.

875.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

876.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTY-FIFTH CAUSE OF ACTION
## (SOUTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### S.D. Codified Laws § 47-31B-509
### (Sun and Chen)

877.    Plaintiffs reallege the allegations above.

878.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in South Dakota.

879.    Every person who directly or indirectly controls an entity liable under the South Dakota Securities Act for unlawfully selling unregistered securities, as well as an "individual who is a managing partner, executive officer, or director . . . employee of or associated with" an entity so liable is "liable jointly and severally with and to the same extent as" such a person. S.D. Codified Laws § 47-31B-509.

880.    When issued, the TRX tokens were securities within the meaning of the South Dakota Securities Act. *Id.* § 47-31B-102(28). On information and belief, TRON sold the TRX tokens to members of the Class in South Dakota. The TRX tokens were not registered under, nor subject to exemption from registration under the South Dakota Securities Act. *Id.* §§ 47-31B-301, 47-31B-401(a).

881.    On information and belief, TRON sold the TRX tokens in South Dakota, including without limitation through solicitations directed by TRON to South Dakota and received in South Dakota.

882.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

883.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the South Dakota Securities Act through TRON's sale of unregistered securities.

884.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

885.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### EIGHTY-SIXTH CAUSE OF ACTION
### (TENNESSEE STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**Tenn. Code Ann. § 48-1-122**
**(TRON)**

886.    Plaintiffs reallege the allegations above.

887.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Tennessee.

888.    The Tennessee Securities Act forbids the sale of unregistered securities. Tenn. Code Ann. § 48-1-104(a). Any person who sells a security in violation of Section 104(a) is "liable to the person purchasing the security from the seller to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income

175

received on the security, upon the tender of the security, or, if the purchaser no longer owns the security, the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition." *Id.* § 48-1-122(a).

889.    When issued, the TRX tokens were securities within the meaning of the Tennessee Securities Act. *Id.* § 48-1-102(20). On information and belief, TRON sold the TRX tokens to members of the Class in Tennessee. The TRX tokens were neither registered under, nor subject to exemption from registration under the Tennessee Securities Act. *Id.* § 48-1-103.

890.    On information and belief, the TRX tokens were sold in Tennessee, including without limitation through solicitations directed by TRON to Tennessee and received in Tennessee.

891.    Accordingly, TRON has violated the Tennessee Securities Act through TRON's sale of unregistered securities.

892.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

893.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTY-SEVENTH CAUSE OF ACTION
## (TENNESSEE STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability
### Tenn. Code Ann. § 48-1-122(g)
### (Sun and Chen)

894.    Plaintiffs reallege the allegations above.

895.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Tennessee.

896.    Every person who directly or indirectly controls an entity liable under the Tennessee Securities Act for unlawfully selling unregistered securities, as well as "every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation" is "liable jointly and severally with and to the same extent as such person, unless the person who would be liable under this subsection (g) proves that the person who would be liable did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 48-1-122(g).

897.    When issued, the TRX tokens were securities within the meaning of the Tennessee Securities Act. *Id.* § 48-1-102(20). On information and belief, TRON sold the TRX tokens to members of the Class in Tennessee. The TRX tokens were neither registered under, nor subject to exemption from registration under the Tennessee Securities Act.

898.    On information and belief, TRON sold the TRX tokens in Tennessee, including without limitation through solicitations directed by TRON to Tennessee and received in Tennessee.

899.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

900.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Tennessee Securities Act through TRON's sale of unregistered securities.

901.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

902.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### EIGHTY-EIGHTH CAUSE OF ACTION
### (TEXAS STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**Texas Civ. St. Art. § 581-33 A**
**(TRON)**

903.    Plaintiffs reallege the allegations above.

904.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom TRX tokens were offered or sold in Texas.

905.    The Texas Blue Sky Law – Securities forbids the offer or sale of unregistered securities. Texas Civ. St. Art. § 581-7. Any person who offers or sells a security in violation of Section 581-7 is "is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security." *Id.* § 581-33 A. Damages are defined as "(a) the consideration the buyer paid for the security plus interest thereon at the legal rate from the date of payment by the buyer, less (b) the greater of: (i) the value of the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security; or (ii) the actual consideration received for the security at the time the buyer disposed of it plus the amount of any income the buyer received on the security." *Id.* § 581-33 D(3).

906.    When issued, the TRX tokens were securities within the meaning of the Texas Blue Sky Law – Securities. *Id.* § 581-4 A. TRON offered or sold the TRX tokens to Plaintiffs and members of the Class in Texas. The TRX tokens were neither registered under, nor subject to exemption from registration under the Texas Blue Sky Law – Securities. *Id.* § 581-6.

907.    The TRX tokens were offered or sold in Texas, including without limitation through solicitations directed by TRON to Texas and received in Texas.

908.    Accordingly, TRON has violated the Texas Blue Sky Law – Securities through TRON's sale of unregistered securities.

909.    Plaintiffs and Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

910.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## EIGHTY-NINTH CAUSE OF ACTION
### (TEXAS STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Texas Civ. St. Art. § 581-33 F**
**(Sun and Chen)**

911.    Plaintiffs reallege the allegations above.

912.    This Cause of Action is brought on behalf of Plaintiffs and Class members to whom TRX tokens were offered or sold in Texas.

913.    Every person who directly or indirectly controls an entity liable under the Texas Blue Sky Law – Securities for unlawfully selling unregistered securities is liable jointly and severally with and to the same extent as the seller, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have

known, of the existence of the facts by reason of which the liability is alleged to exist. Texas Civ. St. Art. § 581-33 F.

914.    When issued, the TRX tokens were securities within the meaning of the Texas Blue Sky Law – Securities. *Id.* § 581-4 A. TRON offered and sold the TRX tokens to Plaintiffs and members of the Class in Texas. *Id.* §§ 581-4 C, 581-4 D. The TRX tokens were neither registered under, nor subject to exemption from registration under the Texas Blue Sky Law – Securities.

915.    TRON offered and sold the TRX tokens in Texas, including without limitation through solicitations directed by TRON to Texas and received in Texas.

916.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered as described herein.

917.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Texas Blue Sky Law – Securities through TRON's offer or sale of unregistered securities.

918.    Plaintiffs and class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

919.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## NINETIETH CAUSE OF ACTION
## (UTAH STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Utah Code § 61-1-22
### (TRON)

920.    Plaintiffs reallege the allegations above.

921.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Utah.

922.    The Utah Securities Act forbids the offer or sale of unregistered securities. Utah Code Ann. § 61-1-7. Any person who offers or sells a security in violation of Section 61-1-7 is liable to the buyer for "the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney fees, less the amount of income received on the security, upon the tender of the security or for damages if the person no longer owns the security." *Id.* § 61-1-22(b).

923.    When issued, the TRX tokens were securities within the meaning of the Utah Securities Act. *Id.* § 61-1-13(ee). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Utah. The TRX tokens were neither registered under, nor subject to exemption from registration under the Utah Securities Act. *Id.* § 61-14.

924.    On information and belief, the TRX tokens were offered or sold in Utah, including without limitation through solicitations directed by TRON to Utah and received in Utah.

925.    Accordingly, TRON has violated the Utah Securities Act through TRON's sale of unregistered securities.

926.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

927.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### NINETY-FIRST CAUSE OF ACTION
### (UTAH STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Utah Code Ann. § 61-1-22.**
**(Sun and Chen)**

928.   Plaintiffs reallege the allegations above.

929.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Utah.

930.   Every person who directly or indirectly controls an entity liable under the Utah Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase" are liable jointly and severally "with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that the nonseller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Utah Code Ann. § 61-1-22.

931.   When issued, the TRX tokens were securities within the meaning of the Utah Securities Act. *Id.* § 61-1-13(ee). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Utah. The TRX tokens were neither registered under, nor subject to exemption from registration under the Utah Securities Act.

932.   On information and belief, TRON offered and sold the TRX tokens in Utah, including without limitation through solicitations directed by TRON to Utah and received in Utah.

933.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

934.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Utah Securities Act through TRON's offer or sale of unregistered securities.

935.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

936.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-SECOND CAUSE OF ACTION**
**(VERMONT STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Vt. Stat. Ann. tit. 9, § 5509**
**(TRON)**

937.    Plaintiffs reallege the allegations above.

938.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Vermont.

939.    The Vermont Securities Act forbids the offer or sale of unregistered securities. Vt. Stat. Ann. tit. 9, § 5309. Any person who offers or sells a security in violation of Section 5309 is liable for "the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable

attorney's fees determined by the court, upon the tender of the security, or for actual damages." *Id.* § 5509.

940.     When issued, the TRX tokens were securities within the meaning of the Vermont Securities Act. *Id.* § 5102(28). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Vermont. The TRX tokens were neither registered under, nor subject to exemption from registration under the Vermont Securities Act. *Id.* §§ 5201-5203.

941.     On information and belief, the TRX tokens were offered or sold in Vermont, including without limitation through solicitations directed by TRON to Vermont and received in Vermont.

942.     Accordingly, TRON has violated the Vermont Securities Act through TRON's sale of unregistered securities.

943.     Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

944.     Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-THIRD CAUSE OF ACTION**
**(VERMONT STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Vt. Stat. Ann. tit. 9, § 5509**
**(Sun and Chen)**

945.     Plaintiffs reallege the allegations above.

946.     This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Vermont.

947.     Every person who directly or indirectly controls an entity liable under the Vermont Securities Act for unlawfully selling unregistered securities, as well as "an individual who is a

managing partner, executive officer, or director of a person liable under subsections (b) through (f) of this section, including an individual having a similar status or performing similar functions," is jointly and severally liable with the entity "unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Vt. Stat. Ann. tit. 9, § 5509(g).

948.    When issued, the TRX tokens were securities within the meaning of the Vermont Securities Act. *Id.* § 5102(28). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Vermont. The TRX tokens were neither registered under, nor subject to exemption from registration under the Vermont Securities Act.

949.    On information and belief, TRON offered and sold the TRX tokens in Vermont, including without limitation through solicitations directed by TRON to Vermont and received in Vermont.

950.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

951.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Vermont Securities Act through TRON's offer or sale of unregistered securities.

952.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

953.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### NINETY-FOURTH CAUSE OF ACTION
### (VIRGINIA STATE LAW – PRIMARY LIABILITY)
**Unregistered Sale of Securities**
**Va. Code Ann. § 13.1-522 A**
**(TRON)**

954.    Plaintiffs reallege the allegations above.

955.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Virginia.

956.    The Virginia Securities Act forbids the offer or sale of unregistered securities. Va. Code Ann. § 13.1-507. Any person who sells a security in violation of Section 13.1-507 "shall be liable to the person purchasing such security from him who may sue either at law or in equity to recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security." *Id.* § 13.1-522 A.

957.    When issued, the TRX tokens were securities within the meaning of the Virginia Securities Act. *Id.* § 13.1-501 A. On information and belief, TRON sold the TRX tokens to members of the Class in Virginia. The TRX tokens were neither registered under, nor subject to exemption from registration under the Virginia Securities Act. *Id.* § 13.1-514 A.

958.    On information and belief, the TRX tokens were sold in Virginia, including without limitation through solicitations directed by TRON to Virginia and received in Virginia.

186

959.    Accordingly, TRON has violated the Virginia Securities Act through TRON's sale of unregistered securities.

960.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

961.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-FIFTH CAUSE OF ACTION**
**(VIRGINIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**Va. Code Ann. § 13.1-522 C**
**(Sun and Chen)**

962.    Plaintiffs reallege the allegations above.

963.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Virginia.

964.    Every person who directly or indirectly controls an entity liable under the Virginia Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist. Va. Code Ann. § 13.1-522 C.

965.    When issued, the TRX tokens were securities within the meaning of the Virginia Securities Act. *Id.* § 13.1-501 A. On information and belief, TRON sold the TRX tokens to members of the Class in Virginia. The TRX tokens were not registered under, nor subject to exemption from registration under the Virginia Securities Act.

966.    On information and belief, TRON sold the TRX tokens in Virginia, including without limitation through solicitations directed by TRON to Virginia and received in Virginia.

967.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

968.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Virginia Securities Act through TRON's sale of unregistered securities.

969.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

970.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### NINETY-SIXTH CAUSE OF ACTION
### (WASHINGTON STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**Wash. Rev. Code § 21.20.430(1)**
**(TRON)**

971.    Plaintiffs reallege the allegations above.

972.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Washington.

973.    The Securities Act of Washington forbids the offer or sale of unregistered securities. Wash. Rev. Code § 21.20.140. Any person who offers or sells a security in violation of Section 21.20.140 is "liable to the person buying the security from him or her, who may sue either

at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security. " *Id.* § 21.20.430(1).

974.    When issued, the TRX tokens were securities within the meaning of the Securities Act of Washington. *Id.* § 21.20.005(17). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Washington. The TRX tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Washington. *Id.* § 21.20.310.

975.    On information and belief, the TRX tokens were offered or sold in Washington, including without limitation through solicitations directed by TRON to Washington and received in Washington.

976.    Accordingly, TRON has violated the Securities Act of Washington through TRON's sale of unregistered securities.

977.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

978.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### NINETY-SEVENTH CAUSE OF ACTION
### (WASHINGTON STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Wash. Rev. Code Ann. § 21.20.430**
**(Sun and Chen)**

979.    Plaintiffs reallege the allegations above.

980.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Washington.

981.    Every person who directly or indirectly controls an entity liable under the Securities Act of Washington for unlawfully selling unregistered securities, as well as "every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 21.20.430(3).

982.    When issued, the TRX tokens were securities within the meaning of the Securities act of Washington. *Id.* § 21.20.005(17). On information and belief, TRON offered and sold the TRX tokens to members of the Class in Washington. The TRX tokens were not registered under, nor subject to exemption from registration under the Securities act of Washington.

983.    On information and belief, TRON offered and sold the TRX tokens in Washington, including without limitation through solicitations directed by TRON to Washington and received in Washington.

984.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

985.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Securities Act of Washington through TRON's offer or sale of unregistered securities.

986.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

987.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**NINETY-EIGHTH <u>CAUSE OF ACTION</u>**
**<u>(WISCONSIN STATE LAW – PRIMARY LIABILITY)</u>**
**Unregistered Sale of Securities**
**Wis. Stat. § 551.509**
**(TRON)**

988.    Plaintiffs reallege the allegations above.

989.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in the State of Wisconsin.

990.    The Wisconsin Uniform Securities Law forbids the sale of unregistered securities. Wis. Stat. § 551.301. Any person who sells a security in violation of Section 301 is liable to the purchaser for the "consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate under s. 138.04 from the date of the purchase, costs, and reasonable attorney fees determined by the court, upon the tender of the security, or for actual damages as provided in par. (c)." *Id.* § 551.509(2)(a). Actual damages are defined as "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate under s. 138.04 from the date of the purchase, costs, and reasonable attorney fees determined by the court." *Id.* § 551.509(2)(c).

991.    When issued, the TRX tokens were securities within the meaning of the Wisconsin Uniform Securities Law. *Id.* § 551.102(28). TRON sold the TRX tokens to members of the Class in the State of Wisconsin. The TRX tokens were neither registered under, nor subject to exemption from registration under the Wisconsin Uniform Securities Law. *Id.* § 551.301.

992.    On information and belief, the TRX tokens were offered or sold in the State of Wisconsin, including without limitation through solicitations directed by TRON to the State of Wisconsin and received in the State of Wisconsin.

993.    Accordingly, TRON has violated the Wisconsin Uniform Securities Law through TRON's sale of unregistered securities.

994.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

995.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## NINETY-NINTH CAUSE OF ACTION
### (WISCONSIN STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Wis. Stat. Ann. § 551.509**
**(Sun and Chen)**

996.    Plaintiffs reallege the allegations above.

997.    This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in the State of Wisconsin.

998.    Every person who directly or indirectly controls an entity liable under the Wisconsin Uniform Securities Law for unlawfully selling unregistered securities , as well as "managing partner, executive officer, or director of a person liable under subs. (2) to (6), including an individual having a similar status or performing similar functions," is jointly and severally liable

"unless the individual sustains the burden of proof that the individual did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist." Wis. Stat. Ann. § 551.509(7)(d).

999.    When issued, the TRX tokens were securities within the meaning of the Wisconsin Uniform Securities Law. *Id.* § 551.102(28). TRON sold the TRX tokens to members of the Class in the State of Wisconsin. The TRX tokens were neither registered under, nor subject to exemption from registration under the Wisconsin Uniform Securities Law, and TRON was not registered or exempt from registration under Wisconsin law. *Id.* §§ 551.301, 551.401(1), 551.402(1).

1000.    TRON sold the TRX tokens in the State of Wisconsin, including without limitation through solicitations directed by TRON to the State of Wisconsin and received in the State of Wisconsin.

1001.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered as described herein.

1002.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Wisconsin Uniform Securities Law through TRON's sale of unregistered securities.

1003.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1004.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### ONE HUNDREDTH CAUSE OF ACTION
### (WEST VIRGINIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer or Sale of Securities
### W. Va. Code Ann. § 32-4-410(a)
### (TRON)

1005.   Plaintiffs reallege the allegations above.

1006.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in West Virginia.

1007.   The West Virginia Uniform Securities Act forbids the offer or sale of unregistered securities. W. Va. Code Ann. § 32-3-301. Any person who offers or sells a security in violation of Section 32-3-301 is "liable to the person buying the security from him, who may assert a claim in a civil action to recover the consideration paid for the security, together with interest at nine percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at nine percent per year from the date of disposition." *Id.* § 32-4-410(a).

1008.   When issued, the TRX tokens were securities within the meaning of the West Virginia Uniform Securities Act. *Id.* § 32-4-401(n). On information and belief, TRON offered or sold the TRX tokens to members of the Class in West Virginia. The TRX tokens were neither registered under, nor subject to exemption from registration under the West Virginia Uniform Securities Act. *Id.* § 32-4-402.

1009.   On information and belief, the TRX tokens were offered or sold in West Virginia, including without limitation through solicitations directed by TRON to West Virginia and received in West Virginia.

1010.   Accordingly, TRON has violated the West Virginia Uniform Securities Act through TRON's sale of unregistered securities.

1011.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1012.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ONE HUNDRED AND FIRST CAUSE OF ACTION**
**(WEST VIRGINIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability**
**W. Va. Code Ann. § 32-4-410**
**(Sun and Chen)**

1013.   Plaintiffs reallege the allegations above.

1014.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in West Virginia.

1015.   Every person who directly or indirectly controls an entity liable under the West Virginia Uniform Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." *Id.* § 32-4-410(b).

1016.   When issued, the TRX tokens were securities within the meaning of the West Virginia Uniform Securities Act. *Id.* § 32-4-401(n). On information and belief, TRON offered and sold the TRX tokens to members of the Class in West Virginia. The TRX tokens were not registered under, nor subject to exemption from registration under the West Virginia Uniform Securities Act.

1017.   On information and belief, TRON offered and sold the TRX tokens in West Virginia, including without limitation through solicitations directed by TRON to West Virginia and received in West Virginia.

1018.   Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

1019.   Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the West Virginia Uniform Securities Act through TRON's offer or sale of unregistered securities.

1020.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1021.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

**ONE HUNDRED AND SECOND CAUSE OF ACTION**
**(WYOMING STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Wyo. Stat. Ann. § 17-4-509(b)**
**(TRON)**

1022.   Plaintiffs reallege the allegations above.

1023.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were sold in Wyoming.

1024.   The Wyoming Uniform Securities Act forbids the offer or sale of unregistered securities. Wyo. Stat. Ann. § 17-4-301. Any person who sells a security in violation of Section 17-4-301 is liable to the purchaser, who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at six percent (6%) per year from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, upon the tender of the security." *Id.* § 17-4-509(b)(i). If the purchaser no longer owns the security, then he may seek actual damages, which are "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at six percent (6%) per year from the date of the purchase, costs and reasonable attorneys' fees determined by the court." *Id.* § 17-4-509(b)(iii).

1025.   When issued, the TRX tokens were securities within the meaning of the Wyoming Uniform Securities Act. *Id.* § 17-4-102(a)(xxviii). On information and belief, TRON offered or sold the TRX tokens to members of the Class in Wyoming. The TRX tokens were neither registered under, nor subject to exemption from registration under the Wyoming Uniform Securities Act. *Id.* § 17-4-201 - 204.

1026.   On information and belief, the TRX tokens were offered or sold in Wyoming, including without limitation through solicitations directed by TRON to Wyoming and received in Wyoming.

197

1027.   Accordingly, TRON has violated the Wyoming Uniform Securities Act through TRON's sale of unregistered securities.

1028.   Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1029.   Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

### ONE HUNDRED AND THIRD CAUSE OF ACTION
### (WYOMING STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability**
**Wyo. Stat. Ann. § 17-4-509(g)**
**(Sun and Chen)**

1030.   Plaintiffs reallege the allegations above.

1031.   This Cause of Action is brought on behalf of Class members to whom TRX tokens were offered or sold in Wyoming.

1032.   Every person who directly or indirectly controls a person liable under the Wyoming Uniform Securities Act for unlawfully selling unregistered securities, as well as every managing partner, executive officer, or director of such a seller, including every person having a similar status or performing similar functions . . . is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist. *Id.* §§ 17-4-509(g)(i) – (iv).

1033.   When issued, the TRX tokens were securities within the meaning of the Wyoming Uniform Securities Act. *Id.* § 17-4-102(a)(xxviii). On information and belief, TRON sold the TRX tokens to members of the Class in Wyoming. The TRX tokens were neither registered under, nor subject to exemption from registration under the Wyoming Uniform Securities Act.

1034.    On information and belief, TRON sold the TRX tokens in Wyoming, including without limitation through solicitations directed by TRON to Wyoming and received in Wyoming.

1035.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of TRON and its employees, and to cause TRON to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

1036.    Accordingly, the Individual Defendants, who directly or indirectly controlled TRON, have violated the Wyoming Uniform Securities Act through TRON's sale of unregistered securities.

1037.    Class members who own the TRX tokens have made or will make any necessary tender and seek all remedies available at law or in equity for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees, and interest.

1038.    Class members who no longer own the TRX tokens seek damages for any TRX tokens purchased in the Class Period, including any applicable costs, attorneys' fees and interest.

## **PRAYER FOR RELIEF**

1039.    On behalf of themselves and the Class, Plaintiffs request relief as follows:

a.    That the Court determines that this action may be maintained as a class action, that Plaintiffs be named as Class Representatives of the Class, that the undersigned by named as Lead Class Counsel of the Class, and direct that notice of this action be given to Class members;

b.    That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the federal and state laws set forth above;

c.    That the Court award Plaintiffs and the Class damages in an amount to be determined at trial;

d.    That the Court issue appropriate equitable and any other relief against Defendants to which Plaintiffs and the Class are entitled;

e.    That the Court award Plaintiffs and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

f.    That the Court award Plaintiffs and the Class their reasonable attorneys' fees and costs of suit; and

g.    That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

## JURY TRIAL

1040.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury for all claims.

Dated: August 24, 2020
        New York, New York

                                    Respectfully submitted,

_/s/ Philippe Z. Selendy_            _/s/ Kyle W. Roche_
Philippe Z. Selendy                  Kyle W. Roche
Jordan A. Goldstein                  Edward Normand
Michelle Foxman                      Velvel (Devin) Freedman
Mitchell Nobel                       Jordana L. Haviv
SELENDY & GAY, PLLC                  ROCHE CYRULNIK
1290 Sixth Avenue, 17th Floor          FREEDMAN LLP
New York, NY 10104                   99 Park Avenue, 19th Floor
pselendy@selendygay.com              New York, NY 10016
jgoldstein@selendygay.com            kyle@rcfllp.com
mfoxman@selendygay.com               tnormand@rcfllp.com
mnobel@selendygay.com                vel@rcfllp.com
                                     jhaviv@rcfllp.com