**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COREY HARDIN, DAVID MUHAMMAD, and CHASE WILLIAMS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRON FOUNDATION, JUSTIN SUN, and ZHIQIANG (LUCIEN) CHEN, <br><br> Defendants. | Case No.  1:20-cv-02804-VSB <br><br> Honorable Vernon S. Broderick |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TRON FOUNDATION'S AND JUSTIN SUN'S MOTION TO DISMISS THE <u>AMENDED CLASS ACTION COMPLAINT</u>**

FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104

*Attorneys for Defendants*
TRON FOUNDATION and JUSTIN SUN

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

I.   PLAINTIFFS CANNOT CURE THEIR UNTIMELY CLAIMS ......................................2

    A.   Plaintiffs' Section 12(a)(1) Claim Is Untimely........................................................2

    B.   Plaintiffs' Section 12(a)(2) Claim Is Untimely........................................................4

II.  SECONDARY MARKET TRANSACTIONS NOT INVOLVING TRON DO
    NOT SUPPORT SECTION 12 CLAIMS.....................................................................6

    A.   Plaintiffs Concede That Section 12(a)(2) Does Not Apply To
        Aftermarket Purchasers, and They Cannot Rely on Representative
        Standing ........................................................................................................6

    B.   Plaintiffs Incorrectly Argue That Section 12(a)(1) Covers Secondary
        Market Transactions Among Third Parties..............................................................7

III. PLAINTIFFS FAIL TO SHOW THAT TRON IS A "STATUTORY
    SELLER" .................................................................................................................8

IV.  PLAINTIFFS DO NOT ALLEGE A FALSE OR MISLEADING
    STATEMENT........................................................................................................11

V.   PLAINTIFFS' FEDERAL CLAIMS DO NOT SATISFY *MORRISON*..........................11

VI.  ALL STATE LAW CLAIMS FAIL ..........................................................................13

VII. PLAINTIFFS HAVE NOT DISCHARGED THEIR BURDEN TO SHOW
    THAT THE EXERCISE OF PERSONAL JURISDICTION IS
    APPROPRIATE......................................................................................................13

VIII. PLAINTIFFS HAVE NOT DEMONSTRATED CONVENIENCE OF
    FORUM ...............................................................................................................15

CONCLUSION.......................................................................................................................16

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)...............................................................................13

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
    2018 WL 5118638 (S.D.N.Y. Oct. 22, 2018) ...................................................15

*Balestra v. ATBCOIN LLC*,
    380 F. Supp. 3d 340 (S.D.N.Y. 2019) (Broderick, J.) .....................................9, 10

*Baroi v. Platinum Condo. Dev., LLC*,
    914 F. Supp. 2d 1179 (D. Nev. 2012) .................................................................5

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..............................................................................15

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir. 1988)................................................................................9

*Eastman Kodak Co. v. Asia Optical Co.*,
    2012 WL 2148198 (S.D.N.Y. June 13, 2012),
    *aff'd*, 518 F. App'x 23 (2d Cir. 2013).................................................................15

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    2021 WL 1132515 (U.S. Mar. 25, 2021) ...........................................................15

*Frontera v. United States*,
    2009 WL 909700 (W.D.N.Y. Mar. 31, 2009)......................................................5

*Griffin v. PaineWebber, Inc.*,
    2001 WL 740764 (S.D.N.Y. June 29, 2001) ........................................................9

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)..........................................................................................6, 8

*Harbus v. Manhattan Inst. for Policy Research, Inc.*,
    2020 WL 1990866 (S.D.N.Y. Apr. 27, 2020)....................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)...........................................................................................14

*Holsworth v. BProtocol Foundation*,
    1:20-cv-02810-AKH (S.D.N.Y. Feb. 22, 2021) ........................................... *passim*

**TABLE OF AUTHORITIES**
**(CONTINUED)**

*ICO Servs., Ltd. v. Coinme, Inc.*,
   2018 WL 6605854 (S.D.N.Y. Dec. 17, 2018) ..........................................................................14

*In re Alcatel Sec. Litig.*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005).........................................................................................6

*In re Biozoom, Inc. Sec. Litig.*,
   93 F. Supp. 3d 801 (N.D. Ohio 2015)........................................................................................4

*In re Cosi, Inc. Sec. Litig.*,
   379 F. Supp. 2d 580 (S.D.N.Y. 2005).........................................................................................6

*In re Deutsche Telekom AG Sec. Litig.*,
   2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)..............................................................................9

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
   2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ............................................................................6

*In re Poseidon Concepts Sec. Litig.*,
   2016 WL 3017395 (S.D.N.Y. May 24, 2016) ..........................................................................12

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013).......................................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 109 (2d Cir. 2013) .............................14

*In re Tezos Sec. Litig.*,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ...........................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003).......................................................................................10

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998).......................................................................................................14

*Langan v. Johnson & Johnson Consumer Cos.*,
   897 F.3d 88 (2d Cir. 2018)...........................................................................................................7

*LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*,
   318 F.3d 148 (2d Cir. 2003).........................................................................................................5

*Mark v. Park Ave. Synagogue*,
   2011 WL 3611322 (S.D.N.Y. Aug. 11, 2011) ...........................................................................3

## TABLE OF AUTHORITIES
## (CONTINUED)

*Miyahira v. Vitacost.com, Inc.*,
715 F.3d 1257 (11th Cir. 2013) ..................................................................11

*Morrison. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)...............................................................12, 13

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010).....................................................................11, 12, 13

*Nat'l Grp. For Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006).........................................................3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)........................................................................7

*Nolfi v. Ohio Kentucky Oil Corp.*,
675 F.3d 538 (6th Cir. 2012) ......................................................................3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*,
575 U.S. 175 (2015)..................................................................................11

*Park v. Bae*,
2016 WL 1435715 (D.N.J. Apr. 12, 2016) ................................................4

*Pinter v. Dahl*,
486 U.S. 622 (1988)....................................................................................8

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013)..........................................................................6

*Rotella v. Wood*,
528 U.S. 549 (2000)....................................................................................3

*Rotkiske v. Klemm*,
140 S. Ct. 355 (2019)..................................................................................3

*Rubenstein v. Cosmos Holdings, Inc*
2020 WL 3893347 (S.D.N.Y. July 10, 2020). .........................................12

*S.E.C. v. Cavanagh*,
155 F.3d 129 (2d Cir. 1998)........................................................................7

*S.E.C. v. Phan*,
500 F.3d 895 (9th Cir. 2007) ..................................................................7, 8

**TABLE OF AUTHORITIES**
**(CONTINUED)**

*S.E.C. v. PlexCorps*,
  2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018)...........................................................................15

*Stadnick v. Vivint Solar, Inc.*,
  2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015),
    *aff'd*, 861 F.3d 31 (2d Cir. 2017)...........................................................................................6

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)...................................................................9, 10

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
  2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) ........................................................................3

*United States v. Beggerly*,
  524 U.S. 38 (1998).................................................................................................................3

*United States v. Georgiou*,
  777 F.3d 125 (3d Cir. 2015)..................................................................................................12

*Verragio, Ltd. v. S K Diamonds*,
  2017 WL 1750451 (S.D.N.Y. May 4, 2017) .........................................................................15

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998)............................................................................................10, 12

*Youngers v. Virtus Inv. Partners Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016)...................................................................................10

*Zakinov v. Ripple Labs, Inc.*,
  2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................................................................4, 8, 10

*Zirvi v. Flatley*,
  433 F. Supp. 3d 448 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020).......................3

**Statutes and Rules**

Securities Act of 1933
  Section 12(a), 15 U.S.C. § 77l(a)................................................................................. *passim*
  Section 13, 15 U.S.C. § 77m......................................................................................... *passim*

Defendants TRON Foundation ("TRON") and Justin Sun (together, "Defendants")
respectfully submit this reply memorandum of law in support of their motion to dismiss.[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition not only fails to overcome the pleading deficiencies identified in
Defendants' motion, but it largely regurgitates legal arguments that were rejected by Judge
Hellerstein in a very similar "blockchain" case just a few weeks ago (which was commenced on
the same date as this case by the same counsel).  In *Holsworth v. BProtocol Foundation*, 1:20-
cv-02810-AKH, the court entered an Order Granting Motion to Dismiss on February 22, 2021
(Dkt. No. 66) (the "*BP Order*"), pursuant to which it dismissed the action **with prejudice**.[2]

In relevant part, the court found that (a) plaintiff's claim under § 12(a)(1) was time-
barred because it was filed more than one year after the 2017 ICO, even though plaintiff's
purchase was in September 2019 (less than a year before suit), and allegations of "fraudulent
concealment" were insufficient (*BP Order* at 2, 5-6), (b) § 12 requires privity – direct contact
between the plaintiff and defendants or allegations that the plaintiff purchased as a result of
defendants' active solicitation, and that allegations that defendants' "continuously and
systematically marketed" tokens through social media, websites or industry conferences did not
meet the governing standards (*id.* at 2, 5), (c) the federal securities laws do not apply to
purchases and sales outside the United States, even if the plaintiff is a U.S. citizen (*id.* at 5), (d)
state law "blue sky" claims failed due to the lack of the requisite connection between the alleged
security and the regulatory reach of each state (*id.*), (e) the same sort of promotional activities
alleged here do not confer specific jurisdiction over any defendant, and lifting the PSLRA
discovery stay to permit jurisdictional discovery would contradict the purpose of personal

---

[1] Abbreviations have the same meaning as in Defendants' opening brief (hereafter, "Mot.").
[2] For the Court's convenience, a copy of the *BP Order* is attached as Reply Ex. A.

1

jurisdiction, which is to protect foreign defendants from the burden of court proceedings (*id.* at 3-4), and (f) New York "is not a reasonable and convenient place to conduct this litigation" involving non-New York plaintiffs and non-New York defendants given the availability of an overseas forum (in that case, Israel) (*id.* at 6).

There is no reason for this Court to deviate from the rationale underlying the *BP Order*, much less every aspect of it that would be needed for the Amended Complaint to survive. Indeed, as noted below (and in the moving papers), plaintiffs' claims here are flawed even before the *BP Order,* and the opposition arguments are unavailing.

## ARGUMENT

## I.     PLAINTIFFS CANNOT CURE THEIR UNTIMELY CLAIMS

### A.      Plaintiffs' Section 12(a)(1) Claim Is Untimely

An action under Section 12(a)(1) must be "brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. According to plaintiffs, TRON violated § 12(a)(1) at the time of its ICO of TRX between August 24 and September 2, 2017, by selling an alleged "security" without a registration statement (indeed, TRON expressed the view in its earlier whitepaper that TRX was not a security). Plaintiff did not commence suit within one year of the ICO. *See* Mot. at 13. In an effort to argue that plaintiffs' claim is nevertheless timely, the opposition posits a somewhat incoherent argument that attempts to distinguish between "purchases" before and after April 3, 2019, when the SEC staff issued the Framework (exactly one year before suit). *See* Opp. at 4-9. Neither argument works.

**Purchases Before April 3, 2019.** As to purchases before that date (the alleged class period begins on August 24, 2017), plaintiffs rely on a "discovery rule," asserting that a reasonable investor would not have known that TRX was a security until the Framework was issued. But plaintiffs have no answer to the case law holding that, "[a]s the text demonstrates, §

12(a)(1) is not subject to a discovery rule." *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010); *see also Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) (same); *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("It is not our role to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery provision, in [the statute]").

Plaintiffs also suggest that, despite the absence of any textual support in § 12(a)(1) itself, the equitable doctrine of "fraudulent concealment" "may" delay the accrual of their claim. *See* Opp. at 6.  But this too belies fundamental rules of statutory construction.  *See United States v. Beggerly*, 524 U.S. 38, 48 (1998) ("[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute"); *Rotkiske*, 140 S. Ct. at 360-61 ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts'").

In any event, to invoke tolling under a fraudulent concealment theory, plaintiffs must establish: "(1) wrongful concealment by defendants (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim."  *Nat'l Grp. For Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006).  These elements must be pleaded with particularity.  *Id.*; *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020).  There must be affirmative concealment of facts, not legal conclusions.  *See Lucent*, 420 F. Supp. 2d at 265; *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) (no tolling for "elements of a claim"); *Mark v. Park Ave. Synagogue*, 2011 WL 3611322, at *3 (S.D.N.Y. Aug. 11, 2011) (no tolling for ignorance or mistake of law).

Plaintiffs have not satisfied these requirements.  TRON's pre-ICO whitepaper in 2017 stated in plain, unequivocal terms that TRX was not a security, while acknowledging there were

inherent uncertainties with newly emerging blockchain tokens and digital currencies.  *See* Mot. at 18.  Plaintiffs have cited nothing showing that TRON did not genuinely believe its statement or intentionally concealed anything from TRX purchasers as needed to plead fraudulent concealment.  Nor does the Complaint identify any diligence by plaintiffs to "discover" their claim.  The deficient allegations here are just like those rejected in the *BP* case.  *BP Order* at 6.

**Purchases On or After April 3, 2019.**  Plaintiffs' argument that their purchases on or after April 3, 2019 are timely because they occurred within one year of this suit is easily disposed of.  The alleged "violation" of § 12(a)(1) occurred when TRON allegedly sold the unregistered security in the 2017 ICO.  That third parties subsequently traded TRX in secondary market transactions years later does not give rise to some sort of "continuous" claim against TRON every time a third party sold TRX to plaintiffs.  Indeed, in the *BP Order,* the court was faced with a similar circumstance: the ICO occurred in 2017, yet the named plaintiff did not purchase in the secondary market until September 2019.  Although that plaintiff sued just seven months after his purchase, the court held that the "one-year statute of limitations . . . cannot be satisfied."  *BP Order* at 5-6.  *See also In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 810-11 (N.D. Ohio 2015) (dismissing § 12(a)(1) claim brought more than one year after first sale).[3]

### B.    Plaintiffs' Section 12(a)(2) Claim Is Untimely

The opposition's arguments under § 12(a)(2) are equally unavailing.  The gravamen of

---

[3] Plaintiffs' citation to two cases is misplaced.  *Park v. Bae*, 2016 WL 1435715, at *1 (D.N.J. Apr. 12, 2016), was not a § 12(a)(1) case.  The plaintiff purchased real estate investment stock certificates (a) at defined intervals akin to five primary offerings, and (b) directly from the defendants.  Neither is true here.  And, despite analyzing each offering separately, the court found a § 12(a)(2) claim untimely.  The second case, *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020), did not involve the statute of limitations.  It construed § 12(a)(1) as applying beyond the initial distribution of securities where defendants had sold "at defined intervals" and had characterized the distribution as "ongoing" across those intervals.  Defendants had also sold to the named plaintiff.  Such factors are not present here.

that claim is that TRON allegedly misrepresented its view that TRX was not a security in TRON's whitepaper in 2017, which plaintiffs claim is a "prospectus" to fall within § 12(a)(2).  In the opposition, plaintiffs assert that they could not have "discovered" that TRX "should" have been registered as a security until the non-binding Framework was issued by the SEC staff on April 3, 2019.  As detailed in the moving papers (Mot. at 10-11, 14-15), however, the Framework reveals no new "facts" about TRON or TRX.  While plaintiffs may not have come to *the legal view* that TRX was a security until the Framework was released (yet nevertheless continued to buy TRX after the Framework), that is insufficient to invoke the discovery rule.  *See Frontera v. United States*, 2009 WL 909700, at *9 (W.D.N.Y. Mar. 31, 2009) ("[I]gnorance of the law does not warrant application of the diligence discovery rule").  The discovery rule only applies to previously undiscoverable *facts*.  *See LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003) (under the discovery rule, the clock begins to run from discovery of the facts giving rise to the claim).[4]

Moreover, plaintiffs did not assert a § 12(a)(2) claim until filing their *Amended Complaint* on August 24, 2020, *seventeen months* after publication of the Framework.  Mot. at 15-16.  While plaintiffs try to invoke the "relation back" doctrine to save this claim, the only allegation plaintiffs point to in their original complaint is that TRON supposedly misstated its view that TRX was not a security.  Opp. at 10 (citing "IC" ¶¶ 7, 49, 56-57, 59, 66, 79).  The original complaint contains no other allegations of alleged misstatements, including any about supposed "plagiarism," the state of TRON's partnerships or product developments, or other matters plaintiffs have belatedly sought to raise.  Because such matters do not relate back, they

---

[4] For the same reason, plaintiff Hardin's claim fails under Nevada's two-year statute of limitations.  *Baroi v. Platinum Condo. Dev., LLC*, 914 F. Supp. 2d 1179, 1198 (D. Nev. 2012).

are time-barred.  *See In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 528-29 (S.D.N.Y. 2005) (new

operative facts preclude relation back); *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL

1372709, at *8-9 (S.D.N.Y. Mar. 31, 2010) (same).

## II.     SECONDARY MARKET TRANSACTIONS NOT INVOLVING TRON DO NOT SUPPORT SECTION 12 CLAIMS

### A.     Plaintiffs Concede That Section 12(a)(2) Does Not Apply To Aftermarket Purchasers, and They Cannot Rely on Representative Standing

Plaintiffs concede that, under *Gustafson* and its progeny, they have no viable Section

12(a)(2) claim for alleged misstatements because they did not purchase any TRX in the ICO in

2017.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 571-72 (1995) ("The 1933 Act is . . . chiefly

concerned with . . . initial distributions of newly issued stock from corporate issuers."); *In re

Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 588 (S.D.N.Y. 2005) (§ 12(a)(2) claim can "only be

maintained by a purchaser who purchased stock in the public offering at issue rather than in a

secondary market transaction"); *see also* Mot. at 18-20 (citing additional cases).

Nor can plaintiffs rely on "representative standing."  Opp. at 16.  As a general matter, the

named plaintiff must possess the claim it seeks to pursue on behalf of others.  *See, e.g.*, *Police &

Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013).  It is not

sufficient for plaintiffs to contend that they can pursue a claim merely because they have also

"suffered an injury as to the [securities] they purchased."  *Stadnick v. Vivint Solar, Inc.*, 2015

WL 8492757, at *18 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017) ("[P]laintiff's

lack of statutory standing for a § 12(a)(2) claim is dispositive").  Such a rule would render

concepts of standing meaningless.

Moreover, plaintiffs' argument ignores that their § 12(a)(1) claim fails as a matter of law.

But even if it did survive, plaintiffs greatly exaggerate the overlap between the two claims.  The

inquiry under § 12(a)(1) focuses on whether TRX is an unregistered security.  The inquiry under

§ 12(a)(2) focuses on whether the TRON whitepaper constitutes a "prospectus," and whether it contained a host of material misstatements and omissions on an array of subjects.  *See* Mot. at 24-28.  The claims will require different proof and have different elements.  Plaintiffs' cases are inapposite as they address different issues.  *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018) (addressing whether "there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct"); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (no question that plaintiff had both Article III and statutory standing).

**B.     Plaintiffs Incorrectly Argue That Section 12(a)(1) Covers Secondary Market Transactions Among Third Parties**

Plaintiffs try to distinguish a long line of cases holding that § 12 does not apply to aftermarket transactions between third parties by asserting that they involved claims under § 12(a)(2).  Opp. at 12-15; Mot. at 18-20 (citing cases regarding the purpose of the 1933 Act). That is not surprising.  Litigation under § 12(a)(2) is far more common than "unregistered" securities cases.  Nevertheless, the distinction plaintiffs try to draw cannot withstand scrutiny.

Like § 12(a)(2), § 12(a)(1) imposes liability on any person who offers or sells an unregistered security "to the person purchasing such security ***from him***."  15 U.S.C. § 77l (emphasis added).  Those words have meaning: they apply to an initial distribution by a defendant, as well as any other sales of unregistered shares by that defendant.  *See S.E.C. v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998) ("Each sale of a security" *by the same defendant* "must either be made pursuant to a registration statement or fall under a registration exception"); *S.E.C. v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) (company's sale of shares to the public was not covered by a registration statement for employee plan).  Nothing in the statutory language

suggests that it imposes liability on a defendant for resale or secondary market transactions between independent third-party sellers and buyers, which are plainly not sales "from him." Indeed, despite citing *Phan,* plaintiff ignores *Phan's* observation that the § 12(a)(1) claim would not lie with respect to "ordinary resales of stock between independent parties." *Id.*

Plaintiff's reliance on a California case, *Zakinov*, *supra*, is misplaced. Putting aside whether that court properly construed the statutory language, it held that a § 12(a)(1) claim could extend "outside the initial distribution context" where the defendant had sold "at defined intervals," had characterized the distribution as "ongoing," and had sold shares directly to plaintiffs. 2020 WL 922815, at *3-4, 12. There are no such factors here. Because TRON is not alleged to have sold any TRX after the ICO, and plaintiffs' purchases of TRX were all made on the secondary market, plaintiffs have no claim under § 12(a)(1).[5]

## III.    PLAINTIFFS FAIL TO SHOW THAT TRON IS A "STATUTORY SELLER"

Plaintiffs also do not satisfy either prong of the "statutory seller" test established in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Plaintiffs concede that they do not meet the first prong of *Pinter*, because TRON did not pass title to them. Opp. at 17-18. Instead, plaintiffs argue that they satisfy the second prong of *Pinter,* which requires concrete allegations that TRON solicited each of their purchases motivated, at least in part, by its own financial interests. 486 U.S. at 642, 647. In doing so, they make the exact same arguments that were rejected in the *BP Order* and other cases in this district. *See* Opp. at 17-21.

---

[5] Plaintiffs also argue that the discussion in *Gustafson* that an investment contract for a secondary transaction did not constitute a prospectus under § 12(a)(2) somehow means that § 12(a)(1) should be read more broadly because it does not use the term "prospectus." Opp. at 13-14. But there would be no reason for § 12(a)(1) to refer to a prospectus since it applies only to unregistered sales of securities, not alleged misstatements in a prospectus. Instead, the common element of both sections is that a defendant is liable only to someone purchasing "from him," rather than in secondary market transactions.

To avoid dismissal, plaintiff "must allege not only that [Defendants] actively solicited investors, but that [the plaintiff] ***purchased the securities as a result*** of [that] solicitation." *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (emphasis added); *see Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357 (S.D.N.Y. 2019) (Broderick, J.) ("An individual may be held liable under § 12(a) if he '***successfully*** solicits the purchase of securities'") (emphasis added).  To constitute solicitation, a plaintiff must show that it was in privity with the defendant or that the defendant had "direct and active participation in the solicitation of the immediate sale." *Steed*, 2001 WL 1111508, at *7; *see also In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002).  As Judge Hellerstein held, dismissal is warranted where "[n]o privity between Plaintiff and Defendant is shown, nor has Plaintiff shown that he was directly contacted by Defendants or that he purchased securities as a result of any active solicitations by Defendants."  *BP Order* at 5 (citing *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("must allege not only that [Defendant] actively solicited investors . . . but that he purchased securities as a result"); *Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988) (defendant must actually solicit investment)).

The opposition makes no such showing.  Instead, as in *BP*, plaintiffs argue that TRON engaged in a "pervasive solicitation and marketing campaign" through TRON's "website" and "whitepaper," by "heavily promoting TRX tokens on social media," or by attending "conferences" in San Francisco and New York.  Opp. at 18-19.  But these "activities" are completely untethered to plaintiffs' alleged purchases: there is no claim that any plaintiff ever had any contact with TRON, or that the actions somehow constitute "direct and active solicitation in the immediate" purchase by plaintiffs (which occurred on numerous different dates over a period of years).  In fact, many of the actions referenced in the opposition occurred in

2017, long before plaintiffs bought and sold TRX between March 29, 2018 and March 21, 2020, and have no logical (much less pleaded) connection to plaintiffs' purchases.  Indeed, plaintiffs' argument amounts to the notion that virtually any public statement by TRON about its business or tokens somehow constitutes "solicitation" merely because TRX is traded on a daily basis in the aftermarket.  Such a sweeping allegation, which could just as easily be made against any company with publicly traded common stock, is absurd, and has no support in the case law.[6]

Nor does the opposition show that any, much less all of plaintiffs' purchases, were made as a result of these solicitations.  Instead, plaintiffs balk at doing so, claiming this is an attempt to import a reliance require into § 12 (Opp. at 21), despite the rather obvious answer that a "solicitation" cannot be actionable unless it is "successful."  *Steed*, 2001 WL 1111508, at *7. Nor can plaintiffs now try to "cure" this deficiency with a generic, identical declaration from each plaintiff claiming that, before purchasing TRX on unspecified dates, he "visited TRON's website, reviewed TRON's whitepaper, and saw its social media posts" and "bought TRX in part because of how TRON touted its product offerings and [its] value . . . ."  Dkt. Nos. 67-69 ¶¶ 4-5. These purposefully vague statements raise more questions than answers, but, since they are not in the Amended Complaint, it is settled that they cannot be considered now.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Harbus v. Manhattan Inst. for Policy Research, Inc.*, 2020 WL 1990866, at *7 (S.D.N.Y. Apr. 27, 2020).[7]

---

[6] Plaintiffs' cases are not to the contrary.  *See Zakinov,* 2020 WL 922815, at *7-8 and Dkt. No. 63 ¶ 13 (plaintiff explicitly alleged that he purchased from defendant as a result of solicitations); *Balestra,* 380 F. Supp. 3d at 347, 358 (plaintiff alleged he purchased from defendant in a heavily promoted ICO); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 186 (S.D.N.Y. 2003) (extent of actual or successful solicitation not challenged).

[7] Regardless, the general matters plaintiffs now say they reviewed do not, as a matter of law, establish that TRON is a statutory seller.  *See Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (allegation that defendants "are statutory sellers . . . [because they] distributed the marketing materials through their website and other channels" not sufficient).

IV.     **PLAINTIFFS DO NOT ALLEGE A FALSE OR MISLEADING STATEMENT**

Plaintiffs' opposition also confirms the absence of an alleged misrepresentation or omission in TRON's whitepaper, under § 12(a)(2).  *First*, plaintiffs argue that an opinion—here, that TRX is not a security—can be actionable (Opp. at 25), but they (a) have failed to plead the required contemporaneous facts establishing why this opinion was false or contrary to TRON's knowledge, and (b) defeat their own argument by pleading that it was impossible to know TRX was a security until the Framework was published.  Mot. at 24-25; *see Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*, 575 U.S. 175, 189-90 (2015) (opinion statement can be actionable only in limited circumstances, including where defendant does not actually believe the statement or has sufficient actual evidence contradicting the opinion).  *Second*, plaintiffs overly discount the risk warning about future regulatory changes in the blockchain space and claim it is not specific enough.  Such specificity is not required.  It is enough to disclose the general gist of the risk; disclosure of the specific danger plaintiffs claim is not required.  *See, e.g.*, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1266 (11th Cir. 2013).  *Third*, in accusing TRON of plagiarism, plaintiffs fail to appreciate the difference between the source and the veracity of technical statements in the whitepaper.  Even if TRON modeled portions of its whitepaper and protocol after aspects of other blockchain projects (which Tron disputes), plaintiffs fail to plead how that constitutes an actionable misrepresentation.  Mot. at 27.[8]

V.      **PLAINTIFFS' FEDERAL CLAIMS DO NOT SATISFY *MORRISON***

As the court in the *BP Order* held, "[t]he federal securities laws do not reach a purchase

---

[8] There is no dispute that a finding of no well-pleaded primary liability against TRON will mean that the control person claims against Justin Sun fail.  Mot. at 32; Opp. at 26 n.10.

and sale outside the United States." *BP Order* at 5 (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010)).  Similar to the circumstances there, plaintiffs purchased TRX issued by a foreign company based in Singapore utilizing a foreign exchange, Binance, that is located in Malta.  Mot. at 28.  This inherently foreign transaction does not meet the *Morrison* test.

Under *Morrison,* the required "national securities exchange" does not include over-the-counter ("OTC") exchanges like Binance, at least not in the absence of alleged SEC registration as a domestic exchange and U.S. ties such as domestic market makers or facilities.  *See In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *12 (S.D.N.Y. May 24, 2016) (citing *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015)) (holding that OTC markets are not domestic securities exchanges under *Morrison*).  Plaintiffs have not alleged that Binance is SEC-registered or has any U.S. operational presence.[9]  Instead, plaintiffs' *brief* makes speculative assertions about Binance and what discovery might yield (Opp. at 27 n.11) and posits that at least three other exchanges that listed TRX are national securities exchanges even though plaintiffs did not utilize them (*id.* at 27-28).  Again, however, a party may not amend a pleading through factual averments in an opposition brief.  *Wright*, 152 F.3d at 178.  Additionally, the Second Circuit has rejected plaintiffs' argument that mere cross-listing on a domestic exchange, when the relevant purchases were made on a foreign exchange, satisfies *Morrison*.  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179-80 (2d Cir. 2014) ("[T]he 'listing theory' is irreconcilable with *Morrison* read as a whole"); *see also In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 475 (S.D.N.Y. 2013).

---

[9] *Rubenstein v. Cosmos Holdings, Inc.* does not aid plaintiffs.  There, the defendants waived their *Morrison* argument, and regardless, the case is distinguishable because the issuer allegedly was domestic, and "domestic market makers and facilities" accomplished trading in the issuer's securities.  2020 WL 3893347, at *11 (S.D.N.Y. July 10, 2020).

In addition, the second prong of *Morrison* demands a "domestic transaction," which requires that a plaintiff "incurred irrevocable liability within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).  Plaintiffs argue that they satisfy this test merely because plaintiffs placed trades from Nevada and Texas.  Opp. at 27. That argument fails; the mere fact that the purchase order was placed from the United States does not make the transaction "domestic."  Mot. at 28-29; *City of Pontiac*, 752 F.3d at 188-89 ("the fact that a U.S. entity places a buy order in the United States for the purchase of foreign securities on a foreign exchange is insufficient").

## VI.   ALL STATE LAW CLAIMS FAIL

In the *BP Order,* the court dismissed plaintiffs' virtually identical effort to sue under the laws of all fifty states because of the absence of a connection between the alleged security "and the regulatory reach of the state agency." *BP Order* at 5.  The same is true here.  While plaintiffs are residents of Nevada and Texas, they cite nothing establishing that the Nevada and Texas securities laws regulate the issuance of tokens by a foreign company sold on a foreign exchange. In any event, even if the laws of those states could be invoked merely because plaintiffs reside there, the "unregistered securities" claims under the laws of Nevada and Texas fail for the same reasons as the § 12(a)(1) claim.  *See* Mot. at 30-31.

As to other states, plaintiffs argue that they have "class standing" even though they have not shown that the laws of each state are substantively the same as Nevada and Texas.  *See* Opp. at 29.  But even if they could make that showing, plaintiffs' failure to plead a viable claim under Nevada and Texas law precludes class standing.  Mot. at 30 n.11 (citing authorities).

## VII.   PLAINTIFFS HAVE NOT DISCHARGED THEIR BURDEN TO SHOW THAT THE EXERCISE OF PERSONAL JURISDICTION IS APPROPRIATE

The *BP Order* found that mere promotional activities, such as those alleged here, are

"insufficient to support personal jurisdiction over citizens of another country." *BP Order* at 4.
The contacts alleged here – communications and appearances in the U.S. and promotional
materials on a website, Opp. at 29-33, 30 n.13 – are not sufficient for the Court to exercise
jurisdiction over TRON or Mr. Sun. *BP Order* at 4; *see also* Mot. at 35-36.[10]

      Critically, Plaintiffs have failed to make a *prima facie* showing of personal jurisdiction
over Mr. Sun *or* TRON for the fundamental reason that there is no well-pleaded nexus between
any alleged U.S. contacts and plaintiffs' purchases of TRX from which the claims arise.  Mot. at
35-37; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984) (claims
must "arise[] out of or relate[] to the defendant's contacts with the forum").  There are no alleged
facts linking activity such as website maintenance, advertising or conference attendance to the
TRX ICO (which this activity post-dated, *see* Dkt. No. 70 at 1-2) *or* to plaintiffs' purchases of
TRX.  Mot. at 35-36.  Plaintiffs seek to fix this defect by submitting rote declarations: ". . . I
visited Tron's website, reviewed Tron's whitepaper, and saw its social media posts. I bought
TRX in part because of how Tron touted its product offerings."  Dkt. Nos. 67-69 ¶¶ 4-5.
Conclusory statements such as these are no replacement for factual allegations supporting
jurisdiction.  *ICO Servs., Ltd. v. Coinme, Inc.*, 2018 WL 6605854, at *2 (S.D.N.Y. Dec. 17,
2018) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)) ("[A]llegations . . .

---

[10] Plaintiffs have no meaningful response to the principle that personal jurisdiction over a
corporate officer or director like Mr. Sun must be based on the person's own individual contacts
with the forum, and not contacts in his or her corporate capacity.  Mot. at 33.  They argue that
"Mr. Sun was not a mere bystander . . . [e]verything Mr. Sun did was to issue TRX."  Opp. at 33.
Those conclusory assertions are inadequate because, in contrast to the authorities on which
plaintiffs rely (*id.*), the sole basis for naming Mr. Sun in this action is his alleged status as a
control person of TRON.  Plaintiffs conflate that role, which is insufficient to establish personal
jurisdiction, with the requisite contacts in Mr. Sun's capacity other than as a steward of TRON.
*In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 471 (S.D.N.Y. 2010), *aff'd*, 714
F.3d 109 (2d Cir. 2013).  Absent such contacts, Mr. Sun does not belong before this Court.

constituting the basis of jurisdiction must be non-conclusory and fact-specific"). Indeed, even if

the declarations were fact-specific, generalized "promotional activities, touting [a] company's

digital activities" and global internet communications, which are attenuated from the alleged

purchases of digital currency, are insufficient to support personal jurisdiction. *BP Order* at 4;

*see also* Mot. at 35-36.[11]

As plaintiffs have "not made out a prima facie case for jurisdiction," jurisdictional

discovery is not warranted here. *BP Order* at 4-5; *Best Van Lines, Inc. v. Walker*, 490 F.3d 239,

255 (2d Cir. 2007); *Eastman Kodak Co. v. Asia Optical Co.*, 2012 WL 2148198, at *16

(S.D.N.Y. June 13, 2012), *aff'd*, 518 F. App'x 23 (2d Cir. 2013) (no entitlement to jurisdictional

discovery as a matter of course).

## VIII.  PLAINTIFFS HAVE NOT DEMONSTRATED CONVENIENCE OF FORUM

Finally, plaintiffs fail to show that New York is a reasonable forum to litigate this matter.

No party resides here, including plaintiffs. And each plaintiff chose to purchase TRX, issued by

a Singapore company, utilizing Binance, a foreign exchange based in Malta. In analogous

circumstances, the court has dismissed the identical claims made here (in favor of Israel) on

*forum non conveniens* grounds. *BP Order* at 5-6; Mot. at 37-38 (citing additional authorities).

---

[11] Plaintiffs argue that advertising coupled with a single purchase can be enough (Opp. at 29-30),
and they submit a recent Supreme Court decision holding that a "connection" (even without strict
causation) between a defendant's forum conduct and a plaintiff's claim can suffice (Dkt. No. 72).
Plaintiffs' authorities are distinguishable because each involved pronounced U.S. marketing
activity that preceded and either caused or was closely connected with the offending transactions,
which is not the case here. *See Ford Motor Co. v. Montana Eighth Judicial District Court*, 2021
WL 1132515, at *5-7 (U.S. Mar. 25, 2021)) (defendant Ford Motor Co. conceded that it directly
and purposefully availed itself of the forum market, and the court found that defendant directly
sold and serviced its vehicles in the forum prior to the accident that precipitated the litigation);
*see also Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 5118638, at *4 (S.D.N.Y.
Oct. 22, 2018); *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *6 (N.D. Cal. Aug. 7, 2018);
*Verragio, Ltd. v. S K Diamonds*, 2017 WL 1750451, at *2 (S.D.N.Y. May 4, 2017); *S.E.C. v.
PlexCorps*, 2018 WL 4299983, at *3-4 (E.D.N.Y. Aug. 9, 2018).

Plaintiffs try to criticize Singapore as an adequate alternate based on their speculative assumption that, if U.S. law were deemed to apply to plaintiffs' claims, Singapore courts would interpret it differently than this Court would.  Opp. at 35.  Plaintiffs cite no case, expert report or anything else to support that argument.  Nor could they, since courts in this district have held that Singapore is an adequate forum and TRON has submitted a declaration from a Singapore law expert showing that Singapore courts are well-versed in applying U.S. law.  *See* Mot. at 39 (citing cases and Declaration of Suresh Nair).  Plaintiffs also argue it is uncertain whether Mr. Sun would be subject to jurisdiction in Singapore.  Opp. at 35.  For the avoidance of doubt, both TRON and Mr. Sun confirm their consent to the jurisdiction of Singapore courts for this matter.

## CONCLUSION

For the reasons set forth above and in the moving papers, this case should be dismissed in its entirety.

Dated:  April 2, 2020

Respectfully submitted,

FENWICK & WEST LLP


By: */s/ Dean S. Kristy*
Dean S. Kristy (NY Bar #1945658)
Casey O'Neill (NY Bar #4715363)
Michael S. Dicke (Calif. Bar #158187)
(admitted *pro hac vice*)
Alison C. Jordan (Calif. Bar #311081)
(admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350
Email:     dkristy@fenwick.com
Email:     coneill@fenwick.com
Email:     mdicke@fenwick.com
Email:     ajordan@fenwick.com

*Attorneys for Defendants*
TRON FOUNDATION and JUSTIN SUN