UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COREY HARDIN and CHASE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>TRON FOUNDATION, JUSTIN SUN, and ZHIQIANG (LUCIEN) CHEN,<br><br>              Defendants. | Case No. 1:20-cv-02804-VSB<br><br>Honorable Vernon S. Broderick |

**MEMORANDUM OF LAW IN SUPPORT OF
TRON FOUNDATION LIMITED AND JUSTIN SUN'S
MOTION FOR A STAY OF PROCEEDINGS**

                                 FENWICK & WEST LLP
                                 555 California Street, 12th Floor
                                 San Francisco, CA  94104

                                 *Attorneys for Defendants*
                                 TRON FOUNDATION LIMITED and
                                 JUSTIN SUN

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND......................................................................3

LEGAL STANDARD......................................................................................................................3

ARGUMENT...................................................................................................................................4

    I.    THE INTEREST OF THE COURT FAVORS A STAY .........................................4

    II.    THE INTERESTS OF THE PUBLIC FAVOR A STAY........................................8

    III.    THE PRIVATE INTERESTS OF AND THE BURDEN IMPOSED ON DEFENDANTS FAVOR A STAY..................................................................10

    IV.    THE PRIVATE INTERESTS OF NONPARTIES FAVOR A STAY ..................10

    V.    PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY ................................11

CONCLUSION..............................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Gharib*,
   No. 24-cv-9378 (S.D.N.Y., filed Dec. 9, 2024) ................................................................. 8

*Albouni v. Schultz*,
   No. 24-cv-8650 (E.D.N.Y., filed Dec. 19, 2024) ............................................................... 8

*Carnahan v. Baton Corp. Ltd.*,
   No. 25-cv-490 (S.D.N.Y. filed Jan. 16, 2025) ................................................................... 8

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009) ................................................................................ 7

*City of Buffalo v. Smith & Wesson Brands, Inc.*,
   2023 WL 3901741 (W.D.N.Y. June 8, 2023) .................................................................. 11

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
   2012 WL 2865485 (S.D.N.Y. July 10, 2012) .................................................................... 9

*Finn v. Barney*,
   2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ..................................................................... 7

*Goldstein v. Time Warner New York City Cable Grp.*,
   3 F. Supp. 2d 423 (S.D.N.Y. 1998) .................................................................................... 8

*Holsworth v. BProtocol Found.*,
   2021 WL 706549 (S.D.N.Y. Feb. 10 22, 2021) ................................................................ 9

*Hoover v. HSBC Mortg. Corp. (USA)*,
   2014 WL 12781322 (N.D.N.Y. July 9, 2014) ................................................................. 11

*In re Zimmer*,
   2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) ................................................................... 4

*Joiner v. NHL Enters., Inc.*,
   2024 WL 639422 (S.D.N.Y. Feb. 15, 2024) ...................................................................... 4

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996) ................................................................................... 4

*Leslie v. Thompson Reuters Corp.*,
   2023 WL 6173511 (S.D.N.Y. Sept. 22, 2023) ............................................................. 4, 11

*Loftus v. Signpost Inc.*,
   464 F. Supp. 3d 524 (S.D.N.Y. 2020) ................................................................ 3, 4, 10, 11

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) ................................................................................................. 3

# TABLE OF AUTHORITIES
## (Continued)

                                                                                                                                                                            **Pages(s)**

*McCracken v. Verisma Sys., Inc.*,
   2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018) ....................................................................8, 11

*Pappas v. MyPizza Techs., Inc.*,
   2020 WL 8268139 (S.D.N.Y. Dec. 3, 2020) ................................................................................4

*Readick v. Avis Budget Grp., Inc.*,
   2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014) ...............................................................4, 9, 11

*S.E.C. v. Binance*,
   No. 23-cv-1599 (D.D.C. Feb. 13, 2025) ....................................................................................8

*S.E.C. v. Coinbase, Inc*,
   2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) ..........................................................................1, 6, 8

*S.E.C. v. Coinbase, Inc.*,
   No. 25-145 (2nd Cir., filed Jan. 17, 2025) ............................................................1, 4, 6, 11

*S.E.C. v. Consensys Software Inc.*,
   No. 24-cv-04578 (E.D.N.Y., filed Jun. 28, 2024) .....................................................................8

*S.E.C. v. Phan*,
   500 F.3d 895 (9th Cir. 2007) .....................................................................................................9

*S.E.C. v. Ripple Labs, Inc.*,
   682 F. Supp. 3d 308 (S.D.N.Y. 2023) ..................................................................................5, 6

*S.E.C. v. Ripple Labs Inc.*,
   No. 24-2648 (2nd Cir., filed Oct. 3, 2024) .........................................................................1, 4, 5

*S.E.C. v. W.J. Howey Co.*,
   328 U.S. 293 (1946) .......................................................................................................... *passim*

*Shain v. Duff & Phelps Credit Rating Co.*,
   915 F. Supp. 575 (S.D.N.Y. 1996) ............................................................................................9

*Sikhs for Just. v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) .......................................................................................4

*Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*,
   2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ...........................................................................9

*Thompson v. Fluent, Inc.*,
   2020 WL 8642144 (S.D.N.Y. Nov. 29, 2020) ..............................................................4, 10, 11

Defendants Tron Foundation Limited and Justin Sun (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for a stay of proceedings.

## PRELIMINARY STATEMENT

There are two core issues in this case that may soon be settled or clarified by the Second Circuit, either of which may entirely foreclose Plaintiffs' claims: (1) whether transactions in crypto assets such as TRX (ERC-20) and TRX (TRON) are securities transactions, and if so, (2) whether those involved in the original issuance of those alleged securities are "statutory sellers" under Sections 5 and 12(a)(1) of the Securities Act of 1933 to downstream secondary market purchasers.

With respect to the first issue, as Judge Failla recognized last month in *S.E.C. v. Coinbase, Inc*, 2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) ("*Coinbase I*"), "there is persistent disagreement [among district courts] about how to apply [*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946)] to crypto-assets", and these "conflicting decisions on an important legal issue necessitate the Second Circuit's guidance." *Id*. at *9-10. Accordingly, Judge Failla certified the *Coinbase* matter for interlocutory appeal to the Second Circuit and stayed all proceedings pending the appeal's resolution. *Id*. at *14. In parallel, the Second Circuit is also considering how to apply *Howey* to crypo assets in *S.E.C. v. Ripple Labs Inc.*, No. 24-2648 (2nd Cir., filed Oct. 3, 2024). Separately, the Securities and Exchange Commission ("S.E.C.") announced last month that it was convening a taskforce focused on clarifying "[t]he status of crypto assets under the securities laws," and at least one district court in the District of Columbia stayed proceedings in a crypto asset securities case to permit the S.E.C. to develop its new regulatory framework for such assets. In short, the legal landscape for crypto assets is unsettled and quickly shifting, and courts across the country have recognized the value in staying securities actions concerning digital assets pending further imminent guidance from both appellate courts and the S.E.C.

1

On the second core issue, Defendants in this action filed a motion to certify for interlocutory appeal the question of whether those involved in the issuance of an alleged security are "statutory sellers" with respect to later secondary market purchases in which they were not involved, by buyers with whom they did not interact.  As Defendants argued in their motion, there is conflicting authority on this issue both within and outside of this circuit, with at least one other court in the Southern District of New York resolving the issue in a manner opposite to this Court on nearly identical allegations.  If certified by this Court and heard by the Second Circuit, the appeal could result in the dismissal of this action in its entirety.

While the Second Circuit assesses one of the two threshold issues in this case, and as this Court considers whether to certify to the Second Circuit the second threshold issue, Plaintiffs are pushing ahead with a scorched-earth discovery strategy that is wholly disproportionate to the needs of the case and appears intended to drive up costs before the Second Circuit can preclude their claims.  Accordingly, absent a stay, Defendants and nonparties will bear the burden of litigating and/or producing excessive discovery that, pending further guidance from the Second Circuit, may prove to be unnecessary.  By contrast, Plaintiffs are unlikely to suffer any prejudice from a stay because they seek only pecuniary damages.  If anything, Plaintiffs, like Defendants, would also benefit from a stay, which could save Plaintiffs the expense of prosecuting a case that ultimately may be narrowed or precluded outright.  Indeed, underscoring the point, Plaintiffs have sought to avoid incurring any burdens of their own by refusing to move to certify a class (which too is a fundamental impediment to this case), despite the requirement in Rule 23 that they do so as soon as reasonably practicable after the commencement of this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The operative complaint in this putative class action was filed on August 24, 2020 (the "Amended Complaint" or "Compl."). ECF No. 29. Plaintiffs allege claims based on purchases of the crypto asset TRX on secondary exchanges. *Id.* Defendants moved to dismiss the Complaint on December 15, 2020, staying discovery under the Private Securities Litigation Reform Act. ECF No. 54. The Court granted in part and denied in part the motion to dismiss on October 23, 2024. ECF No. 114. On December 18, 2024, Defendants filed a motion to certify for interlocutory appeal the Court's October 23, 2024 Order, in part because there is conflicting authority both within and outside this Circuit as to whether those involved in generalized marketing and promotional efforts in connection with blockchain ventures and tokens may be held strictly liable under Section 12(a)(1) of the Securities Act for secondary sales to buyers with whom they did not interact – an issue that remains unsettled in the Second Circuit. ECF Nos. 121, 122 (the "Interlocutory Appeal Motion"). Plaintiffs have not yet moved to certify the putative class and have declined to agree to, or even indicate, a date by which they will do so.

## LEGAL STANDARD

"A district court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012)). In determining whether to grant a stay, courts in this district consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

3

*Id.* (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). "No one factor is dispositive; they are balanced with the principal aim of avoiding unfair prejudice to either party. But in general, '[a] stay may be appropriate in light of a concurrently pending federal action . . . because the pending action would resolve a controlling point of law.'" *In re Zimmer*, 2021 WL 5963392, at *4 (S.D.N.Y. Dec. 16, 2021) (quoting *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *2 (S.D.N.Y. Apr. 28, 2014)).

## ARGUMENT

**I.     THE INTEREST OF THE COURT FAVORS A STAY**

Courts frequently exercise their power to stay an action "when a higher court is close to settling an important issue of law bearing on the action." *See Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012). Often courts will stay an action because a pending appeal in another, unrelated action would resolve a controlling, dispositive issue in the case at hand. *See Joiner v. NHL Enters., Inc.*, 2024 WL 639422, at *2 (S.D.N.Y. Feb. 15, 2024) (staying action pending resolution of Second Circuit appeal involving different parties but concerning same threshold legal issue); *Leslie v. Thompson Reuters Corp.*, 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023) (same); *Pappas v. MyPizza Techs., Inc.*, 2020 WL 8268139, at *1 (S.D.N.Y. Dec. 3, 2020) (same); *see also Loftus*, 464 F. Supp. 3d at 526 (staying action pending resolution of dispositive issue before the Supreme Court involving different parties); *Thompson v. Fluent, Inc.*, 2020 WL 8642144, at *2 (S.D.N.Y. Nov. 29, 2020) (same).

This prudential practice is directly applicable here. After years of district court litigation and uncertainty about the application of the *Howey* test to the sale of crypto assets on secondary markets, at least two appeals pending or on certification before the Second Circuit will likely provide substantial clarity on this issue to the parties and this Court. These two cases, the most recent editions of *S.E.C. v. Ripple Labs* and *S.E.C. v. Coinbase*, present the threshold question, at

4

issue in this case and many others, of whether and under what circumstances secondary market transactions in crypto assets (like TRX here) may be investment contracts and therefore securities. Under the test articulated in *S.E.C. v. W.J. Howey Co.*, a transaction is an investment contract if it "involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946). Plaintiffs allege that their (and the putative class members') purchases of TRX meet these elements, Compl. ¶¶ 107-132, and do not assert any other basis to bring claims under federal and state securities laws. Each of Plaintiffs' one hundred and three causes of action are premised on alleged securities transactions.

*First*, in *S.E.C. v. Ripple Labs Inc.*, No. 24-2648 (2nd Cir., filed Oct. 3, 2024) ("*Ripple II*"), the Second Circuit will determine whether sales of crypto assets on secondary trading platforms meet the third *Howey* element. The lower court found that Ripple's sales of XRP on secondary trading platforms were not investment contracts because, as "blind bid/ask transactions," purchasers "could not have known if their payments of money went to Ripple, or any other seller of XRP," and therefore could not have reasonably expected "that Ripple would use the capital" from those sales "to improve the XRP ecosystem and thereby increase the price of XRP." *S.E.C. v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 328 (S.D.N.Y. 2023) ("*Ripple I*"). The S.E.C. has asked the court of appeals to reverse this holding and find that "investors who purchase crypto assets on secondary trading platforms . . . have an expectation of profits based on the efforts of others." *Ripple II*, ECF No. 45, at *34 (Jan. 15, 2025).

If the Second Circuit affirms the district court's holding in *Ripple I* that blind bid/ask transactions fail to satisfy *Howey*, that will dispose of Plaintiffs' claims here. Plaintiffs allege purchases on secondary trading platforms in blind bid/ask transactions and do not allege purchases from any defendant. Compl. ¶¶ 63-66, 144. If *Ripple I* is affirmed, binding precedent

5

may require finding that Defendants "did not make any promises or offers because [Defendants] did not know who was buying the [TRX], and the purchasers did not know who was selling it." *See Ripple I*, 682 F. Supp. 3d at 329. This reasoning would compel dismissal of Plaintiffs' claims.[1]

*Second*, the Second Circuit will also address how *Howey* applies to secondary market transactions if it accepts the pending interlocutory appeal, certified by Judge Failla, in *S.E.C. v. Coinbase, Inc.*, No. 25-145 (2nd Cir., filed Jan. 17, 2025) ("*Coinbase II*"). On January 7, 2025, Judge Failla granted Coinbase's motion to certify for interlocutory appeal an order denying in part Coinbase's motion for judgment on the pleadings and stayed all proceedings until the appeal is resolved. *See generally Coinbase I*, 2025 WL 40782. At the heart of *Coinbase* I is a recognition by Judge Failla that there is "persistent disagreement [among district courts] about how to apply *Howey* to crypto-assets" (*id.* at *10), and that "these conflicting decisions on an important legal issue necessitate the Second Circuit's guidance" before the action should proceed (*id.* at *9). That "central question" – "how courts should apply *Howey* to crypto-asset transactions" in determining whether they reflect a securities transaction (as opposed to a transaction of commodities or other assets) (*see id.* at *11) – is also fundamental to this action. Moreover, the transactions at issue in *Coinbase* are secondary market transactions similar to those alleged in the Amended Complaint. Compl. ¶¶ 63-66. Of course, if the Second Circuit agrees with Coinbase that these transactions are outside the scope of the securities laws, Plaintiffs' claims would be foreclosed. However, this Court and the parties would also

---

[1] The lower court in *Ripple I* declined to extend its holding to sales on secondary marketplaces by parties other than Ripple and its affiliates "because that question [wa]s not properly before the Court." 682 F. Supp. 3d at 329 n.16. Nevertheless, if adopted by the Second Circuit, the reasoning in that opinion would be incompatible with maintaining this Action.

substantially benefit from the Second Circuit's guidance even if the Second Circuit merely issues additional clarification as to how district courts should apply *Howey* to crypto assets, which could narrow the issues and streamline discovery.

In addition to the two pending appeals (one awaiting ruling on certification) before the Second Circuit that may directly bear on this action, Defendants' Interlocutory Appeal Motion in this case remains pending before this Court. ECF No. 122. The question presented in that brief (whether Defendants are "statutory sellers") is *also* dispositive of Plaintiffs' claims under Section 12(a)(1), as well as their state law claims. *See id.* at 7-8 & n.6.

Finally, recent developments outside of the Second Circuit also suggest that additional guidance on the application of *Howey* to transactions in crypto assets will be imminently forthcoming. For example, the Securities and Exchange Commission has created a new "crypto task force dedicated to developing a comprehensive and clear regulatory framework for crypto assets."[2] The task force has announced that it will focus on clarifying "[t]he status of crypto assets under the securities laws."[3] Although such guidance may not be binding upon this Court, courts in this district have stayed actions "awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 305 (S.D.N.Y. 2009) (quoting *Finn v. Barney*, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008)). Indeed, courts in this district have stayed actions pending the resolution of appeals in other circuits. *See id.* at 304-05 (although pending appeals in the Eleventh Circuit "will not necessarily

---

[2] *Securities and Exchange Commission*, "S.E.C. Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force" (Jan. 21, 2025), *available at* http://sec.gov/newsroom/press-releases/2025-30 (accessed Feb. 19, 2025).

[3] Commissioner Hester M. Peirce, "The Journey Begins" (Feb. 4, 2025), *available at* https://www.sec.gov/newsroom/speeches-statements/peirce-journey-begins-020425 (accessed Feb. 19, 2025).

be binding on this Court, resolution of those cases may guide this Court in ruling on . . . the key issues in this litigation"); *Goldstein v. Time Warner New York City Cable Grp.*, 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998) (staying action pending appeal of an independent case in the D.C. Circuit Court of Appeals). And at least one other court – the District Court for the District of D.C. – has recently stayed proceedings to permit the S.E.C. task force to develop a regulatory framework for crypto assets. *S.E.C. v. Binance*, No. 23-cv-1599 (D.D.C. Feb. 13, 2025). This Court should do the same.[4]

## II. THE INTERESTS OF THE PUBLIC FAVOR A STAY

The public has an interest in "minimizing the possibility of conflicts between different courts." *McCracken v. Verisma Sys., Inc.*, 2018 WL 4233703, at *3 (W.D.N.Y. Sept. 6, 2018) (staying action pending Second Circuit ruling in unrelated case that "will provide clarification on key issues in this case"). Many district courts in this Circuit are currently considering whether and under what circumstances transactions in crypto assets may satisfy *Howey*. *E.g.*, *Carnahan v. Baton Corp. Ltd.*, No. 25-cv-490 (S.D.N.Y. filed Jan. 16, 2025); *Albouni v. Schultz*, No. 24-cv-8650 (E.D.N.Y., filed Dec. 19, 2024); *Adams v. Gharib*, No. 24-cv-9378 (S.D.N.Y., filed Dec. 9, 2024); *S.E.C. v. Consensys Software Inc.*, No. 24-cv-04578, (E.D.N.Y., filed Jun. 28, 2024). Moving forward without guidance from the Second Circuit in *Ripple II* and *Coinbase II* risks conflict between district courts in the Circuit. *See also Coinbase I*, 2025 WL 40782, at *9-10 (explaining that the question of whether secondary market transactions in crypto assets are

---

[4] Additional guidance from the S.E.C. task force would be particularly helpful in this case because many of Plaintiffs' excessive discovery requests appear keyed to the S.E.C.'s current (and nonbinding) "Framework for 'Investment Contract' Analysis of Digital Assets", which may soon be replaced or amended by the new S.E.C. task force. *See* Decl. of D. Kristy ¶ 2 (referencing Plaintiffs' request for "Documents and Communications concerning the 'Framework' issued by the United States Securities and Exchange Commission, as referenced in paragraph 13 of the Complaint").

investment contracts "has precedential value in many other cases" and is "an important legal issues necessitate[ing] the Second Circuit's guidance"). Likewise, as noted in Defendants' Interlocutory Appeal Motion, courts within and outside this Circuit are conflicted on the level of participation in a secondary market sale – and the level of contact with a secondary market purchaser – necessary for "statutory seller" status under Section 12(a)(1) of the Securities Act. *See, e.g.*, *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 10 22, 2021) (Hellerstein, J.) (dismissing a complaint concerning allegations nearly identical to those alleged here and brought by the same plaintiffs' counsel); *Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (Buchwald, J.) (Section 12 requires plaintiff to "demonstrate direct and active participation in the solicitation of the immediate sale"); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 582 (S.D.N.Y. 1996) (Knapp, J.) (statutory seller status "requires direct and personal contact" and does not extend to "those who merely . . . participate in soliciting the purchase"); *S.E.C. v. Phan*, 500 F.3d 895, 906 n.13 (9th Cir. 2007) (noting that the "necessary participant" and "substantial factor" tests employed by this Court are not applicable to Section 12 liability).

Finally, "considerations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary." *Readick*, 2014 WL 1683799, at *6 (quoting *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012)). For the reasons outlined in Section I, *supra*, "a stay of this action would further interests of judicial economy." *Id.*

9

### III. THE PRIVATE INTERESTS OF AND THE BURDEN IMPOSED ON DEFENDANTS FAVOR A STAY

Defendants have "a substantial interest in avoiding unnecessary litigation, which could be substantial given that the case is asserted as a class action." *Loftus*, 464 F. Supp. 3d at 527. Defendants also have a substantial interest in staying this action pending further guidance from the Second Circuit and the S.E.C. "so as to avoid the burden of extensive discovery that may prove unnecessary." *Fluent*, 2020 WL 8642144, at *2. As discussed in Section I, *supra*, pending appeals before the Second Circuit – including but not limited to Defendants' potential interlocutory appeal – may entirely dispose of the claims at issue here. Even if those decisions are not dispositive to this action, the appeals and pending guidance from the S.E.C. may nevertheless clarify how *Howey* may be applied to crypto assets, streamlining discovery and focusing the parties and the court on what issues and discovery may actually be relevant.

Plaintiffs' conduct in this litigation to date only underscores the burden facing Defendants should the case proceed. Within the first four weeks of discovery alone, Plaintiffs have served *138* discovery requests, including 132 requests for production, many of which are compound and contain subparts. Notwithstanding often being inscrutable, these requests are effectively limitless in scope, and appear to call for every single document that even remotely relates to the Tron blockchain or the tokens at issue in this case over an *eight year period*. These requests are plainly overbroad and disproportionate to the needs of the case in volume and substance and timing. Plaintiffs have insisted on proceeding with this discovery even after being advised that Defendants will be filing this motion to stay proceedings.

### IV. THE PRIVATE INTERESTS OF NONPARTIES FAVOR A STAY

Plaintiffs' claims will require substantial nonparty discovery. For example, in order to ascertain the identities of class members and any damages, if it is even possible to get such

10

information in the context of anonymous transactions in crypto assets, Plaintiffs will need evidence of when and in what amounts putative class members purchased TRX. For purchases on secondary exchanges, Plaintiffs will need to obtain this information from the exchanges themselves, many of which have overseas headquarters and may need to be served via the Hague Convention or other means. This fact – the burden on nonparties - also weighs in favor of a stay. *See Loftus*, 464 F. Supp. 3d at 527 ("Third parties thus also have an interested in a stay because the Supreme Court's decision could moot the need for discovery from third parties."); *Fluent*, 2020 WL 8642144, at *3 ("As to the fourth factor, third parties also have an interest in a stay, particularly given plaintiffs' assertion that they will require substantial third-party discovery concerning their ATDS claims.")

## V.     PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY

"[D]elay does not, without more" result in "undue prejudice." *Leslie*, 2023 WL 6173511, at *2 (citing *McCracken*, 2018 WL 4233703, at *4); *see also Readick*, 2014 WL 1683799, at *6. Because Plaintiffs request only pecuniary damages and do not allege irreparable harm, they would suffer no prejudice from the requested stay. *See City of Buffalo v. Smith & Wesson Brands, Inc.*, 2023 WL 3901741, at *2 (W.D.N.Y. June 8, 2023) (finding no prejudice in money damages case and noting that "the additional monetary harm resulting from a stay can be remedied by "pre-judgment interest"); *see also Hoover v. HSBC Mortg. Corp. (USA)*, 2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014). This is particularly so where the motion to dismiss this action was already pending for a number of years, the action is only now moving forward, and the Second Circuit's rulings in *Ripple II* or *Coinbase* could preclude Plaintiffs' claims. Indeed, even Plaintiffs benefit from a stay as it may save them the expense of prosecuting a case that ultimately may be narrowed or precluded outright.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant a stay of the proceedings.

Dated: February 19, 2025

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Dean S. Kristy*
Dean S. Kristy (NY Bar #1945658)
Casey O'Neill (NY Bar #4715363)
Michael S. Dicke (Calif. Bar #158187)
(admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350
Email:    dkristy@fenwick.com
Email:    coneill@fenwick.com
Email:    mdicke@fenwick.com

*Attorneys for Defendants*
TRON FOUNDATION LIMITED and
JUSTIN SUN